```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK

------------------------------X Docket#
MCCABE,                        : 17-cv-00908-ERK-SJB
              Plaintiff,       :
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
                               :
LIFETIME ENTERTAINMENT         :
SERVICES, LLC,                 : December 12, 2017
              Defendant        :
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
BEFORE THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff:**          **Todd C. Bank, Esq.**
                                Law Office of Todd C. Bank
                                119-40 Union Turnpike
                                Fourth Flr.
                                Kew Gardens, NY 11415


**For the Defendant:**          **Eric Joel Feder, Esq.**
                                **Sharon Lee Schneier, Esq.**
                                Davis Wright Tremaine LLP
                                1251 Avenue Of The Americas
                                21st Floor
                                New York, NY 10020




**Transcription Service:**      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE COURT:  So we're here for a Motion Hearing

2     and Argument in 17-cv-908, McCabe v. Lifetime

3     Entertainment.

4               Could the parties state their names for the

5     record please?

6          MR. BANK:  Good afternoon.

7               Todd Bank for the plaintiff, Kevin McCabe.

8          THE COURT:  Good afternoon, Mr. Bank.

9          MR. FEDER:  Good afternoon, your Honor.

10              Eric Feder from Davis Wright Tremaine for the

11     defendant, with my colleague, Sharon Schneier.

12         THE COURT:  Good afternoon to you both.

13              So we're here for an oral argument.  The

14     defendants have moved to dismiss.  They've also moved for

15     Rule 11 sanctions.  There is a cross-motion for Rule 11

16     sanctions.  We'll start with -- because it's defendant's

17     motion, you know -- the way I will propose to go is the

18     motion to dismiss first, then let Mr. Bank go on the

19     motion to dismiss and then we can turn to the sanctions

20     motions, so that we don't have to meld the issues if that

21     works with everyone.

22         MR. BANK:  That should be fine.

23         MR. FEDER:  That makes sense, your Honor.

24         THE COURT:  So you can use the podium if you

25     would like.

3

Proceedings

1          MR. FEDER:  I don't need to use the podium but

2     I guess I want to be closer enough to the paper, do you

3     mind if I sit or --

4          THE COURT:  No, that's totally fine.

5          MR. FEDER:  Okay.  Thank you, your Honor.

6          This case is a putative class action under the

7     Telephone Consumer Protection Act over a twenty-second

8     phone call that the plaintiff claims to have received and

9     that call was placed in August of 2009, so over eight

10    years ago, sitting here today.

11         It fails as a putative class action for two

12    separate reasons.  The first is that the case must be

13    dismissed in its entirety as time barred under binding

14    Second Circuit law and the second is that even if Mr.

15    McCabe's individual claim were not time-barred and again

16    it is, the class complaint is time barred.

17         THE COURT:  And so let me -- one thing in your

18    papers that I didn't see you distinguish between is, or

19    maybe you didn't and I'll phase it this way, there's

20    obviously the individual claim of Mr. McCabe and there's

21    the treatment of any class claim.

22         I take it your argument is Mr. McCabe's claim

23    is time barred because the statute of limitations was not

24    tolled after Judge Hellerstein's decision denying class

25    cert in Leyse I, and therefore, Mr. McCabe's individual

4

Proceedings

1   claim is time barred under Giovanniello, is that right?

2               MR. FEDER:  That's exactly right, your Honor.

3               THE COURT:  Now how do I -- now is that true

4   for -- and I'll ask Mr. McCabe the same question -- I

5   mean, Mr. Bank the same question, is that true for every

6   other member of the class?

7               MR. FEDER:  Certainly.  Under Giovanniello,

8   American Pipe tolling, when exists at all, exists until

9   the district court denies class status in the original

10  case that effectuated the tolling in the first instance.

11  So the tolling would apply when it's in effect for any

12  putative class member, absent or otherwise, and when the

13  tolling ends, it likewise ends for everyone across the

14  board.

15              So whether it's Mr. McCabe or some other member

16  of the class and whether they bring it as a putative

17  class action again or as an individual claim or even a

18  motion to intervene, as was the case in the original

19  American Pipe case --

20              THE COURT:  So here's -- so that makes sense

21  if, I assume every member of the class is someone who

22  received a phone call on August 19th or 20th, because the

23  way the class is defined is anyone who received a phone

24  call from Lifetime on August 19th or 20th to the present,

25  and so while Mr. -- your argument makes sense or if I buy

5

Proceedings

1  that Giovanniello applies as you say it does for Mr.

2  McCabe, but why does it necessarily apply to every other

3  member of the class if the class is defined in a way that

4  anyone received a phone call and all I have with me is

5  the complaint with the class allegation.

6            MR. FEDER:  It's a fair question, your Honor.

7  First of all, as a point of fact, there's no -- there

8  were no other phone calls at issue here, so we aren't --

9  as a practical matter, talking about phone calls that

10  took place in 2012 or 2013 or anything.  The only phone

11  calls that are really the subject of this claim at all

12  are the phone calls that were in August 2009.  So as a

13  practical matter, that's the case.

14            THE COURT:  And so, I would like to pause on

15  that for a second before you get to your next point.  I

16  have these same questions for Mr. Bank.  Right.  As a

17  practical matter, right, now the Second Circuit has said

18  how I have to evaluate a motion to dismiss when there's a

19  statute of limitations argument, right?  It either has to

20  be on the face of the complaint or from any publicly

21  filed document or opinion.

22            Now how am I to determine for the purposes of

23  your 12(b)(6) motion that every other -- that there is

24  no, as a practical matter, phone call that occurs at any

25  other time, given the way the class is defined?

6

Proceedings

1        MR. FEDER:  And I want to look at the class
2  definition again while we're talking but the class is
3  defined and the claim is based on this particular phone
4  call that was made in connection with the switcher
5  channels for Lifetime.  That's the substantive claim.
6           And so in order to be a part of that class, and
7  indeed, in order to benefit from the tolling in the first
8  place, they would have to be a part of the class as --
9  you know, part of the putative class that was asserted in
10  Leasing I, otherwise the tolling --
11        THE COURT:  Well, right, but if I define the
12  class that says anyone who got  phone call on April 19th
13  or 20th to the present, the present being the date I
14  filed the complaint, then there's no, you know -- what
15  applies to the named plaintiff doesn't necessarily apply
16  to everyone, it may be that -- what's the date of the
17  Leyse I complaint?
18        MR. FEDER:  August 16th, 2013.
19        THE COURT:  So four days before the limitations
20  period --
21        MR. FEDER:  Correct.
22        THE COURT:  -- expires.  You know, bracket
23  whether I can consider this on a motion but what was the
24  discovery in Leyse I about the class and whether it did,
25  in fact, involve anyone outside of -- anyone receiving a

7

Proceedings

1    phone call on August 19th or 20th?

2           MR. FEDER:  So I was not involved in that.  My

3    colleague, Ms. Schneier was, so I think it makes sense to

4    have her speak to that directly.

5           THE COURT:  That's totally fine, yes.

6           MR. FEDER:  However, one thing to pause is the

7    claim -- a class action claim has to at least survive as

8    a claim on behalf of the named plaintiff and there's no

9    question in our view, that under Giovanniello, Mr.

10   McCabe's claim which is based on having received a phone

11   call in August 2009 and based on the exact same

12   definition and class that was asserted in Leyse I, that

13   Mr. McCabe's claim is time barred.

14          THE COURT:  Right, but that's not satisfactory

15   for you or your client, I assume because then we end up

16   in this kind of, you know, going round and round where

17   maybe Mr. Bank finds somebody else says --

18          MR. FEDER:  It --

19          THE COURT:  -- and it's a without prejudice

20   dismissal, as opposed to a with prejudice dismissal --

21          MR. FEDER:  Sure, but --

22          THE COURT:  -- which is not what you've asked

23   for.

24          MR. FEDER:  Understood.  If Mr. Bank finds

25   someone who received a phone call in August 2017, we

8

Proceedings

1   obviously aren't going to come here and say that that

2   claim is time barred.

3           That's why I say partially as a practical

4   matter, the reality is there are only these calls in

5   August 2009 but either way, that wouldn't save Mr.

6   McCabe's claim and once Mr. McCabe's claim is dismissed,

7   the class claim is dismissed too.  You can't have a

8   floating theoretical class action with no named plaintiff

9   withstanding or viable claim.

10          THE COURT:  Well, it's what happens in lots of

11  cases, right, where there's a defect with the named

12  plaintiff and there's a substitution.  And I guess that's

13  why you make your Corwik, right, which is that the class

14  is barred because you're relitigating the entire class

15  again and you need the Corwik part to bar the entirety of

16  the class action.  That's why you make that argument.  Is

17  that right?

18          MR. FEDER:  Well, I would say again that we

19  don't need the Corwik argument in that sense because Mr.

20  McCabe's complaint, and therefore, the whole complaint,

21  would have to get dismissed, notwithstanding that there

22  can be substitution of the plaintiffs.

23          THE COURT:  But then it would be a without

24  prejudice dismissal as opposed to a with prejudice

25  dismissal.  Well, it would be with prejudice as to Mr.

9

Proceedings

1  McCabe, I assume.

2           THE COURT:  Certainly, right, but not to the

3  class.

4           MR. FEDER:  Right.  Well, except that anyone

5  else who came forward unless they could show a non-time

6  barred claim would be in the exact same boat as Mr.

7  McCabe.  If anyone coming forward and saying I received a

8  call in August 2009, is certainly in the same shoes as

9  Mr. McCabe and frankly, Mr. Leyse but second --

10          THE COURT:  Right, I don't disagree with you on

11 that.  I mean, if your point is that there is no other

12 individual representative who could ever arise, right,

13 and therefore the class itself is inherently defective

14 and therefore the class allegations ought to be dismissed

15 with prejudice, that's an determination you can make from

16 either the face of Judge Hellerstein's decision or the

17 complaint or some other judicial document, that makes

18 sense to me but I am trying to say well, how can I --

19 what can I do to make that determination?  I could make

20 it as a legal matter, based on Corwik but --

21          MR. FEDER:  Right.

22          THE COURT:  -- as a factual matter.

23          MR. FEDER:  Well, so I think it makes sense.  I

24 am happy to proceed to discuss Corwik, although I don't

25 know if it make sense to have Ms. Schneier speak to the

10

Proceedings

1   discovery that took place in Leyse I, first.

2           THE COURT:  Go ahead.

3           MS. SCHNEIER:  Okay.  So thank you, your Honor.

4   A couple of points.  When Mr. Leyse moved for class

5   certification, the class that he proposed was all persons

6   to whose residential telephone lines defendant Lifetime

7   Entertainment or third-party acting on its behalf

8   initiated in August 2009.

9           THE COURT:  In other words, the initiation is

10  the operative word and if anyone had initiated --

11          MS. SCHNEIER:  But it's in August of 2009.

12          THE COURT:  Right.

13          MS. SCHNEIER:  Right.

14          THE COURT:  Okay.  So if it's initiated in

15  August 2008 -- '09, everyone is time barred in the class.

16

17          MS. SCHNEIER:  Yeah, that was the class and I

18  going back to the original Leyse complaint, it had that

19  same -- during the period from August 16th, 2009 to the

20  present, language so --

21          THE COURT:  Well, that's the part that -- to

22  the present --

23          MS. SCHNEIER:  Right.

24          THE COURT:  -- right, is --

25          MS. SCHNEIER:  But that just shows that he then

Proceedings

1   took the McCabe complaint, right -- he took the Leyse

2   complaint, copied into the McCabe complaint.  The

3   evidence in discovery as reflected in his class

4   definition and Leyse, was that there were, you know,

5   allegedly two days when calls were initiated, August 19th

6   and August 20th of 2009.  There was extensive discovery,

7   you know, about whether Lifetime had ever initiated any

8   other calls.  There are no other calls.  Both Leyse I,

9   Leyse II and this McCabe action are all notwithstanding

10  that the subsequent complaints mirror the language in

11  paragraph 1 of Leyse I, that to the present is, you know,

12  just I guess superfluous or legal jargon that is added --

13            THE COURT:  But the --

14            MS. SCHNEIER:  -- that there is no other --

15            THE COURT:  But the word initiation --initiated

16  is what makes it clear that it would have to have been a

17  call for anyone because -- and I'll ask certainly Mr.

18  Bank this, but it's not a call that was initiated in

19  August of 2009, which was received five years later.

20            MR. FEDER:  No.

21            MS. SCHNEIER:  No.  And I think the discovery

22  was pretty clear, you know, on that and I haven't seen

23  in --

24            THE COURT:  And I guess the point here is not

25  that the discovery wasn't clear or not but, right, we're

12

Proceedings

1   here on a 12(b)(6) trying to make a with prejudice

2   determination with respect to every other member of the

3   class and, you know, there are certain things I can rely

4   on.  There are certain things I cannot rely on.

5          MR. FEDER:  Fair enough, your Honor.  And I

6   think the Corwik argument does accomplish this sort of --

7   the pure legal question of with prejudice, as to the

8   class as a whole because that bars the subsequent class

9   action.

10          But again, as a practical matter --

11          THE COURT:  But on Corwik, why is that not in

12   suspension now because the question I posed on the docket

13   yesterday, the Supreme Court's cert grant?

14          MR. FEDER:  I -- so it is the Supreme Court is

15   granting a cert in China and in fact, certainly shows

16   that it's a life issue.  For one thing at the moment,

17   Corwik remains the law of the Second Circuit and the

18   Ninth Circuit was relying on the Smith v. Bayer and Shady

19   Grove cases in the Supreme Court to reach a different

20   conclusion as to whether or not there's a bar in the

21   subsequent class action.

22          District Courts within the Second Circuit have

23   continued to apply Corwik since Shady Grove, since smith

24   and there's no indication in the Second Circuit that

25   Corwik has been abrogated.

Proceedings

1          THE COURT:  But let's pay that out for a

2   second, right?  Let's say the Supreme Court comes out the

3   other way.  This case -- and I rely on Corwik and the

4   district judge -- Judge Korman accepts my reliance on

5   Corwik, this case would have to exhaust all appeals for

6   it to become immune from the Supreme Court's China

7   Agrotech decision because this case would still be on

8   direct appeal while the Supreme Court's case is pending

9   on, you know --

10          MR. FEDER:  Sure.

11          THE COURT:  And so it's I could rely on it but

12   it seems odd to do that.

13          MR. FEDER:  Understood.  And I mean, we would

14   submit first of all that although you can never read too

15   much into the granting of cert that if I were a betting

16   man, I would say the Supreme Court was going to come out

17   more likely in favor of Corwik but obviously we can't use

18   that as a basis to decide anything here.

19          I think that's why in some ways, I would return

20   to the original argument which is that the claim -- the

21   complaint before the Court now is brought by Mr. McCabe

22   individually and on behalf of others similarly situated

23   and his claim is time barred.

24          So his complaint must be dismissed and at that

25   point, if Mr. Bank wants to find a plaintiff with a non-

14

Proceedings

1   time barred claim, that's sort of a separate issue.

2   Frankly, someone who received a phone call in August of

3   2014 wouldn't be bound in any way by what happened in

4   Leyse I.  They wouldn't even need to be taking advantage

5   of the American Pipe tolling from Leyse I.  It would just

6   be a different case.

7           The case before the Court here is identical in

8   substance and, in fact, almost to the word in wording to

9   the complaint in Leyse I, and as well as Leyse II.  And

10  the claims in all of those cases sitting here today and

11  ever since September 2015, is time barred.

12          THE COURT:  So let me -- you don't argue

13  collateral estoppel.  I presume because of the Supreme

14  Court Smith decision.

15          MR. FEDER:  Right.

16          THE COURT:  But ply this out for me.  Assume

17  the class is not dismissed and a class is ascertained by

18  a district judge here, is that possible in light of the

19  Second Circuit's affirmance in Leyse I?  In other words,

20  you know, Justice Kagan's in Smith talks about how, you

21  know, collateral estoppel doesn't apply to class actions

22  but there are perhaps principles of comity or law of the

23  circuit doctrine to bar a class action.

24          And it seems very odd to me that you don't

25  argue and it, you know -- and maybe there a reason why

Proceedings

1   but why is -- whatever -- why is the question of

2   ascertainability not fully decided about this class by

3   the Second Circuit's decision in Leyse I or Leyse I?

4            MR. FEDER:  well, we would say -- I'm going to

5   say two things.  One, it is and if and when -- well, if

6   the complaint were to survive dismissal because it were

7   not time barred and there were any plaintiff with a claim

8   that was not time barred, and moved for class

9   certification, you can certainly bet that we would be

10  raising all of those arguments to oppose class

11  certification.

12           THE COURT:  Okay.

13           MR. FEDER:  To be sure, the question of

14  "ascertainability" is a bit in flux.  We have a cert

15  petition pending in Leyse I on that question.  The

16  Supreme Court has been getting cert petitions on that

17  question.  It's unclear where that will shake our

18  precisely.

19           THE COURT:  It's not your cert petition, it's

20  Mr. Bank's cert petition.

21           MR. FEDER:  Correct, correct.

22           THE COURT:  For the January 18th --

23           MR. FEDER:  We have opposed the cert petition

24  in Leyse I that's filed by the plaintiff.  but we would

25  certainly argue that the decision in Leyse I is in the

16

Proceedings

1    first place, preclusive and in the second place, highly

2    persuasive as to why any subsequent claim -- subsequent

3    class couldn't be certified as a side note and granting

4    that Corwik is a  bit in flux now because of China

5    Agrotech.

6             That's exactly the policy behind Corwik which

7    is that once you have a class determination in a case,

8    you can't just keep trying with a different judge who

9    might say well, I am going to role up my sleeves and --

10            THE COURT:  See, that's what I would think but

11   I don't think that's right.  Corwik is not an estoppel

12   decision.  It's not a preclusion decision.  That's why

13   Smith can exist as a separate case.

14            MR. FEDER:  Yeah.

15            THE COURT:  And the line of cases on Corwik can

16   exist in parallel because Corwik is a species of American

17   Pipe tolling for the class basically and it says look,

18   the class doesn't get to be tolled while the individual

19   claims do get to be tolled and --

20            But you can imagine  situation where there's a

21   class that escapes the Corwik rule because the statute of

22   limitations say is ten or 20 years long, right?  It's not

23   an issue of preclusion rule.

24            MR. FEDER:  No.  You're absolutely right, your

25   Honor.  It's an interesting hybrid of sort of preclusion

17

Proceedings

1    values overlaid the equitable -- overlaid on the

2    equitable principles that underlie American Pipe tolling

3    and I think that's an important point.  In the cert

4    petition, they discuss this, that there was a decision

5    from this past summer from the Supreme Court in CalPERS

6    v. ANZ in which the Court held very squarely that

7    American Pipe tolling is a form of equitable tolling.  I

8    can get the cite for that -- that it's a form of

9    equitable tolling though.

10           And in that case, the Court held therefore,

11   that American Pipe tolling didn't override a statute of

12   repose, even as it could potentially override a statute

13   of limitations.

14           So it's important in general when you're

15   talking about American Pipe tolling to keep in mind that

16   it is not some rule-based or statutory sacrosanct

17   requirement.  It is an equitable compromise that was

18   reached by the Supreme Court and has been applied since

19   then.

20           And so, Corwik is again, sort of incorporating

21   the estoppel principles and the policy behind estoppel

22   with the compromises that were being reached with

23   American Pipe tolling in the first place.

24           THE COURT:  And look, Mr. Bank has been very

25   patient, so I want to turn to him but answer me this.  If

18

Proceedings

1   Corwik is on the shelf for now, the only way to forever

2   bar the class claims is to conclude that Mr. McCabe sits

3   in the spot as Mr. Leyse who sits in the same spot as any

4   other member of the class and every member, individual

5   claim is barred and therefore, there can never be a

6   proper class representative.   Therefore the class claim

7   is barred.

8            MR. FEDER:  We would agree with that, your

9   Honor, insofar as the actual class here is based on

10  people who received this phone call in 2009 but that --

11           THE COURT:  Okay.

12           MR. FEDER:  And that Mr. McCabe sits in those

13  shoes, Mr. Leyse sat I those shoes and anyone else who

14  sat in those shoes, is now eight years after the phone

15  call, would at best be able to take advantage of American

16  Pipe tolling as a result of Leyse I and at that point --

17  and that that tolling period ended in September 2015.

18           Someone who received a phone call about a

19  totally different program, totally different claim in --

20           THE COURT:  Well, of course, but I --

21           MR. FEDER:  -- you know, August 2011.  Their

22  claim would be time barred now both because it's years

23  later and because it wouldn't have been tolled by Leyse

24  which as a class action was only ever pertaining to the

25  August 2009 calls.

Proceedings

1          THE COURT:  Okay.  Mr. Bank?

2          MR. BANK:  I'm not sure if I would agree with

3   that last point, but just being practical, discovery in

4    -- I'll just refer to it as the Leyse litigation, did

5   show that all of the calls were made in August of 2009.

6   The complaint is worded more broadly because discovery

7   could show more and technically it says until the

8   present, so discovery could show more.  But yes, those

9   are the phone calls.

10          THE COURT:  And discovery did not show more.

11          MR. BANK:  In Leyse, correct.

12          THE COURT:  And --

13          MR. BANK:  That is correct.

14          THE COURT:  -- do you have any reason to

15   believe discovery would show more tody?

16          MR. BANK:  No specific reason, no.

17          THE COURT:  Okay.

18          MR. BANK:  No, we don't.  And so the

19   hypotheticals that we discussed with telephone calls made

20   more recently, I don't -- I have no specific reason to

21   believe those hypotheticals would ever bear fruit.

22          THE COURT:  And so for you then, if that's

23   true, the only way Mr. McCabe's claim is timely or any

24   other class member's claim is timely, is if the

25   Giovanniello rule doesn't apply.  Isn't that right?

20

Proceedings

1           MR. BANK:  I don't know if I would say does it

2     -- in these sense that you're asking it, your Honor, I

3     would say yes.  Again, I've distinguished Giovanniello in

4     the papers but again, in the sense that I believe you're

5     asking the question, the answer would be yes.

6           THE COURT:  Well, in other words, I'll ask the

7     question without a reference to a case name, right?  The

8     only way Mr. McCabe's case is timely, is if tolling is

9     imposed after Judge Hellerstein's decision in September

10    of 2015?

11          MR. BANK:  Yes, that's absolutely correct.

12          THE COURT:  Okay.  And that's true for every

13    other member of the class.

14          MR. BANK:  Assuming as I did state, that the

15    class members, if not as specifically defined in the

16    complaint, but let's say in reality, as you will, are

17    limited to those who received calls in August of 2009,

18    then the answer would be yes.

19          THE COURT:  And that's the way you define it in

20    the complaint.

21          MR. BANK:  The complaint is more broad because

22    it refers to calls made from August of '09 through the

23    present but again, discovery in the Leyse litigation only

24    revealed calls in August of 2009 and as I stated, we

25    don't have any specific reason to expect that that would

Proceedings

1   change here.

2           THE COURT:  And that's because even for Mr.

3   McCabe, right, his call is a call that he received

4   ostensibly in August of 2009.

5           MR. BANK:  Correct.

6           THE COURT:  Okay.  So you have to have tolling

7   after Judge Hellerstein's decision and on one basis do

8   you think that's possible?

9           MR. BANK:  Well, I will start by saying if I

10  may just give a brief background of American Pipe tolling

11  and more importantly, it's rationale which I think

12  applies here.  The first thing is that without any

13  American Pipe tolling, putative class members whose

14  individual claims would become time barred before an

15  initial decision on class certification, like Judge

16  Hellerstein's decision.  They face a dilemma.  Either

17  they can take a risk that class certification will be

18  denied in which case they lose all their rights or they

19  can bring their own actions or motions to intervene in

20  order to protect against the risk that class

21  certification will be denied.  That's why the Courts

22  calls these actions, either protective or duplicative

23  actions.  They're not really meant necessarily to

24  litigate but to provide insurance in case class

25  certification is denied.

22

Proceedings

1      Now by making it unnecessary via American Pipe

2    tolling to bring protective actions, American Pipe

3    tolling also serves the interest of the judicial system

4    because otherwise, the Courts would have to preside over

5    all of these cases, only for their own part -- for the

6    Court's own part, that is, to take the risk that in the

7    event that certification were granted, all of these so-

8    called protective actions will have been for nothing.  It

9    will just cost people time and money and same with the

10   judiciary.

11      THE COURT:  And you could keep going.  All of

12   this makes sense to me but that's why we have the

13   American Pipe rule.  It doesn't explain to me why you

14   would have tolling after the class cert is denied.

15      MR. BANK:  That's what I am going to get to,

16   Judge --

17      THE COURT:  Okay, go ahead.

18      MR. BANK:  -- if I may?  And then just before I

19   do though, the other rationale of American Pipe tolling

20   is that once the initial class action is brought, the

21   defendant has now been put on notice of the potential

22   claims against it, the number of potential class members

23   and also the need to preserve evidence to deal with those

24   claims.

25      Well, so I've discussed three rationales for

23

Proceedings

1   tolling.  All of those rationales apply and continue to

2   apply I should say, when there's an appeal of a class

3   certification denial.  So let's for example, at the

4   outset of a case, it's unknown whether certification will

5   be granted.

6          THE COURT:  But Mr. Bank, here's the issue,

7   right?  The legal world is not just determined by

8   rationales.  It's determined by legal principles and

9   these arguments may have had some force, some

10  persuasiveness, some utility before Giovanniello came out

11  but the Second Circuit ruled on this point and said class

12  -- American Pipe tolling ends when class cert is denied

13  for whatever reason.

14         MR. BANK:  Well, that's what I wanted to

15  address Giovanniello and I think we did very candidly in

16  the briefs but I will summaries here if I may.

17  Giovanniello dealt with a different situation than in the

18  Leyse case.  It did not deal with a Rule 23 denial of

19  certification.

20         In Giovanniello, the Court dealt with a prior

21  action as these cases normally do, prior actions, I which

22  the Court held that a New York statute prohibited a class

23  from being certified all together.  In other words, you

24  don't even get to a Rule 23 analysis.  The class is just

25  not eligible for certification.

24

Proceedings

1    So if tolling were to continue in Giovanniello

2  through class --

3    THE COURT:  Where in the opinion is anything

4  like you're saying limit the case in that way.

5    MR. BANK:  As we state in the papers,

6  Giovanniello did not focus on the distinction that I just

7  drew and we were very candid about that.

8    THE COURT:  And so on what basis are you saying

9  that the Second Circuit's rule which as far as I can

10  tell, is crystal clear that there is no American Pipe

11  tolling after a denial of class certification, where does

12  it give you any room to make the argument you're now

13  making?

14    MR. BANK:  The way the Court expressed its

15  opinion, as we discussed at length in the papers, did not

16  provide that room.

17    THE COURT:  And --

18    MR. BANK:  However --

19    THE COURT:  So then how are we to rule for you?

20    MR. BANK:  I'll explain and I am not making any

21  prediction, of course, your Honor, but I will explain.

22  The general rule as to whether a case from another --

23  from a higher level court as in the Second Circuit, of

24  course, the question of whether such an opinion is

25  binding is based on whether the differences in facts

25

Proceedings

1  between the potential binding case and this case here,

2  are material or if those differences constitute

3  irrelevant factual distinctions.

4         So as we stated in the papers, Giovanniello did

5  not give -- we were very candid about this, Giovanniello

6  gave no indication to believe that had the facts in

7  Giovanniello been exactly as the fact are here, that the

8  Court would have ruled in a different way.  We've never

9  suggested that.

10         THE COURT:  So you concede that Giovanniello,

11  as written, bars American Pipe tolling after a denial of

12  class certification?

13         MR. BANK:  In the sense that Giovanniello did

14  not focus on the traditional situation like the current

15  one, but the question as to whether Giovanniello is more

16  than persuasive and is binding, I think is different

17  because again, any judicial  opinion has to be looked at

18  in light of the facts that produced it.

19         So the question -- let's say just for the sake

20  of discussion only, that this Court just for argument's

21  sake, disagree with the reasoning of Giovanniello, okay?

22  And the Court were inclined -- or say I wish Giovanniello

23  weren't binding because --

24         THE COURT:  And what law school teaches that I

25  or any district judge is able to ignore the instructions

26

Proceedings

1   of the Second Circuit?

2           MR. BANK:  Because the instructions have to be

3   considered in their factual context.  What was at issue

4   in Giovanniello was a certain set of facts.  What is at

5   issue in this case are not the same facts.  So --

6           THE COURT:  And what court has limited either

7   the Second Circuit or District Court has limited

8   Giovanniello in any way that you describe?

9           MR. BANK:  I know I discuss in, at least one of

10  the many briefs we've done, your Honor, that there was

11  a --

12          THE COURT:  Here's the --

13          MR. BANK:  -- I would have to look for it in

14  the briefs but --

15          THE COURT:  -- here is the difficulty I am

16  having --

17          MR. BANK:  Yeah.

18          THE COURT:  -- to be perfectly frank --

19          MR. BANK:  Sure.

20          THE COURT:  -- in bluntness, okay?  You argued

21  all of these points.  You are counsel of record in

22  Giovanniello.

23          MR. BANK:  Right.

24          THE COURT:  You argued each of these points as

25  to why American Pipe tolling should extend beyond the

27

Proceedings

1   denial of class certification.  They were squarely

2   rejected in a decision that gives no room for maneuvering

3   and yet you're trying to reargue those points to the

4   district court.

5          MR. BANK:  Well, we're -- I understand your

6   point, your Honor, I do.  What we said in the briefs and

7   what I will reiterate from the briefs here is that again,

8   as I said in my scenario, assuming for the sake of

9   discussion, your Honor or the district court disagree

10  with  Giovanniello.  The question then would be is

11  Giovanniello binding on this Court, such that that

12  disagreement would be irrelevant.

13         And the way to answer that question is not -- I

14  don't -- not to predict well, what would the Second

15  Circuit have done in this factual scenario?  We've

16  conceded that Giovanniello gave no reason to think it

17  would do something different.

18         But as to whether Giovanniello is binding, that

19  depends on what the facts were that produced that

20  decision.  If the Court found that there were no material

21  difference, it would be binding.

22         THE COURT:  Mr. Bank, what case says you

23  interpret precedent in that way?

24         MR. BANK:  There's --

25         THE COURT:  What case?  And it hasn't -- it

28

Proceedings

1  could be something entirely out of the securities

2  context, as far as I care.  That's not how the law

3  operates.  It simply is not the case that you can say

4  well, here is a rule o decision that exists on what a

5  word means, a term means, and we get to ignore it because

6  we can somehow distinguish the facts in our case and have

7  it not apply.

8          Now if the rule of decision has some limitation

9  on it, if it has some cautionary language in front of it,

10  if it has room, maybe you can make that argument but

11  you're still not able to point to me anything in the

12  decision by page cite or anything else that even allows

13  for that kind of argument.

14          MR. BANK:  Again, as we stated in the briefs,

15  Giovanniello did not in its explanation as to how it

16  reached or why it reached its holding.  Giovanniello did

17  not provide any indication that it would have ruled

18  differently in the present case.  We're not claiming that

19  the --

20          THE COURT:  So then how can you make this

21  argument?

22          MR. BANK:  Because again, your Honor, here --

23  if you look at the facts -- one looks at the facts you

24  might say, one looks at the facts in Giovanniello, one

25  compares that to the holding of the Court, okay?  Not

Proceedings

1    necessarily the reasoning or the explanation that led to

2    the holding, the facts and the holding.  Then the Court

3    looks at the facts in this case and the Court says, are

4    those facts materially the same as in Giovanniello?

5    Again, obviously every -- the facts of every case are

6    different.

7              Obviously, we're not saying that oh, well,

8    Giovanniello was an FTCPA case and this is a TCPA case,

9    well if that's the only difference, that would not be a

10   material difference for purposes of the legal issues.

11             The question though before the Court -- again,

12   assuming the Court were inclined not to find

13   Giovanniello, just for the sake of discussion, the

14   question before the Court would be here are the facts in

15   Giovanniello which again dealt with a dismissal of the

16   entire case, not a denial of certification and so on, and

17   we explained that in the briefs.

18             Then we look at the facts here and we say, all

19   right, what happened in this case here?  There was a Rule

20   23 class certification denial and so on.

21             If in the Court's view, those facts are not

22   materially different, then yes, the Court would and

23   should find that Giovanniello is binding.  We said that

24   in the briefs.  If the Court were to say -- again,

25   leaving aside the explanation that Giovanniello provided,

30

Proceedings

1   if the Court were to say well, you know, just because

2   tolling ended or tolling didn't continue after the

3   dismissal of a case, based on something that had nothing

4   to do with Rule 23 criteria but rather something

5   preliminary to that, does that necessarily mean that that

6   same reasoning or that same holding, I should say, would

7   apply to a case where unlike a complete dismissal which

8   would have had then to await remand if reversed, and

9   certification, a much longer time period of tolling, do

10  the facts in this case materially correspond with the

11  facts in that case?  And again, that's -- we've addressed

12  that in the papers and if your Honor --

13          THE COURT:  But you keep saying you addressed

14  that in the papers but what is the material difference?

15          MR. BANK:  The difference is that the tolling

16  period -- yeah, here's the exact difference, the tolling

17  -- if American Pipe tolling had continued in the prior

18  action that Giovanniello had been addressing, that

19  tolling period would have been (a) considerably longer

20  than the tolling period we're talking about here, and (b)

21  there would have at least from a statistical

22  perspective --

23          THE COURT:  That's not an argument as to why

24  the facts in this case are different from the facts in

25  Giovanniello such that the rule of decision announced by

31

Proceedings

1    the Second Circuit has no applicability here.  That's

2    just an argument that okay, if you extend tolling, my

3    case survives.

4              MR. BANK:  But what we're saying is that in

5    Giovanniello -- again, the prior action at issue there --

6              THE COURT:  Right.

7              MR. BANK:  -- in that action, the Court found

8    that class certification could not even be addressed

9    based on a New York statute which has since been

10   overturned but that's neither here nor there for now.

11             THE COURT:  A class could not be certified in

12   other words.

13             MR. BANK:  Right.  It was not a Rule 23 denial.

14   There was not numerosity.  It wasn't based on anything to

15   do with Rule 23.  The Court said we don't even get to

16   Rule 23 analysis.

17             THE COURT:  But why is that not an argument

18   that in this case, the rule applies with greater force,

19   as opposed to the opposite way around because here, you

20   have a situation where one court affirmed by that same

21   Court of Appeals has found that no class could possibly

22   be ascertainable.

23             So all you have before in Giovanniello is a

24   step before class certification that no class could ever

25   be certified because there's some legal bar to it,

32

Proceedings

1    because there's some statutory prohibition.  That's sort

2    of like saying if there were something in the TCPA that

3    said no class actions may be maintained under this

4    section.

5              MR. BANK:  Because I am --

6              THE COURT:  So all that you had here is that

7    you've crossed over whatever hurdle that may have existed

8    via statute, you got to Rule 23.

9              MR. BANK:  Except that there's -- I see one

10   difference.  And again, I am not saying the Court -- that

11   it's a black and white issue that there's no -- that the

12   facts in Giovanniello are so widely different than here,

13   that it's not binding or vice versa.  And again, we were

14   very forthright in the briefs.

15             What I am saying is this.  From the Court's

16   perspective, let's suppose the Court in Giovanniello were

17   thinking about should we extend tolling here through the

18   appellate process, then what they're faced with is the

19   following situation.

20             First, the dismissal of the entire action,

21   again which was all preliminary to a Rule 23 analysis

22   because we didn't get to that, Giovanniello --

23             THE COURT:  But you still haven't answered the

24   question.  It's preliminary to a Rule 23 analysis.  Yours

25   came after a Rule 23 analysis.  It's -- in the first

33

                              Proceedings

1   situation where it's before Rule 23 analysis, right, the

2   rationale of American Pipe tolling, other class members

3   may not be aware of whether or not they need to stay in

4   reserve or go forward with their action and therefore,

5   you ought to continue tolling and not allow for

6   intervention.

7              If you set the rule that says well, look,

8   before you ever get to a Rule 23 decision, you're barred

9   because there's some statutory bar or some other bar and

10  there's no tolling after that period, it seems to me that

11  in this situation, where any preliminary bar, let's call

12  it, doesn't exist, there's no TCPA --

13             MR. BANK:  Correct.

14             THE COURT:  -- provision that says no class

15  actions can be maintained.

16             MR. BANK:  Right.

17             THE COURT:  You survive a 12(b)(6) motion for a

18  failure to state a claim that -- and you get to Rule 23.

19  So if I apply Giovanniello, I would say look, here it

20  applies with more force.

21             MR. BANK:  I see the point but I am looking at

22  it from the number of steps and if I could just make the

23  argument but I will try to be brief, from Giovanniello

24  perspective, if -- again, regarding the prior action at

25  issue there, if tolling had continued here's what the

34

Proceedings

1  perspective would be from the moment that the case is

2  dismissed.

3       Tolling would then be continued through the

4  appellate process of a dismissal of the case.  Then if

5  that dismissal is reversed on appeal, the case is now

6  remanded back to the district court, only then might the

7  district court or presumably would the district court

8  address class certification, so we're talking a two-step

9  process rather than the one step.  As in here, we appeal

10 the class certification denial and either there's an

11 affirmance or a reversal.

12      There was a case last -- since the briefs have

13 done, a Seventh Circuit case -- I have it somewhere in my

14 notes, but there was a Seventh Circuit case that was

15 decided.  It's a published opinion on November 16th and

16 Seventh Circuit case law had said -- had held that

17 American Pipe tolling ends upon a Rule 23 class action

18 denial and does not continue through an appeal.

19            THE COURT:  What's the case name?

20            MR. BANK:  I can --

21            MR. FEDER:  We have it.

22            THE COURT:  You have it?

23            MR. FEDER:  It's Collins v. Village of

24 Palatine.

25            THE COURT:  Hold on.  I need to see it.

Proceedings

1          MR. BANK:  Yes, that's it.  It's a November

2    2017 case.

3          MS. SCHNEIER:  We have the cite.

4          THE COURT:  Yeah, sure.

5          MR. BANK:  I have it also somewhere.

6          THE COURT:  What's the cite?

7          MR. FEDER:  875 F.3d 839.

8          MR. BANK:  That case dealt with the issue which

9    is similar to the --

10         THE COURT:  Sorry, what was the last --

11         MR. BANK:  I'm sorry.

12         THE COURT:  875 F.3d?

13         MR. FEDER:  839.

14         THE COURT:  839.  Okay.  875 F.3d -- oh, here I

15   got it.  Sorry.  Collins v. Village of Palatine.

16         MR. FEDER:  Now it's on there.

17         MR. BANK:  Yes. And should I -- may I describe

18   it briefly or do you want to read it first, your Honor or

19   look at it first?

20   (Pause)

21         THE COURT:  How does this case help you?

22         MR. BANK:  It doesn't help us but I have drawn

23   attention to it just to show that at least there is an

24   argument to be made which was not accepted by that court,

25   that there's a difference between a dismissal of a case

36

Proceedings

1   all together compared to or versus a  Rule 23 class

2   certification denial.

3           Obviously, if the Court were to agree with the

4   Seventh Circuit in Collins, that would not help us.

5           THE COURT:  But the point here is the -- okay,

6   there may be a difference between a dismissal and a Rule

7   23 dismissal but you had a Rule 23 dismissal and

8   Giovanniello dealt with a Rule 23 dismissal, although at

9   an earlier stage.

10          MR. BANK:  That was the thing you know -- I

11  don't meant to argue it but that's the point, it was not.

12          THE COURT:  No, but it wasn't just a -- it

13  wasn't a dismissal that said, okay, it was a class action

14  dismissal.  It was that class actions cannot be

15  maintained under New York law.  It wasn't that the kind

16  of -- it wasn't like it appears to be in this case, which

17  is a 12(b)(6) motion against the individual.

18          MR. BANK:  Right.  But as a result, it would

19  have been more steps needed to get back to class

20  certification.  That's the point I have been trying to

21  make.  With -- in this case, what would be needed to get

22  back to class certification?

23          THE COURT:  And so why does that count for a

24  different rule?

25          MR. BANK:  Because of the longer -- because the

37

Proceedings

1   more steps mean more time and that's one of the issues

2   that American Pipe tolling decisions talk about.

3            THE COURT:  Where's the citation for that

4   proposition, that the longer it takes for class

5   certification to be resolved, American Pipe tolling

6   should extend for that purpose?

7            MR. BANK:  I can give one example offhand.

8   There's the case that we cited in the briefs, In re

9   Vivendi which was a Southern District case, 2012, which

10  held that American Pipe tolling continued through the

11  Rule 26(f) interlocutory appeal process and the Court

12  specifically explained it -- this is pre-Giovanniello and

13  I am not predicting what that court would do now but just

14  by way of the example --

15           THE COURT:  But look, here's the reality, Mr.

16  Bank.  It's impossible to read Giovanniello the way you

17  say.  There's not a single case that you can cite to me

18  that reads it the way you said.

19           What you're trying to do is argue that it's

20  wrongly decided.

21           MR. BANK:  Well, that's only in terms of

22  preserving our rights.  What we have argued, Judge --

23           THE COURT:  And it's very hard for me to

24  understand why this is not a wholly sanctionable claim.

25           MR. BANK:  What we've argued with respect to

Transcriptions Plus II, Inc.

Proceedings

1    Giovanniello is not -- and we were very candid in the

2    briefs.  We said Giovanniello would appear to have

3    reached the same result if the facts were as they are

4    here.

5              But again, the question is --

6              THE COURT:  And if that's true, why does this

7    complaint survive Rule 11?

8              MR. BANK:  Well, I will get to that in a

9    moment.  I will.  But again, we're talking about whether

10   it's binding authority, not persuasive -- it's obviously

11   persuasive, it's a Second Circuit opinion.

12             THE COURT:  It's binding.  It's the Second

13   Circuit opinion on when tolling stops under American

14   Pipe.

15             MR. BANK:  And our position is --

16             THE COURT:  It's not a question of whether a

17   Third Circuit opinion applies.

18             MR. BANK:  Of course.

19             THE COURT:  It's a Second Circuit opinion.

20             MR. BANK:  Of course.  Of course, your Honor,

21   but we're saying that because the fact -- we think the

22   factual differences were material.  If the Court were to

23   find that -- and I quote the case law, "If the Court were

24   to find that the factual differences constitute

25   irrelevant factual distinctions," I think is the quote

Proceedings

1   and that might well be the case here, in which event the

2   Court would find that Giovanniello was binding and if

3   that's the case, then I will now turn to the --

4          THE COURT:  So in any case where one is faced

5   with the rule of decision that squarely covers the issue

6   at hand, are you saying Rule 11 provides you protection

7   to file complaints if you can identify factual

8   differences that you, the party, filing the complaint

9   believe are material?

10          MR. BANK:  If they are -- my understanding from

11   the case law and we cover this in the briefs, is that if

12   the facts that were the basis or that led to the decision

13   in question are materially different -- again, obviously,

14   as relating to the legal issue, obviously a TCPA case is

15   materially different from a FTCPA case but that's not the

16   kind of differences we're talking about.  And I've

17   explained our position.

18          THE COURT:  What case suggests that that's a

19   material difference?

20          MR. BANK:  That specifically?  There's not much

21   case law.

22          THE COURT:  There's none.

23          MR. BANK:  Well, again we do discuss --

24          THE COURT:  You keep saying going back to

25   briefs but I am asking you for any authority and you

Proceedings

1  can't -- there's not a case, tell me that I am wrong,

2  there's not a case that draws the distinction between a

3  Rule 23 certification denial and the kind of denial that

4  you've just discussed which is also a type of class

5  certification denial.

6          MR. BANK:  Well --

7          THE COURT:  There's not a case that interprets

8  Giovanniello in the way you suggest and there's not a

9  case that suggests -- and there's not a reason why the

10  rule shouldn't apply with greater force in this case than

11  it did even in Giovanniello itself.

12          MR. BANK:  Okay.  And I understand the

13  difference.  I see it as more the two-step process but I

14  understand the Court's view on that.  But again, there

15  are a number of cases and I can take a look at my notes

16  because they have copy from the briefs.

17          THE COURT:  Take as much time as you want.

18          MR. BANK:  Okay.  There are a number of cases

19  that have held that a dismissal of the -- there are a

20  number of cases that hold that a dismissal of an action,

21  that they're still tolling through the appeal. There are

22  a number of cases going back.

23          THE COURT:  Right, those are --

24          MR. BANK:  Let's assume --

25          THE COURT:  Well, let me be clear, I've read

41

Proceedings

1    those cases.

2              MR. BANK:  Okay.

3              THE COURT:  Those cases talk about one of two

4    different things.  One is if the Court of Appeals

5    reverses the class certification denial, that means

6    you'll retroactively apply tolling through the appellate

7    period.  That hasn't happened here.

8              MR. BANK:  Right.

9              THE COURT:  The only way it happens here is if

10   the Supreme Court on January 8th grants your cert in

11   Leyse I and then chooses to reverse you.  Am I wrong

12   about that?

13             MR. BANK:  As far as that goes, that's correct.

14             THE COURT:  Okay.  And then the other kinds of

15   cases talk about when you are faced with a class action

16   complaint and someone moves to dismiss the individual

17   claim and says oh, for example, under the TCPA, you can't

18   recover for phone calls of a certain kind of a plaintiff

19   who only certain people are covered by the TCPA or it

20   doesn't apply to this kind of transaction or occurrence.

21             In other words, it's not a class action motion

22   that leads to a dismissal, am I wrong about that?

23             MR. BANK:  No, I understand that point.  I do.

24   I wanted to just address --

25             THE COURT:  So I guess I am looking for a case

42

Proceedings

1   that could plausibly help you in any way here.

2            MR. BANK:  Well, if I may take a minute?

3            THE COURT:  Please, take as much time as you

4   want.

5   (Pause)

6            MR. BANK:  Again, your Honor, if we're talking

7   about a case that specifically stated that whereas in a

8   traditional Rule 23 class certification denial, we would

9   not apply tolling through the appeal but that we would

10  apply or something like that, no.

11           THE COURT:  I realize that case --

12           MR. BANK:  There's only so much case law on

13  these issues.

14           THE COURT:  But I am trying to find any case

15  that helps you in any way that is -- that either says --

16  it can say any one of the number of things -- the

17  following things, the distinction that you're drawing is

18  material, thus a -- period, full stop, from which you

19  could then infer that maybe a different tolling rule

20  ought to apply.  I haven't seen that case.

21           Or another case that -- and we can go up the

22  chain that says Giovanniello should be limited in a

23  certain way which I take it you don't -- that you take it

24  you don't have.

25           In other words, something on which you could

43

Proceedings

1    hang your hat to say look, the factual distinction which

2    I am now identifying has some weight, some material

3    effect to it, such that you could turn to a binding

4    precedence and say look, it shouldn't apply.

5           MR. BANK:  There's a case that Lifetime relied

6    on, Kansas v. Fisher and Lifetime cited the case for

7    Betances' reference to the general rule laid out in

8    Corwik.

9           But in Betances the Court rejected the

10   defendant's reliance on Giovanniello because -- at least

11   the Court there said that --

12          THE COURT:  What's the Betances cite?

13          MR. BANK:  I have that in the brief.  It's a

14   Southern District case of 2015.

15          THE COURT:  Betances v. Fischer?

16          MR. BANK:  Yes, that's it.  Did you find it,

17   your Honor?  Okay.  Betances dealt with three prior

18   actions, all of them were dismissed on the basis of

19   qualified immunity.  They were all brought as class

20   actions and so, having been dismissed, there could be no

21   class certification and the Court distinguished -- and

22   that's the one case I am specifically aware of, the Court

23   distinguished Giovanniello saying that whereas in

24   Giovanniello, the prior action dealt with sort of the

25   class issue, the prior actions at issue in Betances were

44

Proceedings

1    more traditional dismissals.

2              Again, is that exactly on point?  No, it really

3    isn't --

4              THE COURT:  But --

5              MR. BANK:  -- but --

6              THE COURT:  -- that case says it refuses to

7    apply Giovanniello because Judge Sheindlin says, "No

8    court definitively denied class certification."  That's

9    not true here.

10             MR. BANK:  But in Leyse -- here, right.  Okay.

11   I understand that.

12             THE COURT:  No, no, I mean -- okay, in Leyse a

13   court definitively denied class certification.

14   Therefore, the Giovanniello rule would apply

15             MR. BANK:  My point being thought there -- my

16   point is that there is a difference, at least from our

17   point of view, between a Rule 23 denial and some other

18   measure, be it a dismissal on the merits or like we've

19   been discussing, a rule as in the Giovanniello prior

20   action, that says you simply can't bring this as a class

21   action.

22             THE COURT:  Right.  And so I come back to my

23   original point, Giovanniello is a case in which they say

24   you can't bring this as a class action and it says you

25   can't toll after the denial.  Here you have a situation

45

Proceedings

1  where you've crossed that hurdle.  No one has said you

2  can't bring this as a class action.  You proceeded

3  through discovery.

4          Then you got to Rule 23 where class

5  certification was denied.  The Giovanniello rule which is

6  like -- which says look, you shouldn't extend American

7  Pipe tolling past a denial where you can't even get the

8  hurdle, why should you be able to allow it when you've

9  crossed that hurdle and gotten to even Rule 23.

10          MR. BANK:  I think again, Judge, I am not --

11  what we're saying is basically because of the two step

12  process, we were very straightforward in the briefs.

13  Giovanniello did not focus on the distinctions but again,

14  as to whether maybe just maybe being very technical, as

15  to whether it's binding authority, if the facts with

16  respect to the legal issue at hand, are materially

17  different, then it's not binding authority.  And if the

18  facts --

19          THE COURT:  So you would have it -- you would

20  only be binding authority if Junel (ph.) was a Rule 23

21  class denial?

22          MR. BANK:  Or the equivalent which again we

23  don't think is the case here.  By saying that, you simply

24  cannot even get to Rule 23 and that's with Shady Grove

25  drew that very distinction between saying you don't meet

46

Proceedings

1   the criteria or you do of Rule 23 versus you don't even

2   get there in the first place.  That was the very

3   distinction that the Supreme Court drew in Shady Grove.

4           THE COURT:  But --

5           MR. BANK:  It was not a tolling case to be sure

6   but my point is, there is a distinction as to whether the

7   Court --

8           THE COURT:  But in this case, you were denied

9   class certification.  You are here back litigating it.

10          MR. BANK:  Well, you're referring to the Corwik

11  issue, your Honor?

12          THE COURT:  Yes, the Corwik issue.

13          MR. BANK:  Okay.

14          THE COURT:  Do you agree it's on the shelf now,

15  given China Agrotech?

16          MR. BANK:  Um.

17          THE COURT:  In other words, it's not a basis to

18  dismiss the class claim?

19          MR. BANK:  Yeah, I think that -- yes, I think

20  as far as the class claim, obviously, the Supreme Court

21  is going to be dealing with it.

22          As far as the issue as to whether McCabe's

23  individual claims are timely which again depends on the

24  length of tolling, that is not at issue in China

25  Agrotech.

47

Proceedings

1        So again, being technical, that might not be a

2   basis for a stay of this case.  However, speaking of

3   courts and explanations and reasoning and so forth

4   throughout this hearing today, the Court might consider

5   or we might request a stay because given the issues that

6   the Court will be addressing in China Agrotech, it's

7   entirely conceivable that the Court will address the

8   issue of how long tolling lasts.  It's not the issue at

9   hand but as we all know in many Supreme Court decisions,

10  they give insight into related issues which is the case

11  here.

12       THE COURT:  To quote Judge Pauley, "So that we

13  can continue the madness, you would seek a stay in this

14  case based on Corwik on an issue on which cert was not

15  granted?"

16       MR. BANK:  What we were saying was that the

17  Court might consider -- we have not moved for a stay

18  obviously, it's just something that the Court --

19       THE COURT:  I suggest that that would -- if

20  that's the basis, that would not be a wise motion to

21  make.

22       MR. BANK:  I understand.

23       THE COURT:  You can make whatever motion you

24  would like --

25       MR. BANK:  I understand.

48

Proceedings

1        THE COURT:  Let me ask you this, why did you
2   file this case in this Court and not the Southern
3   District of New York?
4            MR. BANK:  Because of McCabe's residence.
5            THE COURT:  Well, that's now how the venue rule
6   works.
7            MR. BANK:  He received a phone call here.
8            THE COURT:  Is that the only basis?  Why didn't
9   you file it in the Southern District of New York?  You
10  could have.
11           MR. BANK:  That's true, I believe, yes.  But we
12  chose this venue because it was his residence and we
13  obviously could have chosen more than one venue but
14  that's what we chose.
15           THE COURT:  And so assume you survive -- assume
16  for argument's sake you survive  dismissal on a 12(b)(6)
17  motion, what would discovery in this case establish?
18           MR. BANK:  I don't think there would be much,
19  if any, discovery.  We would have to look at the
20  discovery from the Leyse litigation.  I don't anticipate
21  there would be any discovery and if so, it would be
22  minimal.
23           THE COURT:  It would --
24           MR. BANK:  I don't know that there would be --
25  there would be very little.

49

Proceedings

1          THE COURT:  If you don't believe there would be
2    any discovery, is that -- sitting here today, can you
3    identify any discovery that you would propound if you
4    survived as 12(b)(6) motion?
5          MR. BANK:  I am referring to fact discovery,
6    not expert discovery in terms of being able to get the
7    class certified.  That will be different but in terms of
8    what phone calls were made, and the like, I don't
9    anticipate there would be much, if any, additional
10   discovery.
11          But I would like if I --
12          THE COURT:  I guess the question is what's the
13   basis on which you could certify a class?
14          MR. BANK:  Because what we would have -- that's
15   why I mentioned expert discovery and as the Second
16   Circuit -- two of the three judges on the Second Circuit
17   panel in Leyse gave, and we quote it in the briefs, gave
18   a very -- 1
19          THE COURT:  In an oral argument, not in the
20   opinion.
21          MR. BANK:  Well, the opinion wasn't -- that's
22   correct.  The opinion was not inconsistent with that.  It
23   simply said that we didn't educe enough evidence.  It did
24   not say this class is inherently uncertifiable or
25   inherently deficient or defective.  It simply said Leyse

50

Proceedings

1    had not shown --

2         THE COURT:  But you have no basis to believe

3    that you could get the list of phone numbers that

4    received this phone call, is that correct?

5         MR. BANK:  That's correct.  That's why the

6    judges mentioned sampling and other possible techniques

7    that would deal with that.

8         THE COURT:  And there's no reason to believe --

9         MR. BANK:  That's right.

10        THE COURT:  -- that Judge Hellerstein was wrong

11   in saying that no one is going to remember a phone call

12   that lasted 20 seconds from 2009.

13        MR. BANK:  Well, I don't know.  The phone call

14   -- obviously not everybody would remember it, that's for

15   sure, but the phone call was from a very well-known

16   celebrity that unlike, for example, and I don't know your

17   personal experience of course, but not everyone is going

18   to remember if it's one of a thousand very typical robo

19   calls that unfortunately all too many people receive on a

20   regular basis, maybe not, but this was an unusual phone

21   call.  It was from a known celebrity.  I'm not aware of

22   thousands of celebrities leaving robo calls.

23        So yes, someone might remember --

24        THE COURT:  Why aren't you just relitigating

25   the class certification issue that Judge Hellerstein

51

Proceedings

1   denied and forum shopping it here?

2          MR. BANK:  Well, wherever we brought the case,

3   the issue would be the same.  Again, Corwik says, if I

4   may just pull it for a second.

5          THE COURT:  Well, I guess put aside Corwik for

6   a second because we're putting it on the shelf and I

7   don't think Corwik is a preclusion case.  It's a tolling

8   case.

9          You're trying to relitigate an issue another

10  judge in this Circuit decided with a different named

11  plaintiff in which the Second Circuit said was a basis to

12  find the class was unascertainable.  Why would this

13  Court do anything differently?

14         MR. BANK:  Well, because -- well, first off, I

15  don't know that it would but what I do --

16         THE COURT:  Well, so how can you bring the

17  case?

18         MR. BANK:  Well, I am explaining.  What I

19  anticipate, your Honor, is very simple.  Pursuant to the,

20  I'll say advice or a directive or what have you, or

21  suggestion of the two judges that we quote from the oral

22  argument, we would obviously look to coming up with a

23  much better method to deal with ascertainability.

24         Judge Hellerstein's decision never said that

25  this class could never be certified under any

52

Proceedings

1   circumstance.  Judge Hellerstein ruled and the Court of

2   Appeals recognized this --

3            THE COURT:  Well, here's the point, right?  You

4   had an opportunity to do discovery.  There was an

5   extensive discovery conducted.  There was a motion for

6   class certification made.  Why do you get to restart that

7   here?

8            MR. BANK:  The reason that Mr. McCabe has a

9   right to pursue his -- let me be more specific -- class

10  certification, assuming that his individual claim were

11  timely, of course, the reason is -- and again, it does go

12  back to Corwik, assuming that Corwik stands up before the

13  Supreme Court, it might or might not, but assuming that

14  the Ninth Circuit is reversed in the China Agrotech case

15  and Corwik remains the law in this Circuit, then the

16  question is whether there was -- whether the class was

17  found to be inherently uncertifiable.

18           THE COURT:  What --

19           MR. BANK:  So for example --

20           THE COURT:  -- what case stands for that

21  proposition?  Because you use that phrase --

22           MR. BANK:  Sure.

23           THE COURT:  -- a lot in your briefs --

24           MR. BANK:  I will --

25           THE COURT:  -- and --

53
                              Proceedings

1          MR. BANK:  Sure.  Corwik used -- first I will

2    start with Corwik refer to "a definitive determination of

3    the inappropriateness" --

4          THE COURT:  But we're not in the Corwik world.

5    I'm trying to figure out why you get to relitigate here.

6          MR. BANK:  When you say here --

7          THE COURT:  In the Eastern District of New York

8    or in the Southern District of New York --

9          MR. BANK:  Okay.

10         THE COURT:  -- or the Western District of New

11   York.

12         MR. BANK:  Right, this is what I am trying to

13   understand.  Okay.

14         THE COURT:  An issue of class certification for

15   the exact same class --

16         MR. BANK:  Well, because the case law is clear

17   as to when or somewhat clear, as to when a plaintiff may

18   and when a plaintiff may not do that.

19         THE COURT:  And --

20         MR. BANK:  And the Courts talk about -- like

21   for example in Kulig which again is in the briefs, K-U---

22   K-U-L-I-G, the Southern District 2014, said that in order

23   to be limited -- in order for American Pipe tolling to be

24   limited to an individual claim, as opposed to a class

25   claim, there must have been found to be in the prior

54

Proceedings

1    action, a deficiency in the purported class itself.  The

2    Eighth Circuit has said the same thing.  So has the

3    Third, so has the Ninth.

4              And gain, and now the issue before the Supreme

5    Court is whether even that standard remains applicable.

6              THE COURT:  I think you're going in circles

7    here because I am not concerned about the tolling issue.

8    I'm concerned about why any court here isn't required to

9    follow Judge --

10             MR. BANK:  Hellerstin.

11             THE COURT:  No, the Second Circuit --

12             MR. BANK:  No.

13             THE COURT:  -- decision --

14             MR. BANK:  Well, first it was a --

15             THE COURT:  -- affirming Judge Hellerstein's

16   decision.

17             MR. BANK:  Well, first it was a summary order

18   but are you talking bout preclusion principles?

19             THE COURT:  Or comity or law of the Circuit

20   doctrine.

21             MR. BANK:  Well it wouldn't be the law of the

22   Circuit because it was  summary order.

23             THE COURT:  Well --

24             MR. BANK:  But again, the point is if we --

25             THE COURT:  That's not how the appellate rule

55

Proceedings

1   works but keep going.

2          MR. BANK:  Okay.  That's -- my understanding is

3   maybe different, okay.  But my point is this, if we came

4   back -- let's say McCabe made the exact same proposal

5   based on that same evidence regarding

6   ascertainability --

7          THE COURT:  Right.

8          MR. BANK:  -- assuming that the law of

9   ascertainability has not changed.  Then the Court,

10  although nothing would be binding as I see it, then the

11  Court certainly might invoke comity in that situation and

12  deny certification but that's the whole point.  That

13  hasn't happened yet.  We haven't --

14         THE COURT:  Well, you just have swapped out one

15  name for the other and refiled the same complaint.

16         MR. BANK:  Well, I understand but that's what

17  these cases all deal with is, yes, that's what all these

18  cases deal with --

19         THE COURT:  Are these cases dealing with a

20  situation where there's something wrong with the

21  plaintiff, not the class.  So maybe the plaintiff didn't

22  buy the stock or didn't get the phone call or evidence

23  has shown that they're a defective named plaintiff.  And

24  you can refile with another class.

25              Here the class was found to be not

56

Proceedings

1   ascertainable.  Why do you get to file a successful

2   lawsuit?

3           MR. BANK:  If the class had been found to be

4   nonascertainable for a reasons that would necessarily be

5   repeated in any future class certification motion, then

6   class certification -- again, I don't know if anything is

7   binding, but certainly there would be comity if not

8   something more, okay?

9           But again the case law, it tends to be in the

10  context of tolling, that's true.  But again, the case law

11  is very clear that just because one -- I understand in

12  this case, I am counsel in both cases but I don't think

13  legally speaking that's relevant, as far as McCabe's

14  viewpoint.  So let's just for the sake of discussion

15  only, and I understand I am the same counsel, leally I

16  don't think that has relevance.

17          But let's suppose McCabe looked at Leyse's

18  litigation and just for the sake of the argument say,

19  wow, what a poor job they did with certification.  I will

20  find a lawyer who is going hopefully be able to do a much

21  better job and the lawyer meets with Mr. McCabe and he

22  says yes, I don't understand, why didn't Mr. Bank do

23  some sort of sampling or this or that.  I will represent

24  you.

25          THE COURT:  I can understand that if you didn't

57

Proceedings

1  go through discovery and file class certification motion,

2  but you litigated an entire class with the person

3  standing in on behalf of the class.  It's not like it was

4  -- and so this idea that it's inherently uncertifiable is

5  not an appealing distinction when you've litigated the

6  entire case but I get your point.

7              MR. BANK:  Well again, that is the distinction

8  that the case law draw and again, if the indication -- if

9  I represented to the Court now that we think Judge

10 Hellerstein got it wrong and the Second Circuit got it

11 wrong and we intend to bring the exact same class

12 certification motion on the same basis, vis-a-vis

13 ascertainability, there would certainly be an issue of

14 comity, if not something else but that's not the case.

15             THE COURT:  But so -- okay.  I would like to --

16 go ahead.

17             MR. BANK:  Oh, I am sorry, I think quite a

18 while ago, we talked about the issue of sanctions which I

19 may I address that briefly?

20             THE COURT:  What I would like to do is I am

21 going to give you an opportunity but I want to hear from

22 them on the sanctions motion and then I will give you as

23 much time as you like.

24             MR. BANK:  That's fine.  Thank you, your Honor.

25             MR. FEDER:  Thank you, your Honor.  On the

58

Proceedings

1   sanctions motion -- well, there's two sanctions motions,

2   ours and then a cross motion for sanctions and we think

3   that Mr. Bank or Mr. McCabe's motion can be denied out of

4   hand.

5           It's really just -- his reasons for sanctioning

6   us amount to disagreeing that his claim should be

7   dismissed and that disagreeing that he should be

8   sanctioned and the courts are very clear that that alone

9   isn't enough to make a sanction's motion.

10          The reasons for sanctions here are in line with

11  many of the issues your Honor raised just now in your

12  discussion.  The federal rules, Rule 23 and American Pipe

13  tolling are not designed to allow a lawyer or a litigant

14  to basically through trial and error, relitigate the

15  exact same questions over and over again at the expense

16  of a defendant who has already litigated those questions

17  in good faith in one case.

18          And that's what happened here.  We're not

19  asking for sanctions or recovery of costs in connection

20  with other case.  We're not asking this Court to sanction

21  him for anything he did in Leyse II which was in the

22  Southern District but all of that provides obviously

23  context for why what happens here and why bringing this

24  case was so egregious.

25          As your Honor alluded to, Mr. Bank had multiple

59

Proceedings

1   opportunities to make the arguments on class

2   certification in Leyse I.  Not only was there the motion

3   for class certification, there was a motion for

4   reconsideration.  There was a 23(f) petition.  There was

5   the appeal and there was the oral argument of the appeal.

6          And at each stage he somewhat varied his

7   proposed approach for how he could get around the

8   ascertainability issues that Judge Hellerstein raised.

9   And at each point, they were rejected.

10          So again, to invoke the words of Judge Pauley,

11   at some point you have to end the madness and from

12   Lifetime's perspective, there's no end in sight

13   because Mr. Bank is going to keep coming forward,

14   heedless of the Second Circuit's clear, biding rules on

15   when a case is time barred.

16          THE COURT:  But I take it there's no basis to

17   sanction on a Corwik ground, in light of the Supreme

18   Court grant's cert grant.

19          MR. FEDER:  We wouldn't say there's a sanction.

20   Our argument was never that Corwik a sort of standing

21   alone is a ground for sanctions.  Corwik talks about the

22   abusive options.

23          THE COURT:  No, but here's the point, right?

24   Like if I am talking about Rule 11, I have to identify

25   one, a pleading and two, a claim that has -- that is

60

Proceedings

1   patently frivolous, right?  And for something to be

2   patently frivolous, I have to identify some authority

3   that would make it such, right?  If there were a statute

4   that said you can't permit TCPA class action, that would

5   be clearly enough.

6          And so I have to find -- if one is to impose

7   sanctions here, one has to base it on a claim and on it

8   being patently frivolous.

9          MR. FEDER:  Absolutely, your Honor, and in all

10  candor, I don't think we would be moving for sanctions if

11  Corwik were the only issue because the fact is, Corwik is

12  a little bit of a squishier doctrine because you would

13  have to look at was it denied for reasons of, you know,

14  deficiencies in the class or was it the lead plaintiff

15  and there's cases distinguishing Corwik.

16         So we're not moving -- with this complaint is

17  not frivolous because of Corwik.  This complaint is

18  frivolous because of Giovanniello for the reasons that

19  you alluded to in your discussion with Mr. Bank, that

20  there is just no grounds here to get around the clear

21  binding law of the Second Circuit.

22         And the important thing to keep in mind with

23  objective resonableness. So Mr. Bank may believe in his

24  heart of hearts that he should have won Giovanniello or

25  that some day courts will get wiser and decide to go a

61

Proceedings

1  different route but Rule 11 doesn't look at what your

2  sort of hopes and dreams are.

3          It looks at what is objectively reasonable and

4  the reality is that no only was Giovanniello decided and

5  binding, it was well-reasoned and it was consistent with

6  every single circuit court that has addressed the issue.

7          The circuits have only continued to reaffirm

8  the principles since then. There's no contrary authority

9  whatever.  There's no valid basis to extinguish it.  Sand

10 so instead what we're left with is Mr. Bank's argument

11 that he should be permitted to preserve the arguments for

12 why Giovanniello should be overturned.

13         And completely in the abstract they might have

14 some appeal, he alludes to Brown v. Board and Plessey v.

15 Ferguson, obviously impact the litigation happens all the

16 time where you bring a claim.

17         And frankly, in order to have standing to bring

18 the claim, you have to be -- or sorry.  You bring the

19 claim to overturn a higher court decision.  In order to

20 have standing, you have to be subject to that decision,

21 so you know you're going to lose in a lower court until

22 you get to the point where you are going to be ale to get

23 something overturned.

24         But that's not what we have here.  This isn't a

25 plaintiff who found him or herself in the unfortunate

62

Proceedings

1    position of being bound by the Giovanniello rule and

2    saying I think that's wrong.  I want to bring it up with

3    the Second Circuit.

4            First of all, this is a four-year-old decision.

5    It was just decided and again, is fairly ironclad but

6    either way the Giovanniello problem here is entirely of

7    Mr. Bank's own making.  He was counsel in Giovanniello.

8    He knew the rule that came down and he was counsel in

9    Leyse I.

10           So he knew exactly, one, when the claim

11   accrued, two, when he filed the complaint and three, when

12   class cert was denied, so he knew full well that there

13   were three days left.

14           So if he wants you to avoid the Giovanniello

15   issue, he could or and should have brought another claim

16   at that point.

17           Taking a step back though, this also gets to a

18   broader point, your Honor was raising which is what is

19   the point of bringing this claim except to serially

20   relitigate and get multiple bites at the apple for the

21   same questions that have already been decided.

22           I am not surprised, frankly, that he didn't

23   bring a second claim in September of 2015 because there

24   would have been very little point in doing so.  But

25   there's no more point in doing so today.

Proceedings

1       The class issues have been decided.  If the

2  Supreme Court reverses, then we return in Leyse I and we

3  see what happens there.  But otherwise, this new case is

4  superfluous at best and either way is again clearly time

5  barred.

6           And so returning to the themes of ending the

7  madness, our perspective is that Lifetime should not have

8  to keep bearing the expense of -- and frankly, the Court

9  shouldn't have to keep bearing the expense of this.

10          THE COURT:  So what's the -- if one is to grant

11  sanctions, what is the relief that you're seeking?

12          MR. FEDER:  Well, under 1927, Section 1927

13  which --

14          THE COURT:  Assume we're only in the Rule 11

15  world for now.

16          MR. FEDER:  Right.  I have to look at the full

17  Rule 11 to see the range of sanctions.  Obviously from

18  our perspective, we would want recovery of costs and fees

19  for defending against this.

20          THE COURT:  You're only talking about -- in

21  other words, even if we're 1927, we're only talking about

22  fees and costs related to the McCabe action.

23          MR. FEDER:  Absolutely.  Yeah, we would not

24  contend that this Court has the authority to order

25  sanctions against Mr. Bank or McCabe or anyone related to

Proceedings

1   actions taken in completely separate cases.  Those cases

2   are obviously relevant to the overall consideration and

3   believe me, we would love to recover our costs for that.

4   I mean, in Leyse II, we filed the pre-motion letter with

5   Judge Pauley.  We went to the conference with Judge

6   Pauley and he said end the madness.

7            At that point, we began preparing our motion to

8   dismiss and, along with the motion for sanctions which

9   Judge Pauley encouraged, expressly and then in the

10  interim, the Second Circuit denied Mr. Bank's petition

11  for en banc rehearing of the Leyse I decision and then

12  another couple of weeks later, he voluntarily withdrew

13  the complaint in Leyse II, after we had already expended

14  costs.  That's sunk.  We realize that.

15           But the upshot is that this whole process

16  continues to --

17           THE COURT:  But --

18           MR. FEDER:  -- incur -- causes Lifetime to

19  incur costs that it really shouldn't be having to incur.

20           THE COURT:  Okay.  And why isn't it the case

21  that Mr. Bank, advocating for his client, can pick up

22  Giovanniello and say look, I understand this is a rule

23  decision but I have to look at it and see in which

24  situations it might apply.

25           And what I have here is a case involving a New

65

Proceedings

1    York statutory bar and I'm not going to extend tolling

2    when you've had a denial for class certification for New

3    York statutory bar.

4             Why is that not at least a non-frivolous

5    argument that there might be tolling available in a

6    situation where the certification is denied or the class

7    is not certified for unascertainability grounds, for

8    example?

9             MR. FEDER:  Well again, we would return to the

10   idea of objective reasonableness here.  You know, that

11   Mr. Bank may believe that, may have that theory but it

12   has to be objectively reasonable and for many of the

13   reasons your Honor alluded to during the discussion,

14   there's no case that's drawn that distinction.  There's

15   no remotely limiting language in Giovanniello.  There's

16   nothing that would objectively and reasonably give a

17   lawyer grounds to think that Giovanniello would not apply

18   to bar this case.

19            THE COURT:  Thank you.  Mr. Bank?

20            MR. BANK:  That's not the issue.  As I stated

21   before and again for what it's worth, we could not have

22   been more straightforward in our briefs.  We specifically

23   stated in the briefs and we reiterated here that although

24   we think that the factual differences between

25   Giovanniello and the present facts here, although we said

66

Proceedings

1  we thought those differences were material, we've said

2  all along, we've been as candid as any lawyer has

3  probably ever been, said there was no specific reason to

4  believe that Giovanniello would have come out differently

5  had the facts of this case been before the Court in

6  Giovanniello.

7         We didn't lie.  We didn't mislead.  We didn't

8  -- far from attempted to be misleading or anything of the

9  sort, we did the complete, complete opposite.  Now,

10 having said --

11        THE COURT:  So I take your point that if the

12 same facts weren't present in Giovanniello, the decision

13 would in your view, in your candor, would have come out

14 the same way.

15        MR. BANK:  Well, what we've said and I've said

16 it again here, we have no specific reason to believe

17 otherwise, that -- again, whether that means we had that

18 discussion earlier, whether that prediction, let's say on

19 McCabe's part or on my part as counsel, is correct or

20 not, that is a separate issue as to again being legally

21 technical if you will, whether Giovanniello is binding.

22        We think the facts that related to the issue of

23 law in Giovanniello are materially different.  That

24 they're not irrelevant or don't constitute irrelevant,

25 factual distinctions but let's say for the sake of the

67

Proceedings

1   discussion that the Court disagrees and believes that

2   either based on -- I mean we quoted the case law as to

3   that standard about there being materially different

4   facts in the cases or irrelevant distinctions, but for

5   whatever reason, and I don't think it matters, let's

6   suppose the Court finds that Giovanniello is binding.

7   Let's even suppose that Giovanniello was exactly on point

8   factually speaking, 100 percent, no argument, with this

9   case.  So it's just a Rule 23 denial, identical.  It

10  wasn't.

11          But let's just suppose it even was, so that I

12  could not in good faith or what have you, even try to

13  convince the Court that Giovanniello is not technically

14  binding.  Let's say I was not in a position to do that,

15  okay?  So I am sort of giving the defendant the best case

16  scenario from their point of view, okay?  I'm putting

17  myself in the weakest position, that I brought a case

18  knowing that it was 100 percent or virtually 100 percent

19  guaranteed to be doomed at least the district court level

20  because of a binding precedent that's undisputedly on

21  point in all respects.

22          Let's suppose that's the case, okay?  That's

23  the defendant's position but let's suppose that's

24  actually the case.

25          Does that mean that bringing this action with

68

Proceedings

1  that precedent hovering over it and dooming the case and

2  the district court is sanctionable and the answer clearly

3  under the case law and I would dare say even under common

4  sense, is absolutely not.

5          First of all as discussed at length in the

6  briefs and I don't think the defendants dispute it, cases

7  get overruled routinely.  Happens all the time at all

8  different levels.  That's why lawyers or parties are

9  allowed to assert a claim, even if that claim is, as in

10  at least my hypothetical that I just laid out here, even

11  if that claim is absolutely doomed at the trial court

12  level, a party can bring an action knowing that there's

13  binding precedent against it --

14          THE COURT:  Well, let's be clear.  Rule 11

15  talks about your claim either must be warranted by

16  existing law, which your hypothetical wouldn't exist.

17  Right?

18          MR. BANK:  Right.

19          THE COURT:  It would not be warranted by

20  existing law.

21          MR. BANK:  That's correct, your Honor.

22          THE COURT:  Or by a non-frivolous argument for

23  extending, modifying or reversing existing law.

24          MR. BANK:  That's what I want to get to.

25          THE COURT:  Okay? And where in your briefs do

69

Proceedings

1  you make a non-frivolous argument for reversing existing

2  law?

3           MR. BANK:  I assume, your Honor, just so

4  there's no confusion, I assume that your Honor is not

5  referring to having this court reverse anything, correct?

6  I just want to make sure that's clear.  Because I am

7  talking about preserving our rights for appeal.

8           THE COURT:  Well, no, no, no, the whole issue

9  in Rule 11 is that you file a pleading in a court and the

10 pleading, the claim, has to fall within one of these two

11 buckets; either it's warranted by existing law or there

12 is some basis for extending, modifying or reversing

13 existing law in that pleading.

14          MR. BANK:  Yes, I am just trying to be --

15          THE COURT:  And it has to be before us.

16          MR. BANK:  Well, no, no, several -- maybe I am

17 confused.  In terms of preserving one's rights for future

18 appeals, that is in this case it would be an appeal from

19 this case, I don't mean in a separate case but in this

20 case, one doesn't -- one can bring a claim that he

21 knows --

22          THE COURT:  But you still have to have an

23 argument --

24          MR. BANK:  Yes.

25          THE COURT:  -- that is non-frivolous --

70

Proceedings

1          MR. BANK:  Yes, yes, okay.

2          THE COURT:  -- for why the case should be

3   reversed.

4          MR. BANK:  Okay.  In terms of, just so I am

5   following you, that's all -- I am just being a little

6   technical here but in other words, in this case, just for

7   example is your Honor asking me why, for example, I have

8   some good argument as to why the Second Circuit and/or

9   the Supreme Court should reverse or revise or modify

10  Giovanniello?

11          THE COURT:  Right.

12          MR. BANK:  Okay.

13          THE COURT:  I'm just reading you the text of

14  Rule 11.

15          MR. BANK:  Yes.  And in other words, I am just

16  making sure I understand because again in my

17  hypothetical, obviously I cannot ask this Court to

18  reverse what in my hypothetical is a binding decision.

19  There's no argument about that.

20          THE COURT:  Right.  But you still have to have

21  -- when you file the pleading, you have to have some

22  basis for saying look, and that you have to articulate a

23  response for Rule 11 motion --

24          MR. BANK:  Yes.

25          THE COURT:  -- that's a non-frivolous argument

71

Proceedings

1   why Giovanniello was wrong.  It should be reversed.

2           MR. BANK:  By a higher court, not by this

3   Court, correct?

4           THE COURT:  It doesn't matter.

5           MR. BANK:  Okay.  I just want to make sure I

6   understand because I don't want the Court to think --

7           THE COURT:  It doesn't matter.  It certainly

8   has to be by this Court or another, that's irrelevant.

9           MR. BANK:  Okay.  By some court in this

10  litigation, correct?

11          THE COURT:  Listen, you're trying to bind me to

12  Rule 11.  I'm just telling you what it says.

13          MR. BANK:  Right.  Okay.  I just want to make

14  sure we're on the same page, that's all.  Okay.

15          THE COURT:  You know, I am asking you, what's

16  the non-frivolous argument for reversing Giovanniello?

17          MR. BANK:  Those arguments are and we discuss

18  them throughout the briefs and I discussed it at the

19  outset, that the rationales of American Type polling --

20  polling -- American Pipe tolling, continue to apply

21  during the appellate process.  Other courts have held

22  exactly that.

23          That a court in different context, some of the

24  exact same context here --

25          THE COURT:  No, no, no what court has said, and

72

Proceedings

1   I think I've asked you this multiple times, that American

2   Pipe tolling extends past a denial of class cert?

3            MR. BANK:  Sure, there's the case we cite in

4   the briefs and a few cases, the West Haven case which was

5   a 1988 case, District of Connecticut, that was a partial

6   denial of certification but with respect to that partial

7   denial, that's what it held.  There's a Davis case, which

8   was a Maryland case which was upheld on appeal in 1985.

9   There was a Supreme Court of Utah case which formally

10  adopted American Pipe tolling following federal case law

11  in that situation.  And that was a State Supreme Court

12  case that observed and I quote or paraphrased, "Whether

13  American Pipe tolling lasts only until the trial court

14  denies certification or continues through the appeal, was

15  left unclear by American Pipe and Crown Cork."

16           And then it said, American Tiara (ph.)

17  followed, "Several lower courts that have uniformly

18  concluded that the rationale for American Pipe tolling

19  continues until class certification is finally determined

20  on appeal."

21           Giovanniello is a relatively recent case.

22  Whether we can cite a case that specifically says

23  Giovanniello is wrong or disagreeable, I think is neither

24  here nor there.  It's the legal issues.  Is it

25  inconceivable --

73

Proceedings

1         THE COURT:  Eight other circuits reached the

2   same decision as Giovanniello.  Is there a federal

3   circuit that comes out the other way?

4         MR. BANK:  I will address it in a moment.

5   First, Judge, we think it's three circuits that actually

6   reached holdings.  Other circuits, as happens all the

7   time in law, made certain assumptions about that, only

8   because it --

9         THE COURT:  That may be but that --

10        MR. BANK:  -- wasn't the issue.

11        THE COURT:  -- the Second Circuit said eight

12   circuits have held this way and we follow them.  So it

13   may be, you know -- you're arguing uphill but the Second

14   Circuit --

15        MR. BANK:  Well, that might well be.

16        THE COURT:  -- said eight circuits ruled this

17   way and that's what we have to accept.

18        MR. BANK:  Okay.  Let's suppose -- I don't know

19   that the Second Circuit worded it exactly that way but

20   let's, I don't know -- in terms of actual holdings versus

21   dicta, all right, but let's just say for the sake of

22   argument that eight circuits did hold that way.  I don't

23   think that's really accurate but let's just say it is,

24   okay, for arguments sake.

25         Does that mean necessarily, does that mean that

74

Proceedings

1   the arguments which your Honor described, your Honor said

2   earlier and I wrote it down, and I hope I am quoting

3   accurately, in terms of what we're discussing right now,

4   you said that well, maybe before -- maybe some time ago

5   or before Giovanniello, McCabe would have had good

6   arguments.

7           So it's a mere fact that a certain number of

8   courts rule a certain way change the intellectual basis

9   of the argument?

10          THE COURT:  No.

11          MR. BANK:  No.

12          THE COURT:  But if it gets litigated and

13  decided one way, you can't then say well, then look,

14  unless you have a non-frivolous basis for modifying or

15  extending or reversing that precedent, you know, simply

16  filing pleadings that are inconsistent.

17          MR. BANK:  Judge, we discussed a bit today and

18  more in the briefs about whether the underlying

19  rationales of the tolling -- of American Pipe tolling?

20          THE COURT:  But if those were already presented

21  -- those were presented in Giovanniello, am I wrong about

22  that?

23          MR. BANK:  I believe that they were.  Yeah, I

24  assume they were but again, does the fact that that court

25  or any other courts reject a certain proposition, does

75

Proceedings

1    that mean that the proposition is frivolous as a matter

2    of substance?  The answer is no, and I will refer to a

3    case that that stood out from law school, which I am glad

4    I remembered; Central Bank of Denver.  We discussed it in

5    the briefs.  I don't remember what -- it was something

6    with a bank in issue.  I don't think the legal issue

7    itself is relevant.  Eleven circuits had addressed

8    whatever the legal issue was at issue in Central Bank of

9    Denver.  All eleven ruled the same way, all eleven out of

10   eleven and that's more than the three I think are at

11   issue here or more than the eight that defense

12   characterized it as, eleven out of eleven.  And the

13   Supreme Court reversed, reversed in that case and

14   overruled all other ten courts of appeals.

15           The question in answering whether an argument

16   is frivolous, I don't think can be based on some sort of

17   statistical analysis.  How many courts have addressed the

18   issue of what did they say?  It's on the nature of the

19   arguments.

20           So if I said, and you'll pardon me if I use

21   this sort of an extreme example, if someone -- if I sued

22   the planet Jupiter, I don't think it would matter -- and

23   I'm not trying to be silly, I'm just really trying to

24   make a point -- I don't think it would be relevant

25   whether the defendant can come up with cases, say that

Proceedings

1   you can't have standing for a case against Jupiter.  It

2   would not be relevant at all.  It would be what is the

3   substance of the argument?

4          Again, should counsel and/or the parties in

5   Central Bank, should they have been sanctioned too?

6          THE COURT:  But under that standard, any

7   argument satisfies Rule 11.

8          MR. BANK:  No, not --

9          THE COURT:  Why?

10         MR. BANK:  I just gave an example of one that

11  would not.

12         THE COURT:  Why?

13         MR. BANK:  Because there's no, unless I can

14  come up with it -- assume that I can come up with no

15  intellectually reasonable, doesn't mean you would have to

16  agree with it, reasonable basis to say I can sue the

17  planet Jupiter, then that too, that would seem to be

18  sanctionable.  It doesn't matter that they can't cite a

19  Ninth Circuit or a Second Circuit case on point.  I

20  assume they wouldn't be able to because --

21         THE COURT:  But that assumes a situation where

22  those issues have not been decided.  The difficulty I am

23  having here is --

24         MR. BANK:  Well, that's the Central Bank

25  situation.

77

Proceedings

1           THE COURT:  Well --

2           MR. BANK:  The issue had been decided by eleven

3  circuits.

4           THE COURT:  And what's not clear there is in

5  what posture was the party bringing the claim?  Were they

6  in a circuit --

7           MR. BANK:  I --

8           THE COURT:  -- in which they hadn't been

9  decided?  Were they the --

10          MR. BANK:  I --

11          THE COURT:  Rightfully, you know, no one is

12 suggesting it's a statistical analysis but you litigated

13 Giovanniello.  This issue was brought.  You're trying to

14 relitigate it again here.

15          MR. BANK:  But again, your Honor, if the issue

16 is -- if it's not -- if the arguments themselves, the

17 intellectual, if you want to call it, arguments

18 themselves, and let me just --

19          THE COURT:  Well, I guess your point is --

20          MR. BANK:  I don't -- it's --

21          THE COURT:  -- is that if Giovanniello didn't

22 say these are frivolous arguments --

23          MR. BANK:  No.

24          THE COURT:  -- right, it --

25          MR. BANK:  And neither has any court that I am

78

Proceedings

1    aware of.

2            THE COURT:  And unless someone -- if a court

3    were to deem a set of arguments frivolous, put aside the

4    Jupiter extreme examples --

5            MR. BANK:  Okay.

6            THE COURT:  -- then you can't raise those

7    arguments in a district court again --

8            MR. BANK:  If there's a binding opinion, if

9    there's --

10           THE COURT:  -- saying that they're frivolous.

11           MR. BANK:  I would -- well, it's somewhat of a

12   gray area.  Again, that didn't happen here.  I just think

13   -- just answering your question, I think that's somewhat

14   of a gray area because what if the case --

15           THE COURT:  But I --

16           MR. BANK:  -- ended up back in Supreme Court

17   and they said something else?

18           THE COURT:  You know, here --

19           MR. BANK:  But again that didn't happen here.

20           THE COURT:  -- is the issue, right?  Rule 11

21   clearly talks about non-frivolous arguments for

22   extending, modifying, or reversing existing law and I am

23   just trying to understand what the boundaries are.

24           MR. BANK:  Yeah.

25           THE COURT:  And --

Proceedings

1            MR. BANK:  It's not -- Judge, it cannot --

2    again, so are you saying, your Honor, that let's suppose

3    -- and really, I have no idea what the answer is, but

4    let's suppose that in the Central Bank case, let's

5    suppose that case had been initiated in one of the

6    circuits, one of the eleven circuits that had already

7    ruled on whatever the issue was, should that lawyer

8    and/or a party be sanctioned all the way through until

9    they finally win at the Supreme Court?  The answer seems

10   to be obviously no.

11           Well, what about cases in which the Supreme

12   Court which I think is even more than the equivalent of

13   all of the circuits, what about -- and it's happened many

14   times, what about in situations in which the Supreme

15   Court itself, overrules itself, whether it be a recent

16   opinion as in the Texas sodomy case was only an eighteen-

17   year-old opinion --

18           THE COURT:  Lawrence v. Texas, yes, yes.

19           MR. BANK:  Okay.  Now should those lawyers or

20   parties who brought that case in the face of Supreme

21   Court -- should they have been sanctioned all the way

22   through and then finally, only when they win at the

23   Supreme Court, by I think it was five to four, or six to

24   three, have the sanctions reversed or should it be based

25   on the nature of the arguments?

80

Proceedings

1          THE COURT:  Well, the argument --

2          MR. BANK:  How does the law change if it

3   becomes --

4          THE COURT:  Well --

5          MR. BANK:  -- everyone follows everyone else

6   and then okay, this is now ossified, it can never -- what

7   if all eleven -- what if all --

8          THE COURT:  But that's not what -- Rule 11

9   doesn't contemplate that, right?

10          MR. BANK:  Sure it does.

11          THE COURT:  I'm just trying to figure out what

12   the --

13          MR. BANK:  Contemplate what?

14          THE COURT:  It doesn't contemplate that there

15   can -- simply because you can -- an argument can be

16   reversed at any point in time, and the Supreme Court can

17   come out the other way, that for any such argument, it is

18   always nonsanctionable.

19          MR. BANK:  Well, and I am not --

20          THE COURT:  That's what your rule suggests.

21          MR. BANK:  Not -- a little bit different.  I am

22   suggesting that, obviously the Supreme Court can do

23   anything, okay?  Let's just say.  I am talking about the

24   substantive nature of the arguments.  I'm not making a

25   statistical prediction on what, if anything, the Supreme

81

Proceedings

1    Court would do in this case.

2              THE COURT:  Well, I have to evaluate whether or

3    any court has to evaluate whether or not the argument is

4    a substantively argument, even if the Second Circuit --

5              MR. BANK:  Correct.

6              THE COURT:  -- or the controlling circuit has

7    come out the way --

8              MR. BANK:  Yes.

9              THE COURT:  -- whether it's a --

10             MR. BANK:  Yes, otherwise it all becomes

11   ossified.

12             THE COURT:  -- substantively, reasonable

13   argument.

14             MR. BANK:  Well, yes, exactly.  Again, if you

15   want to -- and I do have a bit more to say, so I hope I

16   will be able to address it all, if we were in a law

17   school classroom and you're the professor and said to the

18   class --

19             THE COURT:  That would be sad class but you can

20   go ahead.

21             MR. BANK:  Well, that might depend on, you

22   know, the details.  And you were to say to the class that

23   here's the case law -- let's just even say it's this case

24   -- here's the case law and it's not three circuits, not

25   eight, let's just say even all of them have said this,

Proceedings

1   even the Supreme Court maybe.  And a student gets up and

2   says well, here's why I think those decision are wrong.

3   I think American Pipe tolling should continue whatever

4   the reasons we laid out are.

5          He might say that -- I don't know that -- if

6   you said oh, that student made a good intellectually

7   valid point, such that maybe if none of these cases

8   existed and I weren't bound and I were the judge, I would

9   rule in that person's favor -- not would rule but might

10  rule, would consider it.  By definition, that's not

11  frivolous.

12         If it is, if the Court were to hold that

13  because eight circuits rejected my argument, not having

14  said are frivolous but because eight -- it's not eight, I

15  think it's three but let's say three, eight, whatever

16  umber, including the Second Circuit has rejected the

17  argument and therefore the argument is frivolous, then

18  everything becomes -- the law becomes ossified, nothing

19  can ever really be challenged.  I don't know if the

20  defendant would say that because I was a lawyer in the

21  other two cases, I as a lawyer am precluded.  I don't

22  think that they would say that but maybe they would.

23         So it's a qualitative issue.  It's not

24  quantitative.  It doesn't matter how many circuits.  If

25  tomorrow the Twelfth -- not Twelfth Circuit, if tomorrow

83

Proceedings

1   the First Circuit piles on, does that make my issue any

2   less or more warranted?

3            THE COURT:  I --

4            MR. BANK:  And what happens if tomorrow the

5   First Circuit -- let's just say by --

6            THE COURT:  I am just trying to understand --

7            MR. BANK:  Let's take, for example, the Corwik

8   situation --

9            THE COURT:  -- from you --

10           MR. BANK:  Yeah.

11           THE COURT:  And no one has suggested a

12  quantitative test, I am just trying to understand what

13  the term non-frivolous means --

14           MR. BANK:  Yes.

15           THE COURT:  -- and which I think I understand

16  your position.

17           MR. BANK:  If you were to conclude that as an

18  intellectual matter, that my argument -- that our

19  arguments are ridiculous, okay, that the idea that

20  American Pipe tolling ought to continue -- keep in mind

21  American Pipe tolling, it's not a matter of statutory

22  interpretation, it's a public policy issue, that's how

23  the courts look at it.  It's not based on an

24  interpretation.

25           So if your Honor were to say -- if your Honor

84

Proceedings

1    were to have the view point that the notion that American

2    Pipe tolling should continue as courts have said -- many

3    courts have said this, not in the Second Circuit or not

4    in Giovanniello, many courts have said this, that tolling

5    does continue until there is an appeal because otherwise,

6    it's exactly the problem that gave rise to tolling in the

7    first place.

8            How would it help the judicial system -- let's

9    say in this situation after, as defendants seem to wish,

10   they seem to wish that McCabe, if you were going to sue,

11   did so right after Judge Hellerstein's class

12   certification denial, so let's suppose he and other like-

13   minded class members, bring those cases as protected

14   measures.

15           Now they don't know what's going to happen on

16   appeal, so let's suppose it turned out that the class

17   certification denial were reversed on appeal, how does

18   the pendency of all those claims which the defendant knew

19   about from day one from the class -- by virtue of the

20   initial Leyse class action, how would the pendency of all

21   of those claims be beneficial to anybody?

22           Do you really think the defendant -- obviously,

23   the defendant didn't want to be sued by anybody.  I

24   understand.  Do you really think that the defendant's

25   preference was that gee, we would really rather be sued

85

Proceedings

1   by McCabe on September 23rd, 2015 than whatever it is

2   that he brought this case after the Second Circuit's

3   ruling?  The hope, the theoretical, at least, hope, was

4   that McCabe wouldn't have to bring his own action because

5   the appeal would be favorable to him.  It wasn't but

6   to --

7            And I am almost -- I don't mean to be dramatic

8   and say I am offended by the concept but I am.  The

9   concept that I can bring a -- and this Court, your Honor

10  yourself said unless I am misquoting your --

11  mischaracterizing, you said that my arguments had -- that

12  they might have been good arguments before Giovanniello

13  but to me that means they might have been winning

14  arguments before Giovanniello.  I have conceded for the

15  sake of discussion only, that at least before this Court,

16  I have conceded for the sake of my hypothetical before

17  that Giovanniello was binding and therefore, we cannot

18  win in this Court if that's the case, which I don't doubt

19  that your Honor seems to see it very much that way and I

20  understand that and that's fine.

21            THE COURT:  This is argument.

22            MR. BANK:  I am not --

23            THE COURT:  I don't see anything one way or the

24  other.

25            MR. BANK:  Okay.

Proceedings

1          THE COURT:  But go ahead.

2          MR. BANK:  Well, I thought you saw it that way.

3     I understand.  Okay?  The --

4          THE COURT:  One has to write an opinion before

5     one can give a decision.

6          MR. BANK:  Okay.  Fair enough.  Maybe I am

7     making a prediction.  But when numerous courts have held

8     in different context, partial class certification

9     denials, class certification decisions that were then

10    decertified or followed by a dismissal and cases that we

11    discussed through -- I mean, I can repeat them all but

12    they're all throughout the very lengthy memorandum in

13    opposition to their sanctions and dismiss the motion.

14         THE COURT:  I will say on that point, it

15    doesn't appear that -- and I can't say you violated any

16    rule but why you filed 65, 70-page briefs in this case?

17         MR. BANK:  Why did I?

18         THE COURT:  Yeah.

19         MR. BANK:  The issues that were -- I am not

20    sure what you're --

21         THE COURT:  My point is --

22         MR. BANK:  I don't think I -- I have given --

23    well, again the defendant -- well, I wanted to address

24    all of the issues and this is one of the problems I've

25    seen in this case and others throughout my career, and

87

Proceedings

1   this happens all the time and why -- not always, not

2   always, but many times, my briefs are much longer than a

3   defendant's brief and this is exactly why, your Honor,

4   and I'm telling you exactly how it's been.

5           The defendant describes the case in a sentence

6   or two and maybe a paragraph, and I then feel the need

7   to, if they're right, then so be it --

8           THE COURT:  Fair enough.

9           MR. BANK:  That's why I describe cases --

10          THE COURT:  You can keep --

11          MR. BANK:  -- I probably spend 20 or some-odd

12  pages describing the case law that clearly supported

13  either by being exactly on point or similar, supported

14  McCabe's position.  So it's the defendant -- and the need

15  to disparage me and/or McCabe, says the plaintiff

16  exhaustively --

17          THE COURT:  What -- okay.

18          MR. BANK:  -- discussed these cases.

19          THE COURT:  Why don't we --

20          MR. BANK:  Thoroughly discussed the cases.

21          THE COURT:  Do you have any other point to make

22  on the Rule 11 motion?

23          MR. BANK:  Yes.  so just to reiterate, I said

24  earlier I guess at the outset of this discussion, that

25  when a claim is as I've laid out in at least the

Proceedings

1    hypothetical, known to be doomed or likely to be doomed,

2    in this case regarding Giovanniello, counsel or parties

3    can assert those same claims in order to preserve their

4    rights for an appeal.

5            Lifetime, other than citing cases that oppose,

6    there were cases on both sides of course, that oppose

7    McCabe's position, Lifetime has never even argued or

8    suggested that the position in substance was frivolous.

9    All they've done is say look at all these courts -- look

10   at all these courts that have said X, and therefore, when

11   Mr. Bank comes along and Mr. McCabe comes along and says

12   Y, oh, that's frivolous.

13           They've never said here's why it would be off

14   the wall or ridiculous or what have you for American Pipe

15   towing to continue as McCabe has argued.  They have never

16   said that and the truth, I believe, is because there is

17   no argument for that.  There is an argument to say it

18   shouldn't continue.  That's the public policy, we can

19   dispute that but the notion that it would be better to

20   have all of these protective actions filed after

21   certification but before an appeal, the notion that

22   that's frivolous is itself frivolous and numerous courts

23   have rejected that.  Some have accepted it.  That's fine.

24           But no court has said that our position is

25   frivolous.  It's far from frivolous.  And if the issue

Proceedings

1    ever did get to the Supreme Court, I wouldn't be

2    surprised if it went the other way, just like in Corwik.

3    It might, six, seven, who knows -- I don't know how many

4    circuits held the same thing as Corwik about an

5    inherently uncertifiable class cannot benefit from

6    American Pipe tolling in a subsequent class action.

7    Well, now that's before the Supreme Court.  I don't know

8    what it will do.

9            But my point being that all the defendant's

10   arguments have been based on have been is we don't like

11   Mr. Bank, Judge Pauley said when are we going to end the

12   madness.  That was in a very different context.  It was

13   because Leyse already had a judgment at the time that --

14   as Judge Pauley saw it, and I think he made a good point,

15   which Lifetime hadn't actually made itself but Judge

16   Pauley did during the conference, which is that because

17   we had Leyse unlike in this case, had a judgment in its

18   favor, as of the time he commenced the briefly existing

19   Leyse II action, that case in controversy requirement of

20   the Constitution could not be met. And we soon after,

21   withdrew that case.

22           Obviously the defendant could have moved for

23   sanctions in that case but for whatever reason decided

24   not to.  Essentially, they are asking this Court to

25   sanction me -- sanction me because of Leyse II.  They say

Proceedings

1   it's all about the context.  It's not -- that's not what

2   they're saying.  Their papers are very clear that they've

3   repeated the madness quote throughout their papers, and

4   they're trying to get this Court, just being frank, to

5   hold it against me that I brought Leyse II.

6           But regardless, Judge Pauley commented only on

7   the issue of the judgment.  We did withdraw that case,

8   not long after that.  Judge Pauley never even gave a hint

9   as to his viewpoint on any of the issues that are before

10  this Court, not a clue.  And I, unlike the defendant, we

11  provided the entire transcript so that again --

12          THE COURT:  Well, look --

13          MR. BANK:  -- in the interest of being candid.

14          THE COURT:  I don't think there's a basis to

15  sanction for bringing Leyse II.

16          MR. BANK:  Okay.  So then I will move on from

17  that.

18          THE COURT:  You can move on.

19          MR. BANK:  Okay.  I appreciate that.

20          THE COURT:  I don't think this Court has the

21  ability to sanction --

22          MR. BANK:  And I appreciate that.

23          THE COURT:  -- on conduct --

24          MR. BANK:  Let's move on.

25          THE COURT:  -- in another court.

91

Proceedings

1          MR. BANK:  Right.  And again to move on, if

2  this Court -- if in any case, the Court were to find as a

3  matter of statutory interpretation, an argument were off

4  the wall, or ridiculous, sanctionable, this is a public

5  policy issue but it's the same thing, if -- I'll ask only

6  rhetorically, of course, but rhetorically, does this

7  Court think that the concept, the intellectual basis for

8  arguing that American Pipe tolling ought to continue as a

9  matter of public policy until or at least until an

10  appeals court addresses rules on a class certification

11  denial is such a ridiculous position that any counsel who

12  brings that position should be sanctioned?  Again, I said

13  I'm asking rhetorically.

14          But the answer, as I see it, would have to be

15  yes, that that position as an intellectual matter, as a

16  substantive matter, be so ridiculous --

17          THE COURT:  And you would agree, would be an

18  objective standard.

19          MR. BANK:  I'm sorry?

20          THE COURT:  It would have to be an objective

21  standard.

22          MR. BANK:  Yeah, objectively ridiculous.  That

23  no half-brained attorney, if you want to put it that way,

24  would even think to make -- no law student would make

25  that argument, or no educated law student, what have you.

92

Proceedings

1    And again, the defendant has never even

2 suggested that answer is yes.  All they said Mr. Bank is

3 a troublemaker.  He represented in Giovanniello.  He

4 represented Leyse, and Leyse II and McCabe.  And all

5 these courts have said X and Giovanniello was one of them

6 and therefore, he should be sanctioned.

7    They've never said the argument itself is

8 frivolous.  They've never said for example, as I think

9 they would have to show or convince the Court of, that if

10 this case were to get to the Supreme Court, there is no

11 way, no possibility that the Supreme Court would rule in

12 McCabe's favor.  They can't show it.  They can't -- I

13 don't think they can convince the Court of that at all.

14 And I don't see how.  But I think that's what they would

15 have to show to get sanctions.  It's a qualitative issue.

16    Now let's look -- the Second Circuit in the

17 Eastway Construction case, a 1985 case, it's in the

18 briefs, said that "Sanctions are warranted only where (a)

19 there is no chance of success under the existing

20 precedence and" -- and the key here is and because again,

21 I am assuming for sake of discussion that we are bound by

22 Giovanniello, okay, in this Court.

23    "And no reasonable argument can be made to

24 extend, modify, or reverse" -- and I am quoting your

25 Honor actually -- "reverse law as it stands."  Well,

Proceedings

1  let's say as it stands, Giovanniello has said that ths

2  claim is precluded based on American Pipe tolling or the

3  limited period to which it applies.  We have no -- McCabe

4  has no valid argument for coming back to the Second

5  Circuit or en banc and/or the Supreme Court which a lot

6  of these cases deal with to say that hey, we think

7  American Pipe tolling ought to continue through the

8  appellate process.

9         I mean, I really mean this without trying to be

10  blustering or anything, it is offensive to me, the idea

11  to me that I ought to be sanctioned, for making an

12  argument that has never even been suggested was

13  frivolous, is offense to me.  The idea that because I am

14  in a -- at least at the moment maybe, in a theoretical

15  minority of people taking my position --

16         THE COURT:  And Mr. Bank, I want to give you as

17  much opportunity as you need --

18         MR. BANK:  Okay, so I will move on.

19         THE COURT:  -- but you've said that four or

20  five or six times now.

21         MR. BANK:  Okay.  Then I will move on.  I will

22  move on.  I know.  I can do that, your Honor.

23         THE COURT:  And --

24         MR. BANK:  Like I can do that.  In the Gilmore

25  case, again, Second Circuit 1987, in that case, the Court

94

Proceedings

1   rejected on the basis of binding precedent, a challenge

2   to a Supreme Court decision that the Second Circuit had

3   affirmed or I should say followed, only the year before,

4   okay, Giovanniello, well I will say for our purposes is

5   just as recent, even though it's a few years older, okay?

6   So this is a recent decision of the Second Circuit and

7   someone challenges, someone raised the argument and did

8   the Court sanction him?  No, in response to the motion

9   for sanctions, the Court sanction him?

10          No, in response to the motion for sanctions,

11   the Court said the appellee, who raised the argument,

12   "The appellee has prudently preserved his position which

13   would enable him to seek Supreme Court view on this

14   issue.  Although we find that we," as I think this Court

15   might find -- might find -- "that we are constrained to

16   follow the challenged rules.  The appellees attack on the

17   rule is far from frivolous."

18          So there was Second Circuit opinion following

19   the Supreme Court which is maybe even stronger, following

20   the Supreme Court, a party, a lawyer came along and said

21   we don't think that's right.  We would like to get this

22   issue back to the Supreme Court.  I don't know whatever

23   happened s far as that went.  Sanctions were requested

24   and denied because the Court said lawyers are allowed to

25   preserve the issue of argument.

95

Proceedings

1          McKnight, was a Supreme Court case --

2          THE COURT:  And, Mr. Bank?

3          MR. BANK:  Yes.

4          THE COURT:  I'm scrolling, I am reading your

5    brief --

6          MR. BANK:  Okay.

7          THE COURT:  -- as you're reading, I can predict

8    the words coming out --

9          MR. BANK:  Okay, that's fine.

10         THE COURT:  -- of your mouth, so you don't need

11   to repeat them for me.

12         MR. BANK:  And then may I address the sanctions

13   -- our sanctions motions?

14         THE COURT:  Yes.

15         MR. BANK:  Okay.  The reason, as we argue

16   extensively in our briefs and this has been -- I know the

17   defendants give context as they decide, so I will do the

18   same for a moment -- throughout all this litigation, and

19   I can recount them off the top of my head, I have had to

20   deal with numerous, blatant falsehoods by the defendant

21   in this case, which probably one of the reasons my brief

22   of 55 pages was so long, okay?

23         Lifetime contends, just for example, this is

24   part of its  modus operandi, ever since, Leyse I, and

25   continuing until the present day, that Lifetime -- and

Proceedings

1   I'll get into the specifics just in a moment, Lifetime

2   makes charge after charge after attack after attack for

3   the obvious purpose of trying to bias the Court against

4   me and/or my client, okay, which is bad enough but when

5   the attacks are factually baseless, that's even worse.

6   So I will just begin with one specific and go from there.

7           Minor point but it's a --

8           THE COURT:  And I urge you, Mr. Bank, you know,

9   we're well over time, so if you'll just --

10          MR. BANK:  I'll try to move.

11          THE COURT:  -- if you're just repeating what's

12  in your brief --

13          MR. BANK:  Okay.  Okay.  So then --

14          THE COURT:  -- then you don't need to do that.

15          MR. BANK:  Then we covered that -- all right,

16  then I did cover that all in the briefs.  But again, I

17  think when -- I think in this case, this idea of zealous

18  advocacy, I think was significantly overstepped and

19  again, I -- I would ask at least rhetorically if there

20  was anything in these 70 or 80 or 90 pages of briefs that

21  we submitted whether there was even anything that is even

22  arguably false or misleading or less than completely

23  forthright.  The defendant's papers are chock-full of

24  those kinds of remarks and incorrect descriptions of case

25  law.  Blatantly false descriptions of facts.

Transcriptions Plus II, Inc.

Proceedings

1    Mr. Bank has represented Mr. McCabe in numerous

2  TCPA lawsuits.  One other and an objection in another

3  case.  If numerous other TCPA is lawsuits, is one lawsuit

4  plus one TCPA matter where there was an objection to a

5  class settlement, then I guess I've represented Mr.

6  McCabe in many other TCPA lawsuits.

7    Mr. McCabe has represented -- Mr. Bank, excuse

8  me, has represented Mr. McCabe and Mr. Leyse in numerous

9  cases around the country, which is irrelevant but it's

10 not even true.  I've had a couple of case in other cases

11 with Mr. Leyse.  I don't think any with Mr. McCabe.

12    And again, all this - the defendant could have

13 stuck to just the issues but again, it just comes back to

14 the rhetorical question, who between the parties, if any,

15 who had papers that were full of false and misleading

16 representations.  Was it defense counsel or was it me?

17 And I submit to the Court that it's not even -- it's as

18 black and white an issue as there could be.

19    And the defendant, other than making things up

20 which I responded to, not a single sentence that I

21 recall, at least, not a single sentence in any of the

22 80-some odd or 90-some odd pages in our briefs --

23    THE COURT:  Mr. Bank, now you're repeating

24 yourself again --

25    MR. BANK:  I know.  I apologize.

Transcriptions Plus II, Inc.

98

Proceedings

1          THE COURT:  -- for the fifth or sixth time.

2          MR. BANK:  I apologize.  So I guess I will --

3          THE COURT:  If you want to make any points that

4    you haven't made already, I will give you the opportunity

5    to do so but, you know, we're well over time.

6          MR. BANK:  Okay.

7          THE COURT:  And --

8          MR. BANK:  May I reserve?  I don't know what

9    they will --

10          THE COURT:  We're kind of done here.

11          MR. BANK:  Okay.

12          THE COURT:  Unless there's anything you would

13    like to add at the end here.

14          MR. BANK:  Okay.  Oh, I am sorry.  I am sorry.

15          MR. FEDER:  No, I don't think -- I think your

16    Honor covered it in your discussion with Mr. Bank.

17          THE COURT:  Anything else, Mr. Bank?  One final

18    opportunity and if it's just repeating what --

19          MR. BANK:  No, no, I will try not to --

20          THE COURT:  -- it is in your brief --

21          MR. BANK:  -- do that.

22          THE COURT:  I assure you that I've ready your

23    briefs.

24          MR. BANK:  Okay.  Okay.

25    (Pause)

99

Proceedings

1          MR. BANK:  No, I think I've said everything

2    more than once, I am sure.

3          THE COURT:  All right.  Thank you.  I

4    appreciated the argument.

5          MR. BANK:  Thank you, your Honor.

6          THE COURT:  And have a nice holiday.

7          MR. BANK:  Thank you, likewise.

8          MR. FEDER:  Thanks, your Honor.

9               (Matter concluded)

10                   -o0o-

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

100

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **st** day of **December**, 2017.

*Linda Ferrara*

Linda Ferrara

AAERT CET**D 656
Transcriptions Plus II, Inc.