UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

KEVIN MCCABE,

                              Plaintiff,

              -against-

                                                    **REPORT AND**
                                                    **RECOMMENDATION**
                                                    17-CV-908-ERK-SJB

LIFETIME ENTERTAINMENT SERVICES, LLC,

                              Defendant.
-------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

Plaintiff Kevin McCabe ("McCabe") filed this action against Lifetime

Entertainment Services, LLC ("Lifetime") individually and on behalf of a putative class,

alleging a violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. §

227(b)(1)(B), and its companion regulation, 47 C.F.R. § 64.1200(a)(2).

The Honorable Edward R. Korman referred three motions to the undersigned for

a report and recommendation: (1) Lifetime's motion to dismiss filed pursuant to Fed. R.

Civ. P. 12(b)(6) for failure to state a claim; (2) Lifetime's motion for sanctions against

Plaintiff's counsel, Todd Bank ("Mr. Bank"); (3) and a cross-motion for sanctions

brought by Mr. Bank against Lifetime's attorneys.

For the reasons stated below, the court respectfully recommends that the motion

to dismiss be granted, Lifetime's motion for sanctions be granted, and the cross-motion

for sanctions be denied.

Background and Procedural History

I.       The Present Lawsuit

The Complaint in this action was filed on February 16, 2017, with Kevin McCabe

as lead plaintiff ("McCabe Complaint").  (Dkt. No. 3).  It alleges that on August 19 or 20,

2009, Lifetime placed one or more telephone calls to McCabe using an artificial or prerecorded voice message that advertised the commercial availability and quality of Lifetime Television, a cable-television network that Lifetime owns and operates. (Compl. ¶ 7).  McCabe alleges that he did not agree to receive these calls (Compl. ¶ 10), and the phone call(s) violated the TCPA.  (Compl. ¶¶ 13-15).

McCabe seeks statutory damages of $500 per violation for himself and on behalf of the other members of the putative class.  He also seeks additional statutory damages, claiming that Lifetime's violations were knowing or willful; an injunction; costs; and attorney's fees.  (Compl. at 5 (Prayer for Relief)).  McCabe styled his case as both an individual and putative class action, as follows:

> 1. Plaintiff brings this action individually and as a class action on behalf of all persons to whose residential telephone lines Defendant, or a third party acting on behalf of Defendant, placed one or more telephone calls using an artificial or prerecorded voice that delivered a message that advertised the commercial availability or quality of property, goods, or services, other than Defendant, its officers, employees, and representatives, and their families (the "Class"), during the period from August 17, 2009, to the present (the "Class Period").

> 2. Plaintiff's claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(B), and the regulation, 47 C.F.R. § 64.1200(a)(2). . . .  Plaintiff seeks, individually and on behalf of the other Class Members, statutory damages, injunctive relief, attorney's fees, and costs[.] . . . .

> 7. On or about August 19 or 20, 2009, Lifetime, or a third party acting on behalf of Lifetime, placed, to McCabe's residential telephone line, a telephone call using an artificial or prerecorded voice that delivered a message ("Message") that advertised the commercial availability and quality of Lifetime Television, a cable-television network that Lifetime owns and operates (a "Lifetime Robocall").

(Compl. ¶¶ 1, 2, 7).  McCabe's counsel in this case is Mr. Bank.

II.    <u>The Southern District of New York Lawsuits</u>

    A.    *Leyse I*

Mr. Bank filed a lawsuit with virtually identical claims on August 16, 2013, in the United States District Court for the Southern District of New York before Judge Alvin K. Hellerstein.  (*See Leyse v. Lifetime Entm't Servs., LLC* ("*Leyse I*"), 13-CV-5794 (S.D.N.Y.), Dkt. No. 1).  The plaintiff, Mark Leyse, also sued Lifetime, pursuant to the TCPA on both an individual and class basis:

> 1. Plaintiff brings this action individually and as a class action on behalf of all persons to whose residential telephone lines Defendant, or a third party acting on behalf of Defendant, placed one or more telephone calls using an artificial or prerecorded voice that delivered a message that advertised the commercial availability or quality of property, goods, or services, other than Defendant, its officers, employees, and representatives, and their families (the "Class"), during the period from August 17, 2009, to the present (the "Class Period").
>
> 2. Plaintiff's claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(B), and the regulation, 47 C.F.R. § 64.1200(a)(2). . . .  Plaintiff seeks, individually and on behalf of the other Class Members, statutory damages, injunctive relief, attorney's fees, and costs. . . . .
>
> 7. On or about August 19, 2009, Lifetime, or a third party acting on behalf of Lifetime, placed, to Leyse's residential telephone line, a telephone call using an artificial or prerecorded voice that delivered a message that advertised the commercial availability or quality of Lifetime Television, a cable-television network that Lifetime owns and operates.

(*Leyse I*, Compl. ¶¶ 1, 2, 7).

On February 28, 2014, following completion of discovery, Plaintiff filed a motion for class certification.  (*See Leyse I,* Dkt. No. 25).  On September 22, 2015, Judge

Hellerstein denied the motion.  (*See Leyse I,* Dkt. No. 96); 2015 WL 5837897, at *1
(S.D.N.Y. Sept. 22, 2015).

In the course of denying the motion, Judge Hellerstein noted that discovery had
revealed the following:

Lifetime is a cable television channel that airs original scripted series,
nonscripted reality series, and movies, along with syndicated programming that
originally appeared on network television.  In 2009, Lifetime was available in New York
City to customers of Time Warner Cable ("TWC"), RCN, Cablevision, DirecTV, and
DISH, with TWC being the predominant cable provider.  *Leyse I*, 2015 WL 5837897, at
*1 (citations omitted).

In 2009, Lifetime began airing the television show "Project Runway."  Project
Runway, which had aired on the television channel Bravo for its first five seasons and is
hosted by Tim Gunn ("Gunn"), is a reality television series in which contestants compete
against one another in designing specific articles of clothing.  In 2009, Project Runway
moved from Bravo to Lifetime, but reruns of the show continued to be aired on Bravo.
Prior to the sixth season premiere of Project Runway, scheduled to be aired on August
20, 2009, TWC moved Lifetime from its long-held channel position, Channel 12, to
Channel 62.  *Id.* (citations omitted).

To notify its customers of this change, Lifetime and Gunn recorded the following
message:

> Time Warner Cable customers, this is Tim Gunn.  Do you
> know that Lifetime has moved to Channel 62?  Tune in to
> Lifetime on Channel 62 tomorrow at 10 p.m. and see me and
> Heidi Klum in the exciting Season 6 premiere of "Project
> Runway."  The "Project Runway" season premiere tomorrow
> at 10 p.m., following "The All–Star Challenge."  Be there and
> make it work-only on Lifetime, now on Channel 62.

*Id.* To broadcast the message, Lifetime provided a third-party company with a list of zip codes for the areas of New York City in which TWC customers lived, and the third-party obtained (by purchasing them from a vendor) phone numbers of individuals living in those zip codes. *Id.* at *2 (citations omitted). Sometime in July 2009, Leyse heard the Lifetime message on his roommate's answering machine or voicemail. *Id.* Four years later, he filed the lawsuit against Lifetime in the Southern District of New York. *Id.*

The motion for class certification sought certification of a class of "all persons to whose residential telephone lines" Lifetime initiated "in August 2009, a telephone call using a prerecorded voice to deliver" the Gunn message. *Id.* at *5. Despite the completion of discovery, the parties could not find a list of the 450,000 phone numbers that Lifetime allegedly called in August 2009. *Id.* Leyse proposed that notification to the class be made via publication in New York City newspapers and on Lifetime's website, which Judge Hellerstein denied. *Id.* In the absence of a list of called numbers, he concluded that the court could not determine whether any particular individual was a member of Leyse's proposed class. As a result, the proposed class failed to meet the ascertainability requirement of Fed. R. Civ. P. 23(b), and the motion for class certification was denied. *Id.* ("Since I am unable to determine if any particular individual is a member of Leyse's proposed class, the class is unascertainable, and therefore I deny the motion."). Judge Hellerstein issued his decision on September 22, 2015.

On October 6, 2015, Plaintiff filed a motion for reconsideration. (*See Leyse I,* Dkt. Nos. 98-101). That motion was denied on October 19, 2015. (*See Leyse I,* Dkt. No. 102). In so doing, Judge Hellerstein found that Leyse had not made any new

arguments.  *Id.*  ("All arguments were made previously.  Nothing more has been

shown.").  In the absence of any documentary evidence, such as the list of numbers

called, the parameters of any proposed class remained unascertainable:

> Documentary evidence has not established, nor does it seem
> likely that it will establish, the parameters of the class.  The
> parties, despite full opportunity of discovery, have not
> discovered any copy of a list said to have been used by a third
> party to call telephone numbers.  Nor could class members
> realistically be expected to recall a brief phone call received
> six years ago or be expected to retain any concrete
> documentation of their receipt of such a phone call.
> Plaintiff's request for still another opportunity to conduct
> discovery again is denied, as its entire motion for
> reconsideration.

*Id.*  As such, Judge Hellerstein reiterated his denial of the class certification motion,

finding again that "Leyse's proposed class fails to meet the ascertainability requirement

of Fed. R. Civ. P. 23(b)."  *Id.*  Following the denial of the class motion, only Leyse's

individual TCPA claim remained in the case.  On October 30, 2015, Leyse filed a petition

in the Second Circuit for an interlocutory appeal.  On March 2, 2016, the Second Circuit

held that "an immediate appeal is unwarranted."  (*See Leyse I,* Dkt. No. 126).

Lifetime then offered to pay Leyse $1503 plus costs to resolve the individual

claim, and moved to enter judgment in favor of Leyse and dismiss the complaint.  *Leyse

v. Lifetime Entm't Servs., LLC*, 171 F. Supp. 3d 153, 154 (S.D.N.Y. 2016), *aff'd*, 679 F.

App'x 44 (2d Cir. 2017).  Leyse objected; the Court overruled the objection because

Lifetime had tendered all available relief under the TCPA to him.  Judge Hellerstein

entered judgment of $1,903 in Leyse's favor and entered an injunction prohibiting

Lifetime from calling Leyse.  (*See Leyse I*, Dkt No. 129).

On April 20, 2016, Leyse appealed the denial of the class certification and the

entry of judgment to the Second Circuit.  On February 15, 2017, the Second Circuit

issued a summary order affirming denial of the class certification motion, finding that Judge Hellerstein did not abuse his discretion in finding that the class was not ascertainable, and in light of the tender by Lifetime, concluded that the district court was permitted to enter judgment in Leyse's favor. *Leyse v. Lifetime Entm't Servs., LLC*, 679 F. App'x 44, 47-8 (2d Cir. 2017). Mr. Bank filed a motion for rehearing en banc on March 1, 2017. (*Leyse v. Lifetime Entm't Servs., LLC*, No. 16-CV-1133 (2d Cir.), Dkt. No. 135).

On April 11, 2017, the Second Circuit denied the motion for rehearing en banc. (*Id.*, Dkt. No. 148). On April 17, 2017, the Second Circuit issued an order for Leyse to pay $249.80 for Lifetime's costs in the appeal. (*See id.*, Dkt. No. 151; *see also Leyse I*, Dkt. No 134). To date, that has not been paid. (*See* Dkt. No. 18, Def. Ex. 11-Schneier Decl. ¶ 11). On July 29, 2017, Leyse filed a petition for a writ of certiorari. (Petition for a Writ of Certiorari, *Leyse v. Lifetime Entm't Servs., LLC*, No. 17-162 (U.S. July 29, 2017)). As of the date of this recommendation, that petition is still pending.

B.   *Leyse II*

On February 16, 2017, the day after the Second Circuit's decision denying the *Leyse I* appeal, and on the same day that the McCabe lawsuit was filed in the Eastern District of New York, Mr. Bank filed a second lawsuit in the Southern District of New York. Mark Leyse was again the Plaintiff, and the identical claims were brought against Lifetime. (*See Leyse v. Lifetime Entm't Servs., LLC* ("*Leyse II*"), No. 17-CV-1212 (S.D.N.Y. Feb. 16, 2017), Dkt. No. 2). The case was assigned to District Judge William H. Pauley, III.

Judge Pauley held a conference with the parties, which Mr. Bank attended, on March 30, 2017. (*See Leyse II*, Dkt. No. 19). At the conference, Mr. Bank admitted that

the allegations in the *Leyse II* complaint were identical to the allegations in the *Leyse I* complaint. (Transcript of Proceedings held on Mar. 30, 2017 before Judge William H. Pauley, III, *Leyse II*, Dkt. No. 19 ("*Leyse II* Tr.") at 3:7-10). Judge Pauley told Mr. Bank that "this case is identical to the case you filed before Judge Hellerstein, and you have not exhausted your available avenues of relief with respect to that case." (*Leyse II* Tr. at 18:1-4). In Judge Pauley's view, because the Second Circuit was considering (on the pending motion for rehearing en banc) issues related to Mr. Leyse's first complaint, there was no viable case or controversy for another complaint that was identical to the first. (*Leyse II* Tr. at 18:10-11). Judge Pauley asked Mr. Bank whether he would withdraw the case; Mr. Bank demurred. (*Leyse II* Tr. at 18:22-25). Almost one month later, on April 24, 2017, Leyse filed a stipulation of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (*See Leyse II*, Dkt. No. 17).

Subsequently, in this case, on August 21, 2017, Lifetime filed a motion to dismiss for failure to state a claim under Rule 12(b)(6), and a separate motion for sanctions. (*See* Dkt. Nos. 17-18). On September 22, 2017, McCabe filed a cross-motion for sanctions. (*See* Dkt. No. 23).

Discussion

I.    <u>Motion to Dismiss</u>

A.    <u>Legal Standards</u>

In reviewing a motion to dismiss for failure to state a claim, this court "must accept as true all of the factual allegations set out in plaintiff's complaint." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). The court then draws "inferences from those allegations in the light most favorable to plaintiff, and construe[s] the complaint liberally." *Id.* Once the facts are construed in the light most favorable to the plaintiff,

8

there must be sufficient facts that allege a plausible claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").  Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  The factual allegations must be more than speculative.  *Id.*

"In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.  Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  This "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (internal citations and quotations omitted).  Statements contained in public documents or records may be considered, "although the statements contained therein may only be considered to prove that such statements were made and may not be used to prove the truth of the matters asserted therein."  *Giannone v. Bank of Am., N.A.*, 812 F. Supp. 2d 216, 221 n.2 (E.D.N.Y. 2011) (collecting cases).

"While a statute of limitations defense may be raised in a motion to dismiss . . . such a motion should not be granted unless it appears beyond doubt that the [defendant] can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (internal quotations omitted).  Dismissing claims on statute of limitations grounds at the complaint stage "is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999).

Lifetime's motion to dismiss argues that the four-year statute of limitations for McCabe's TCPA claims expired.  McCabe's lawsuit is—like *Leyse I* and *Leyse II*—brought as both an individual and putative class action.  Lifetime, albeit not differentiating between the two, argues all claims are time barred.

B.     McCabe's Individual Claim

McCabe alleges that "[o]n or about August 19 or 20, 2009," Lifetime placed a telephone call to him in violation of the TCPA.  (Compl. ¶ 7).  Because a four-year statute of limitations applies to the TCPA, McCabe had until August 20, 2013 to file a claim against Lifetime, unless there was some tolling of the statute of limitations period.[1]  McCabe, relying on the tolling rule announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), argues that his lawsuit is timely.

1.     *American Pipe*

*American Pipe* held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  414 U.S. at 554.

---

[1] The TCPA itself does not contain a statute of limitations.  However, there is a federal "catch-all" statute of limitations that applies to the TCPA.  The federal catch-all,

In other words, when a named plaintiff files a class action, the statute of limitations period is tolled for the individual claims of each of the other class members.  That tolling extends until "class action status is denied."  *Id.*; *Giovanniello*, 726 F.3d at 116 ("We now take this opportunity to join our sister circuits and hold that *American Pipe* tolling does not extend beyond the denial of class status.").[2]  Upon denial of class status, individual class members are required to take action to preserve their rights—for example, by filing an individual lawsuit—or "face the possibility that their action could become time barred," because the statute of limitations clock starts to run again.  *Id.*

Tolling under *American Pipe* persists only while the class action is pending.  *American Pipe*, 414 U.S. at 561 ("[T]he commencement of the class action in this case suspended the running of the limitation period *only* during the pendency of the motion to strip the suit of its class action character.") (emphasis added); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.").  And any definitive decision by the District Court to deny class status stops the tolling of the statute of limitations.  "Although *American Pipe*'s holding was limited to the denial of class certification for failure to show 'the class is so numerous that joinder of all members is impracticable,'" *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (quoting American Pipe, 414 U.S. at 552–53), subsequent decisions have made clear that tolling ceases when class status is denied for any reason.  *Id.* (citing *Crown,*

---

[2] "The theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action 'until and unless they received notice thereof and chose not to continue.'  Because members of the asserted class are treated for limitations purposes as having instituted their own actions, at least so long as they continue to be members of the class, the limitations period does not run against them during that time."  *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) (quoting *American Pipe,* 414 U.S. at 551).

*Cork & Seal Co.*, 462 U.S. at 353-4 (1983)).  A district court's decision that class status should be denied, for whatever reason, places all class members on notice that they are not members of any putative or actual class.  At that point "the class is no longer putative; having been subjected to a legal decision, the class is either extant or not." *Giovanniello*, 726 F.3d at 117; *Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 845 (7th Cir. 2017) ("An uncertified class-action suit is decidedly not a class action once all class claims have been dismissed.  The statute of limitations immediately resumes.").[3]

   Tolling does not extend, if after class action status is denied, a party moves for reconsideration before the district court.  The Second Circuit made this clear in 2013 in *Giovanniello*.  726 F.3d at 107-108; *see also Collins*, 875 F.3d at 841 (7th Cir. 2017) ("We . . . adopt a simple and uniform rule: Tolling stops immediately when a class-action suit is dismissed—with or without prejudice—before the class is certified.").  The Second Circuit also made clear that tolling does not begin again should the plaintiff appeal the denial of class status.[4]  *Giovanniello* at 107-108.  In so deciding, the Second Circuit

---

[3] *Crown, Cork & Seal* referred to a decision denying *class certification* as the point where tolling for class members ceases.  462 U.S. at 354.  Subsequent decisions, keying off of *American Pipe*'s reference to "class action status," 414 U.S. at 552, have found that tolling ceases when class *status* is denied—whether through denial of a motion for certification or for any other reason, including dismissal of the case.  *See Giovanniello*, 726 F.3d at 116 (referring to "class status" denials); *Collins*, 875 F.3d at 845 (referring to "dismissal" of class claims).

[4] Eight other circuits reached the same conclusion prior to the Second Circuit's decision in *Giovanniello*.  *See, e.g.*, *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 519 (5th Cir. 2008) ("Therefore, it is clear from these cases that if the district court denies class certification under Rule 23, tolling of the statute of limitations ends. . . . [A]n appeal of the denial of class certification does not extend the tolling period."); *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002) ("[W]hen the suit is dismissed without prejudice or when class certification is denied the statute resumes running for the class members.").  Plaintiff spends significant time attempting to distinguish these cases and impugn the Second Circuit's reliance upon them.  (*See* Pl. Resp., Dkt. No. 20 at 7-8).  Whatever the merits of these arguments—and none are

emphasize[d] the need for a bright-line rule in this area of law. *American Pipe* tolling is an exception to the operation of an applicable statute of limitations. . . . Some members of the Supreme Court have expressed concern that *American Pipe* tolling might be abused. *See Crown, Cork,* 462 U.S. at 354, 103 S.Ct. 2392 (Powell, J., concurring) (reiterating that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse"). We have likewise explained that "*American Pipe* and *Crown, Cork* represent a careful balancing of the interests of plaintiffs, defendants, and the court system." *Korwek v. Hunt,* 827 F.2d 874, 879 (2d Cir. 1987). Given the uncertainty that exists in extending tolling beyond denial of class status, even under Rule 23(f)'s new regime, we conclude that a narrow, clearly defined rule best serves *American Pipe* tolling.

*Id.* at 119.[5]

---

apparent—the Second Circuit, whose decisions control cases filed in this Court, was definitive in its holding that tolling does not extend beyond the initial decision to deny class status. And that ruling was not dependent upon the rulings of sister circuits, but the Second Circuit's independent determination that such a result was "consistent with the reasoning underlying *American Pipe* tolling." 726 F.3d at 116-18 ("If the [Supreme] Court had contemplated that tolling continued through the pendency of reconsideration or through appeal, there would be no need for class members to take action to protect their rights[.]").

[5] Plaintiff contends that extending *American Pipe* tolling during the pendency of an appeal aligns with the rationale of the doctrine. (*See* Pl. Resp., Dkt. No. 20 at 2, 35, 37). The Second Circuit explained, in rejecting that view, that *American Pipe* rationales do not warrant extending tolling. *Giovanniello,* 726 F.3d at 117-8. Potential class members are protected by the commencement of a putative class action. *See American Pipe,* 414 U.S. at 550–52; *see also Crown, Cork,* 462 U.S. at 350 (individual class members may "rely on the existence of the [putative class action] suit to protect their rights."). Class members may presume that the class representative and class counsel will protect their interests while a class action represented by another class member is pending. Once that class action is dismissed, *Giovanniello,* 726 F.3d at 117, the named representative and class counsel no longer have a duty to advance the interests of the putative class members. As such, the other class members are on notice that there is no pending action that will protect their interests, and the statute of limitations on their claims should begin to run again.

There is also a countervailing interest that counsels against tolling beyond the initial denial of class certification: the need to let statute of limitations operate. "[C]ontinuing to toll the limitations period beyond the dismissal of a noncertified class claim would encroach more severely on the interests underlying statutes of limitations, the purpose of which is to 'protect defendants against stale or unduly delayed claims.'" *Collins,* 875 F.3d at 845 (quoting *Credit Suisse Secs. (USA) v. Simmonds,* 566 U.S. 221, 227 (2012)).

2.    *American Pipe*'s Impact on McCabe's Claim

McCabe is a member of the *Leyse I* class, which he does not dispute.  (*Compare*
Compl. ¶ 7 *with Leyse I* Compl. ¶ 7).  The call that allegedly violated the TCPA was
placed on August 19 or 20, 2009.  McCabe, therefore, had until August 20, 2013 to file
his lawsuit and have it be timely.  On August 16, 2013, Leyse filed his first lawsuit in the
Southern District of New York.  The statute of limitations on McCabe's claim, therefore,
was tolled pursuant to *American Pipe*; however, only 4 days remained in the limitations
period.  On September 22, 2015, Judge Hellerstein denied Leyse's motion for class
certification.  As a result, the tolling of all other class members' claims, including
McCabe's ceased.  *Giovanniello*, 726 F.3d at 107-8.  McCabe, despite having only 4 days
remaining in the limitations period, waited until February 16, 2017 to file his lawsuit.
That is well beyond the period in which the statute of limitations expired on his TCPA
claim.  His claim, therefore, must be dismissed.  *See, e.g.*, *Collins*, 875 F.3d at 845
(affirming dismissal of plaintiff's claim under four-year statute of limitations under the
Driver's Privacy Protection Act, finding that "[t]he statute was tolled when [another
class member] filed suit on behalf of a proposed class on August 27, 2010.  And it began
to run once again when the district court dismissed that case on September 22, 2010.
Once the claim was dismissed, *American Pipe's* tolling rule no longer controlled.  The
statute of limitations for [plaintiff's] claim immediately resumed.  The limitations period
expired on July 10, 2011, long before he filed this suit."); *Bridge v. Ocwen Fed. Bank
FSB*, No. 07-CV-02739, 2013 WL 331095, at *13 (N.D. Ohio Jan. 29, 2013) (dismissing
TCPA claim with prejudice where telephone call occurred more than four years before
complaint filing).

14

And this dismissal should be with prejudice.  Motions to dismiss are typically granted without prejudice, giving parties an opportunity to replead.  However, where the statute of limitations bars the claim, a court may dismiss with prejudice when the plaintiff can never bring a proper claim and any amended complaint would be futile. McCabe's claim is based on an August 19 or 20, 2009 phone call, and it is without doubt that there is no basis for tolling; any proposed amended complaint would also be time barred and, therefore, futile.  It is therefore appropriate to dismiss the complaint with prejudice.  *See, e.g.*, *Rivera v. Governor of New York*, 92 F. App'x 25, 26 (2d Cir. 2004) ("[W]e agree with the district court's determination that Rivera's complaint falls outside the statute of limitations on New York-based Section 1983 claims and is properly dismissed.  Furthermore, we agree with the district court's decision to dismiss the claim with prejudice because amendment would be futile.").

McCabe makes are a series of arguments to avoid this result.  None have merit.

*First*, he argues that *American Pipe* tolling extends to motions for reconsideration and appeals, and therefore the filing of such motions in *Leyse* continued to toll the statute of limitations.  (*See* Pl. Resp., Dkt. No. 20 at 16).  *Giovanniello* squarely rejected this position; and Mr. Bank should be aware of this since he was counsel of record in that case, both in the district courts and the Court of Appeals.  *See Giovanniello v. New York Law Publ'g Co.*, No. 07-CV-1990, Dkt. Sheet (S.D.N.Y. 2007); *Giovanniello v. ALM Media, LLC*, No. 3:09-CV-1409, Dkt. Sheet (D. Conn. 2010); *Giovanniello v. ALM Media, LLC*, No. 10-CV-3854, Dkt. Sheet (2d Cir. 2013).

Recognizing—as he conceded at oral argument—that *Giovanniello* forecloses any tolling after the denial of certification, Mr. Bank cites to number of cases which he contends allows such tolling.  (Tr. at 72:3-20).  These cases provide no support for

finding that McCabe's claims were tolled.  Two are 20-year-old district court cases that were abrogated by their respective Court of Appeals, each of which held that tolling stops after class certification is denied.  *See West Haven Sch. Dist. v. Owens-Corning Fiberglas Corp.*, 721 F. Supp. 1547 (D. Conn. 1988) (cited by Pl. Resp., Dkt. No. 20 at 25-6), *abrogated by Giovanniello*, 726 F.3d at 107-8; *Byrd v. Travenol Laboratories, Inc.*, 675 F. Supp. 342 (N.D. Miss. 1987) (cited by Pl. Resp., Dkt. No. 20 at 26-30), *abrogated by Taylor v. United Parcel Serv., Inc.,* 554 F.3d 510, 519 (5th Cir. 2008) ("[I]t is clear from these cases that if the district court denies class certification under Rule 23, tolling of the statute of limitations ends."); *see also Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1384 n.18 (11th Cir. 1998) ("We believe the various district court statements cited to [including *Byrd*] have been wrongly decided.").  Two other cases involve *state* class action procedures.  *Clark v. ConocoPhillips Co.*, 465 S.W. 3d 720, 725-26 (Tex. App. 2015) (cited by Pl. Resp., Dkt. No. 20 at 32-4) (relying on Texas Appellate Procedure rules to determine when tolling ceased); *Am. Tierra Corp. v. City of West Jordan*, 840 P.2d 757 (Utah 1992) (cited by Pl. Resp., Dkt. No. 20 at 34-6).  *American Tierra* relies on *West-Haven* and *Byrd*, which are no longer good law; and it incorrectly characterizes federal law by suggesting that federal courts uniformly held that *American Pipe* tolling extended to an appeal of a class certification denial.  That has never been the case; the case simply cannot be relied upon.  *Armstrong*, 138 F.3d at 1384 n.18 ("We also note that the Utah Supreme Court case contains no rationale, and instead bases its holding [on] . . . district court decisions alone, without citing or discussing [decisions of the federal courts of appeals]; we therefore conclude that the *American Tierra* court misread federal law.").  Finally, he cites to *Davis v. Bethlehem Steel Corp.*, 600 F. Supp. 1312 (D. Md. 1985) (cited by Pl. Resp., Dkt. No. 20 at 30-2)

and *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) (cited by Pl. Resp., Dkt. No. 20 at 9-17). *Davis* has nothing to do with the issues in the present case; the district court there instructed plaintiffs' counsel to identify a class representative whose claims were not time barred, and if counsel could not do so, it would dismiss the action as being time barred. *Id.* at 1325. Nothing about the limits of *American Pipe* tolling was implicated. Similarly, in *McDonald*, the Supreme Court held that a claim may be tolled where an intervenor appeals a class certification decision when there is some infirmity with the named plaintiff that may defeat the class claim. 432 U.S. at 394-6. Neither case is like the present one. And, whatever the import of these cases may be, they provide no basis for this Court to depart from *Giovanniello*, a binding decision from the Second Circuit issued a mere 4 years ago.[6]

*Second*, he cites to a number of decisions which found that when a Court of Appeals reverses a denial of class certification, *American Pipe* tolling is retroactively applied to the period between the denial and the appellate reversal.[7] (Pl. Resp., Dkt. No.

---

[6] McCabe also cites to two more recent Southern District of New York cases. In *Betances v. Fisher* the court declined to apply the *Giovanniello* rule, because "the appropriateness of a class action had not been addressed in any of the previously-filed putative actions." 144 F. Supp. 3d 441, 458 (S.D.N.Y. 2015) (cited by Pl. Resp., Dkt. No. 20 at 45-6). Here, in contrast, Judge Hellerstein determined the merits of class treatment in *Leyse I*. The second case—*In re Vivendi Universal, S.A. Securities Litigation*—did permit *American Pipe* tolling to extend through an interlocutory appeal of a class certification denial. 281 F.R.D. 165, 169 (S.D.N.Y. 2012) (cited by Pl. Resp., Dkt. No. 20 at 36-7). But *Vivendi* was decided before *Giovanniello* and, like some of the other cases cited, is no longer good law.

[7] *See, e.g.*, *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 376 n.8 (5th Cir. 2013) ("[i]f a denial of certification is *reversed* on appeal, the putative class members can claim the benefit of uninterrupted tolling from the original class[-]action filing date."); *Satterwhite v. City of Greenville*, 578 F.2d 987, 997 (5th Cir. 1978) (en banc) ("if a trial court's decision that the class may not be maintained is reversed on appeal, the status of class members is to be determined from the time that suit was instituted.");

20 at 17-25).  That may be, but in the present situation, the Second Circuit affirmed the denial of class certification, and thus, there is no basis retroactively to extend the tolling period.

*Third*, McCabe argues that *Giovanniello* only applies to situations where the denial of class certification was based on state law, not to denials based on failures to satisfy the requirements of Rule 23.  (Pl. Resp., Dkt. No. 20 at 3-4).  Or put differently, a class member may rely on *American Pipe* tolling following the denial of class certification (and through appeal), so long as that denial was not based on a failure to satisfy Rule 23.  The flaws in this argument are manifold.

In *Giovanniello*, the Second Circuit was faced with a plaintiff in a TCPA lawsuit who was seeking to take advantage of *American Pipe* tolling following the denial of class certification in an earlier class action.  *Giovanniello*, 726 F.3d at 109 ("Giovanniello asks us to conclude that the applicable limitations period was also tolled during either or both the pendency of . . . [the] motion for reconsideration of the dismissal . . . [or the] appeal from the judgment of dismissal in that same case.").  And to be sure, that earlier class action was dismissed, not because the class failed to satisfy Rule 23, but because New York law barred the class the named plaintiff sought to certify.  Indeed, the District

---

*Jimenez v. Weinberger*, 523 F.2d 689, 696 (7th Cir. 1975); *Edwards v. Boeing Vertol Co.*, 717 F.2d 761, 766 (3d Cir. 1983).

These cases also do not establish that tolling automatically applies retroactively in such a situation.  When a class certification decision is reversed on appeal, courts may exercise their equitable power to waive the time bar against those class members' individual claims, but also may choose not to do so.  *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 359, n.22 (1980) ("As the District Court may be called upon to determine whether the equitable doctrine of 'relation back' permits it to toll the statute of limitations on remand, it will hardly be inappropriate for that court to consider the equities on both sides.  In the circumstances presented, the District Court may well see no reason to exercise its equitable discretion in favor of putative class members who have slept on their rights these many years.").

Court did not even address Rule 23, but dismissed the case on subject matter jurisdiction grounds.  *Id.* at 108 ("Because New York law did not permit a class action 'predicated on statutory damages,' the district court concluded that the court lacked subject-matter jurisdiction to hear . . . [the] putative class action.") (quoting *Giovanniello v. New York Law Publ'g Co.*, 2007 WL 2244321, at *4).

But in ruling that a class member's claim is not tolled while a class action dismissal is being appealed, *Giovanniello* did not limit its decision to a particular type of class status denial.  Quite to the contrary, it announced a "bright-line rule in this area of law," one that is applicable to all denials of class status.  *Giovanniello*, 726 F.3d at 119. It is accurate that the dismissal of the prior class action in *Giovanniello* is unlike the present case.  In *Giovanniello*, the class was dismissed on the basis of subject matter jurisdiction; the *Leyse I* class was dismissed under Rule 23.  That distinction does not help McCabe.  It hurts him.  In *Giovanniello*, the Court of Appeals declined to extend *American Pipe* tolling for absent class members after the prior class action was dismissed at the case's outset.  There was no discovery and no certification motion filed in the prior case.  Absent class members were deemed to be on notice that following the dismissal of the prior class action, they must file their own actions.  *Giovanniello*, 726 F.3d at 117 ("[O]nce class status is denied, 'class members may choose to file their own suits or to intervene as plaintiffs in the pending action.'") (quoting *Crown, Cork,* 462 U.S. at 354).  And no tolling would be extended to them after the dismissal.  If there is no reason to extend tolling in a case like *Giovanniello*, where dismissal occurs at the outset of a case, there is certainly none in the present case, where class certification has been litigated and denied by the district court.  Surely class members can be deemed to be on notice of the need to file their own actions, after a motion for *class certification*

19

has been denied.[8]  Perhaps that is why McCabe's counsel concedes that had the

*Giovanniello* panel been presented with the facts of this case, it would have reached the

identical result.  (*See* Tr. at 25:5-9 (Mr. Bank: "*Giovanniello* gave no indication to

believe that had the facts in *Giovanniello* been exactly as the fact[s] are here, that the

Court would have ruled in a different way.  We've never suggested that."); *see also*

28:16-18).[9]

Because there was no basis to toll the statute of limitations after class

certification in *Leyse I* was denied, McCabe's claim was filed almost 17 months after the

statute of limitations expired, and is therefore time barred.[10]

_____

[8] Mr. Bank advanced another distinction at the hearing.  (Tr. at 30:15-31:3).  He argued that in *Giovanniello* because the earlier class was dismissed at the outset of the case, extending tolling through an appeal would create too long a tolling period.  In contrast, in this case, the tolling period following a denial of a Rule 23 motion and after the close of discovery through an appeal, would be shorter.  That is a distinction without a difference: no court (and certainly not the Second Circuit) has suggested that the availability of *American Pipe* tolling depends on or should depend on the length of the potential tolling period.

[9] *Cf. Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006).  In *Bridges*, multiple class actions were brought on behalf of African Americans against the state police department, alleging that officers engaged in a pattern of race-based stops of motorists.  The magistrate judge issued what was framed as an administrative order denying the motion for class certification without prejudice.  The Fourth Circuit held that tolling ceased as of the date of the administrative order, even though it was not a final Rule 23 denial.  *Id.* ("'[T]he Crown, Cork & Seal Court appears to have untethered this tolling rule from any necessary connection to the reasons for denying certification.'  In untethering the rule, the Supreme Court signaled that *American Pipe* tolling extends as far as is justified by the objectively reasonable reliance interests of the absent class members.  If courts were to toll statutes of limitations only when class certification was denied for lack of numerosity, the rule, which would turn on the substantive reason for the denial, would not discourage premature intervention because class members could not know or predict at the time of filing why class certification might eventually be denied.") (quoting *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003)).

[10] *See also* Tr. at 20:7-11 (The Court: "The only way Mr. McCabe's case is timely, is if tolling is imposed after Judge Hellerstein's decision in September of 2015?"  Mr. Bank: "Yes, that's absolutely correct.").

C.     The Status of the Class Action Claim

McCabe's complaint is also styled as a putative class action, with McCabe

representing the identical class as *Leyse I*.  This putative class action should also be

dismissed.

McCabe cannot serve as a class representative since his individual claim is time-

barred.  Dismissal of the only named class member's claim disposes of the class action:

the class action is deemed to be moot.[11]  *See Swan v. Stoneman*, 635 F.2d 97, 102 n.6

(2d Cir. 1980) ("As a general rule, a class action cannot be maintained unless there is a

named plaintiff with a live controversy both at the time the complaint is filed and at the

time the class is certified."); *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) ("[I]n

general, if the claims of the named plaintiffs become moot prior to class certification, the

entire action becomes moot.");[12] *Collins*, 875 F.2d at 846 ("When the plaintiff's own

claim is dismissed, he can no longer serve as the class representative.  At that point

either another class representative must be found or the suit is kaput.") (quotations

---

[11] The exceptions to this general rule, where a plaintiff can remain a class representative even when his claim had become moot, do not apply to this case.  *See, e.g.*, *Sosna v. Iowa*, 419 U.S. 393, 401 (1975) ("Although the controversy is no longer alive as to appellant Sosna, it remains very much alive for the class of persons she has been certified to represent.  Like the other voters in Dunn, new residents of Iowa are aggrieved by an allegedly unconstitutional statute enforced by state officials.  We believe that a case such as this, in which, as in Dunn, the issue sought to be litigated escapes full appellate review at the behest of any single challenger, does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs.").

[12] Where a class representative has her claims dismissed, courts—like the ones cited here—have referred to standing doctrine, or its component requirement, mootness.  It is alternatively possible to find that where a class representative's claim is barred—and any intervenor who could be an alternative class representative also has no viable claim—that Rule 23's typicality requirement is not satisfied.  *See* 5 James WM. Moore et al., *Moore's Federal Practice* § 23.25 (3d ed. 2017) ("To meet the typicality requirement, there must be at least one class representative who has been injured by and has a claim against each and every defendant.").

omitted); *see, e.g.*, *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999) ("Because Rainy Lake's individual claim was properly dismissed for lack of standing, it was not a member of the class and could not represent the class.  Because Rainy Lake was the only remaining named plaintiff, the class proposed in the Second Amended Complaint could not have been properly certified.") (citations and quotations omitted).

In light of the dismissal of McCabe's claim, there is no live case-or-controversy, and this Court would typically not consider the question of whether a class should be certified.  There is also no motion for class certification pending.  A court may, however, hold the class action open to permit another class member to intervene to serve as class representative.  The Court recommends that this course not be followed; there is no individual with a valid claim in the class.  No other member of the *Leyse I* class could serve as a class representative, because each and every member's claim is also time barred.  Each member of the class received a call on August 19 or 20, 2013.  (Tr. at 5:10-12 (Lifetime's counsel: "The only phone calls that are really the subject of this claim at all are the phone calls that were in August 2009."); 19:1-9 (Mr. Bank: ". . . [D]iscovery in – I'll just refer to it as the Leyse litigation, did show that all of the calls were made in August of 2009 . . . But yes, those are the phone calls.")).  The statute of limitations on every class member's individual claim was tolled as of the date Leyse filed his class action complaint; that tolling ceased when Judge Hellerstein denied class certification.  And as a result, the statute of limitations on their respective individual claims expired on September 26, 2015.

The parties spend significant time discussing this issue of whether the class allegations are time barred, as a result of the Second Circuit's decision in *Korwek v. Hunt*.  In *Korwek*, the Second Circuit held that *American Pipe* tolling does not apply "to

permit the filing by putative class members of a subsequent *class* action nearly identical in scope to the other class action which was denied certification." 827 F.2d 874, 876 (2d Cir. 1987) (emphasis in original). As such, a different plaintiff—who was a member of the original putative class that was not certified—could not file a repetitive or duplicative class action, and claim entitlement to tolling for the period the original case was pending. *Id.*; *see also* 7B Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1795 (3d ed. 2017). This "anti-piggybacking" rule is now the subject of a case before the Supreme Court—(*China Agritech, Inc. v. Resh*, 857 F.3d 994 (9th Cir. 2017), *cert. granted*, 2017 WL 4224769 (U.S. Dec. 8, 2017) (No. 17-432))—leaving the import of *Korwek* in flux. There is no need to address these complex issues and their effect on the present case, in light of the infirmity of the plaintiff McCabe, which renders the class action moot.

II.   Motion for Sanctions

Lifetime has filed a separate Rule 11 motion for sanctions against McCabe, seeking recovery of its costs and fees in defending this lawsuit. Lifetime also bases its motion on 28 U.S.C § 1927 ("Section 1927") and the court's inherent power to grant sanctions. For the reasons explained below, the Court recommends that Lifetime's motion for Rule 11 sanctions be granted. The Complaint, which contained claims obviously barred by the statute of limitations, warrants sanctions. The Court respectfully recommends that Mr. Bank be ordered to pay Lifetime's costs in bringing its motion to dismiss the claims in the Complaint, and pay Lifetime a sum certain of $5,000.

A.    Legal Standards

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal quotation marks omitted).  *See* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.").[13]

Rule 11 imposes a duty on every "attorney to conduct a reasonable pre-filing inquiry . . . to certify that the legal arguments are supported by existing law, and therefore that they are not frivolous."  *Capital Bridge Co. v. IVL Techs. Ltd.*, No. 04-CV-4002, 2007 WL 3168327, at *10 (S.D.N.Y. Oct. 26, 2007); *see also Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985) ("No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the

---

[13] There are procedural requirements that must be complied with before Rule 11 sanctions may be imposed.  A party seeking sanctions must make the motion "separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Fed. R. Civ. P. 11(c)(2).  Those requirements have been met, and Mr. Bank does not make any argument to the contrary.

groundless nature of an argument or claim.  For the language of the new Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.  Simply put, subjective good faith no longer provides the safe harbor it once did.").

"[S]anctions *shall* be imposed when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the [pleading]."  *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (emphasis added).  This test is an objective, not subjective inquiry.  *Id.*  But Rule 11 is violated only when it is "patently clear that a claim has absolutely no chance of success."  *Id.*  "If after notice and a reasonable opportunity to respond" the Court determines that Rule 11(b) was violated, "an appropriate sanction" may be imposed upon any "attorney, law firm, or party" who violated, or is responsible for, the violation.[14]  Fed. R. Civ. P. 11(c).

The Second Circuit has required that notice and opportunity be given to parties or counsel to respond to a motion for sanctions.  "Courts should be sensitive to the impact of sanctions on attorneys.  They can be economically punishing, as well as professionally harmful; due process must be afforded.  This does not mean, necessarily, that an evidentiary hearing must be held.  At a minimum, however, notice and an opportunity to be heard is required."  *Oliveri*, 803 F.2d at 1280.  *See also Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) ("granting a hearing for oral argument would generally be the better practice").  On December 12, 2017, a hearing was held on the parties' respective motions.

---

[14] Lifetime does not say whether it is seeking sanctions against Plaintiff personally or his attorney Mr. Bank.  The court recommends that the sanctions recommended be imposed on Mr. Bank.

B.  Sanctions Are Appropriate for Filing the *McCabe* Complaint

Any competent attorney in 2016 would have considered whether a TCPA claim based on a phone call in 2009 was within the statute of limitations; recognized with the most minimal legal research that there was a four-year statute of limitations, which would have expired in 2013; and concluded that while some tolling was available under *American Pipe*, any additional tolling following Judge Hellerstein's class certification denial in *Leyse I* was foreclosed by *Giovanniello*. *Cf. Eastway Const. Corp.*, 762 F.2d at 254 (reversing denial of attorney's fees, where "[Plaintiff's] claim of an antitrust violation by non-competitors, without any allegation of an antitrust injury, was destined to fail.  Moreover, a competent attorney, after reasonable inquiry, would have had to reach the same conclusion."); *Pentagen Techs. Intern. Ltd. v. United States*, 172 F. Supp. 2d 464, 471 (S.D.N.Y. 2001) (awarding Rule 11 sanctions, where "[w]ith respect to plaintiffs' *qui tam* claim under the FCA, at the time of filing there existed clear, long-standing precedent establishing that the Government cannot be sued unless it has waived its sovereign immunity.").  When *Leyse I* was filed, McCabe had only four days remaining before the statute of limitations on his individual claim expired.  That limitations period was tolled pursuant to *American Pipe*; after class certification was denied on September 22, 2015, he had until September 26, 2015 to assert his individual claim.  But he waited until February 16, 2017 to do so.  And there was no basis to believe that McCabe was entitled to tolling after September 22, 2015 following *Giovanniello*.

Mr. Bank certainly was aware of the four-year statute of limitations for a TCPA action; he has filed many TCPA lawsuits.  *E.g.*, *Weitzner v. Cynosure, Inc.*, No. 12-CV-

3668, 2014 WL 508237 (E.D.N.Y. Feb. 6, 2014).[15]  Defendants in those cases have moved to dismiss complaints filed by him on statute of limitations grounds.  *Id.* at *1. But here we have more than that; Mr. Bank was counsel of record in the case (*Giovanniello*) that established the binding precedent barring the present lawsuit.  The knowledge that the statute of limitations had run on McCabe's individual claim is sufficient to impose sanctions.  *See, e.g.*, *Mirman v. Berk & Michaels, P.C.*, No. 91-CV-8606, 1992 WL 332238, at *4 (S.D.N.Y. Oct. 30, 1992) ("Plaintiffs' counsel clearly knew that the statute of limitations had run in this case.  The Court agrees.  Plaintiffs' counsel's familiarity with the parties involved and the claims asserted in the three other actions leads this Court to the conclusion that the allegations of this complaint were not made in good faith after reasonable inquiry.  Accordingly, the Court grants Defendants' motion for Rule 11 sanctions.").

A legal claim must either be "warranted by existing law" or "by a nonfrivolous argument for extending, modifying, or reversing existing law."  *See supra*; Fed. R. Civ. P. 11(b)(2).  Any argument that McCabe's TCPA claim is timely depends entirely on *American Pipe* tolling being extended beyond the class certification denial.  That position is not warranted by governing Second Circuit law.  *Giovanniello*, in no uncertain terms, foreclosed the tolling of statute of limitations for individual claims after the denial of class status.  *Giovanniello*, 726 F.3d at 116.

---

[15] Bank has also brought other TCPA claims outside of S.D.N.Y. with Leyse as the named plaintiff.  *See Leyse v. Bank of Am., N.A.*, No. 3:09-CV-97, 2009 WL 2855713, at *1 (W.D.N.C. Sept. 1, 2009).  In another TCPA case, McCabe was one of the objectors to the class settlement and Mr. Bank was his attorney.  *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-CV-4069, 2017 WL 818854, at *1 (N.D. Ill. Mar. 2, 2017).

Nor does Mr. Bank advance any "nonfrivolous" argument for "extending, modifying or reversing" *Giovanniello*. "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear . . . that there is no chance of success." *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 830 (2d Cir. 1992) (internal quotations omitted). Mr. Bank takes the position that to be frivolous, an argument must be something akin to absurd, ridiculous, laughable or perhaps intellectually totally vacuous. (Tr. at 72:24-25 (Mr. Bank: "It's the legal issues. Is it inconceivable[?]"); 83:11-19 (The Court: "I am just trying to understand what the term non-frivolous means." . . . Mr. Bank: "If you were to conclude that as an intellectual matter, that my argument – that our arguments are ridiculous, okay[.]"); 91:20-22 (The Court: "It would have to be an objective standard." Mr. Bank: "Yeah, objectively ridiculous.")). Interpreting frivolous in such a manner would render virtually all legal claims—short of those that suggest the Jedi Code or Star Trek intergalactic legal principles permit recovery from a defendant—would be non-frivolous. (*See* Tr. at 76:13-20 (Mr. Bank suggesting that a case where someone sues the planet Jupiter is frivolous)). But the concept of frivolous is not so weak. It is, as explained earlier, it is an objective standard—not subject to the individual vagaries of the lawyer. As a general principle, and as the Advisory Committee Note to the 1993 Amendment to Rule 11 explains, "the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated." While not dispositive, *see id.*, such authority helps push an argument or pleading from frivolous to non-frivolous.

There is no dissent in *Giovanniello*.  No circuit has a contrary rule, and no scholar is cited who disagrees with its principle.  There is little to suggest, therefore, that any of Mr. Bank's arguments as to the timeliness of McCabe's complaint are non-frivolous.  All Mr. Bank does is argue *Giovanniello* does not apply to this case; to do so, he relies on cases that are overruled, inapplicable doctrines from other contexts, or irrelevant distinctions.  *See supra* at 16-20.  None of those contentions have even colorable merit.  *Id.*  Mr. Bank also just rehashes before this Court arguments he made when arguing *Giovanniello* and which the Second Circuit rejected.  (*Compare Giovanniello* Mem., No. 10-CV-3854, Dkt. No. 39, at 8 (2d Cir. Nov. 9, 2010) ("[T]he two rationales of class-action tolling, *i.e.*, the prevention of the need for multiple individual actions, and the satisfaction of the purpose of statutes of limitations, applies equally to the present action, in which the plaintiff was also the plaintiff in the S.D.N.Y. Action.") *with McCabe*, Pl. Resp., Dkt. No. 20, at 21 ("Those rationales are, first, that a class action is more desirable, when feasible, than are numerous individual actions, . . . second, that the commencement, within the statute-of- limitations period, of a putative class action notifies the defendant of the nature of the claims and the number and generic identities of the putative class members, . . . and, third, that *American Pipe* tolling is intended to encourage putative class members to withhold their own actions and instead await the resolution of the class action.")).  There is nothing new to Mr. Bank's approach.  (*See* Tr. at 74:17-23 (Mr. Bank: "Judge, we discussed a bit today and more in the briefs about . . . the underlying rationales of the tolling – of *American Pipe* tolling?"  The Court: "But if those were already presented – those were presented in *Giovanniello*, am I wrong about that?"  Mr. Bank: "I believe that they were.")).

There was, therefore, no non-frivolous basis on which to conclude that McCabe's complaint was entitled to tolling and timely filed.  (*See* Tr. at 24:8-16 (The Court: "And so on what basis are you saying that the Second Circuit's rule which as far as I can tell, is crystal clear that there is no *American Pipe* tolling after a denial of class certification, where does it give any room to make the argument that you're now making?"  Mr. Bank: "The way the Court expressed its opinion, as we discussed at length in the papers, did not provide that room.")).  Rule 11(b) does not provide protection for such a pleading. *See, e.g.*, *Hoatson v. New York Archdiocese*, 280 F. App'x 88, 92 (2d Cir. 2008) (affirming award of Rule 11 sanctions, finding Plaintiff's "Title VII claim is . . . untimely and rests on a theory of sexual orientation discrimination, which this Circuit has stated is not within the ambit of Title VII" and Plaintiff had offered "no argument for reversing this settled law").

Mr. Bank makes a series of arguments why sanctions are not warranted.  None have merit.

*First*, he argues that filing the *McCabe* lawsuit was necessary to preserve his arguments about the validity of *Giovanniello*.  (*See* Pl. Resp., Dkt. No. 20 at 46-9).  His argument is essentially that he is entitled to preserve and make arguments for challenging established and settled law.  To do so, he relies on *McKnight v. Gen. Motors Corp.*, 511 U.S. 659 (1994) (per curiam) (cited by Pl. Resp., Dkt. No. 20 at 46-7). *McKnight* reversed a sanctions order imposed because counsel argued a position that had been foreclosed by the Seventh Circuit.  *Id.* at 660.  The Supreme Court found that counsel was entitled to make an argument to preserve it for appellate review before the Supreme Court.  *Id.*  It is certainly true that under *McKnight* merely raising an argument to preserve it for appellate review is not sanctionable.  But doing so only

makes an argument meritless; it has to be frivolous to be sanctionable.  As explained above, this lawsuit crossed over from meritless to frivolous.  Mr. Bank is relitigating arguments recently rejected; providing no new reason why the case was wrongly decided, or change in the law since the case was decided to suggest the rule be overturned.[16]  You simply cannot under the guise of preserving arguments reargue the same position over and over again.  *See* 2A Fed. Proc., L. Ed. § 3:983 ("The appellate courts generally apply an objective standard to determine whether an appeal is frivolous. . . . This standard is met where an objectively reasonable litigant should have realized that the appeal had no chance of success from the outset. Thus, one who assumes a "never-say-die" attitude and drags a dispute through the court system without an objectively reasonable belief it will prevail does so at the risk of being sanctioned.").  Such behavior is sanctionable.  *See, e.g.*, *Sargent v. U.S. Dep't of Educ.*, No. 07-CV-618, 2007 WL 3228821, at *2 (E.D. Wis. Oct. 31, 2007) (issuing Rule 11 sanctions against plaintiff who brought FERPA claim after the Supreme Court's ruling

---

[16] Mr. Bank also cites *Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108, 111 (2d Cir. 1987) (cited by Pl. Resp., Dkt. No. 20 at 46) where the Second Circuit declined to impose sanctions where an attorney attacked a long standing Supreme Court precedent about the appealability of an order denying a stay pending arbitration.  Unlike in this case, the precedent in question had been the subject of withering criticism, in a multitude of legal opinions.  The counsel in that case had also identified an argument previously unaddressed (including a statutory amendment to the interlocutory appeal rule), relied on dissenting legal opinions, and argued that the rule be overturned.  *Id.* at 110-11.  Mr. Bank does not argue *Giovanniello* should be overturned and cites to no criticism of the decision or the multitude of other courts of appeals decisions that adopted the same principle.  Nor does he advance any new argument about *American Pipe* tolling; he restates the same ones he made in arguing *Giovanniello*.  In any event, *Gilmore* was decided before the 1993 amendments to Rule 11, which put in place the requirement that legal contentions be warranted by existing law or nonfrivolous arguments for modifying or reversing the precedent.  *See also* Comments to 1993 Amendments to Rule 11 (noting that amendments to (b)(2) standard "establishes an objective standard, intended to eliminate any 'empty-head pure heart' justification for patently frivolous arguments.").  And Mr. Bank's McCabe complaint fails that test.

that a private right of action did not exist) (citing *Gonzaga University v. Doe*, 536 U.S. 273, 290 (2002)).

*Second*, he cites cases where the Supreme Court or a court of appeals has overturned its own rulings. In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, the Court overruled the 11 circuits that had addressed the issue of whether a private plaintiff could bring an aiding and abetting claim under § 10(b) of the 1934 Securities and Exchange Act. 511 U.S. 164 (1984) (cited by Pl. Resp., Dkt. No. 20 at 48). This is a different case. In *Central Bank*, the Supreme Court explained there was "continuing confusion" about the scope of § 10(b) liability; courts of appeals had issued decisions expressing that doubt; and law professors had also questioned whether aiding and abetting liability could exist in light of more recent pronouncements by the Supreme Court. 511 U.S. at 169-70. This is not such a case. The uncertainty present about the *Central Bank* doctrine does not exist around *Giovanniello*. Moreover, as the Second Circuit explained, the "bright line" rule that tolling does not apply following a denial of certification comes directly from the Supreme Court's original *American Pipe* decisions. *Giovanniello*, 726 F.3d at 116 (citing *American Pipe*, 414 U.S. at 561 & *Crown, Cork*, 462 U.S. at 354). And unlike *Brown v. Board of Education*, 347 U.S. 483 (1954) or *Lawrence v. Texas*, 539 U.S 558 (2003), which he also cites, Mr. Bank is not advancing good faith, non-frivolous arguments why *Giovanniello* should be reversed.

Instead, he is simply arguing (and rearguing) on the basis of irrelevant, immaterial and baseless distinctions why the case should not apply to him.[17]

     *Third,* he cites a variety of cases in which the Supreme Court or a Court of Appeals has rejected sanctions motions.  (Pl. Resp., Dkt. No. 20 at 46-48).  These are cases where the underlying issues being litigated were not yet decided or where the law remained in flux, and thus, were situations where permitting counsel to advance their arguments—albeit unsuccessful ones—was necessary to permit ultimate resolution and clarification of a disputed legal question.  *See, e.g.*, *McKnight*, 511 U.S. at 660 (reversing sanctions where Court of Appeals had not ruled on relevant legal question); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 156 (4th Cir. 2002) (reversing attorney suspension which "was in large part premised on her legal contention . . . in connection with a body of law that was in a state of flux.").

     In a letter to the court, Mr. Bank also argues that he has been entirely upfront with the Court, did not act in bad faith, and consistent with his ethical obligations, brought contrary authority to the Court's attention.  (Pl. Ltr., Dkt. No. 30 at 2; Tr. at 65:20-66:10 ("[A]lthough we said we thought those differences were material, we've said all along, we've been as candid as any lawyer has probably ever been, said there was no specific reason to believe that *Giovanniello* would have come out differently had the facts of this case been before the Court in Giovanniello.  We didn't lie.  We didn't mislead.  We didn't – far from attempted to be misleading or anything of the sort, we

---

[17] He also cites *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (en banc) (cited by Pl. Resp., Dkt. No. 20 at 48) to suggest that at any time a court of appeals could reverse itself; and therefore he is entitled to (re)argue positions recently rejected in *Giovanniello*.  Mr. Bank suggests that in *Rybicki*, decided in 2003, the Second Circuit reversed its decision in *United States v. Handakas*, 286 F.3d 92, issued only one year before.  The complexities of these decisions from the criminal context have no application to Mr. Bank's civil claims, which are governed by civil Rule 11.

did the complete, complete opposite.")).  But those are not elements of Rule 11, and do not make an objectively frivolous argument non-frivolous.  *See Oliveri*, 803 F.2d at 1275.  And notwithstanding the alleged candor, Lifetime was still forced to defend against the lawsuit while two other identical suits were pending.

This class action was filed on February 16, 2017.  That was the same day that *Leyse II* was filed in the Southern District of New York.  It was also the day after the Second Circuit decided the *Leyse I* appeal, a decision that Mr. Bank continued to litigate through a motion for rehearing en banc, and continues to litigate in the Supreme Court.  (*Leyse v. Lifetime Entm't Servs., LLC*, No. 16-CV-1133 (2d Cir. Apr. 11, 2017), Dkt. No. 148); (*Leyse v. Lifetime Entm't Servs., LLC*, 679 F. App'x 44 (2d Cir. 2017), *petition for cert. filed*, (U.S. Aug. 2, 2017) (No. 17-162)).  In other words, Mr. Bank—despite having filed a new class action lawsuit in this court—continued to litigate the viability of that exact class action in the Southern District of New York, the Second Circuit, *and* the Supreme Court.

Lifetime did not move to dismiss the present lawsuit based on the rule against duplicative litigation, but it surely could have.  "As part of its general power to administer its docket, a district court may stay or dismiss as suit that is duplicative of another federal court suit."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citations omitted).  "[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  *Id.* at 139.  "The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the 'comprehensive disposition of litigation.'"  *Pacheco v. Home Am.*, No. 11-CV-0965, 2012 WL 254474, at *3 (N.D.N.Y. Jan. 27, 2012) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).  "The doctrine is also meant to protect parties

from 'the vexation of concurrent litigation over the same subject matter.'" *Pacheco*, 2012 WL 254474, at *3 (quoting *Adam v. Jacob*, 950 F.3d 89, 93 (2d Cir. 1991)).

It is true that there are different named plaintiffs in this case and *Leyse I*. But they are members of the same putative class. The issues to be decided on certification in this case are the same that were considered by the Second Circuit and being considered by the Supreme Court in *Leyse I*. While there remained some chance that the Second Circuit or the Supreme Court would reverse Judge Hellerstein's class certification decision and permit a class action to go forward in *Leyse I*, the present case served no purpose at all, and filing it simply forced Defendant and the Court to expend resources unnecessarily. *See, e.g., DiGennaro v. Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012) ("Adjudication of the claims against Whitehair would necessarily involve findings on the exact same facts required to resolve the claims in the first action.").

Indeed, in the *Leyse II* litigation, Judge Pauley suggested that bringing the identical claim after the Second Circuit affirmed the class certification denial in *Leyse I* and while moving for rehearing by the Second Circuit in *Leyse I* was sanctionable:

> THE COURT: I am not granting a stay in the case. You filed this case on February 16, 2017. I have no idea when the Second Circuit will pass on your motion for rehearing, and I have no idea what you will do after that. But on the date that you filed this complaint, Mr. Leyse does not present a case or controversy in my view. Now, if you're not willing to just drop this case, then I am going to tee up the defendant's motion. And while, generally, I don't like dealing with motions for sanctions and the like, which they have proposed to make, I am going to permit them to make their motion. So I guess I will return to the sort of question that I asked at the very beginning that I was serious about: Do you want to end the madness of this case, 17 Cv. 1212, here and now, or do you insist that the defendants make a motion and then I will deal with the motion?

(*Leyse II* Tr. at 18:6-21).  Presumably to avoid such a sanctions motion, he voluntarily dismissed the *Leyse II* complaint.

Even if McCabe's claim were to survive a 12(b)(6) motion, the putative class in his case would have no chance of being certified.  Judge Hellerstein found that in the absence of a list of individuals who received the allegedly improper phone call, the parameters of the class could never be ascertained.  Mr. Bank—at oral argument—identified no new potential way that the list could be discovered.  (*See* Tr. at 19:14-16 (The Court: "[D]o you have any reason to believe discovery would show more [today]?" Mr. Bank: "No specific reason, no."); 20:21-21:1; 50:2-5 (The Court: "But you have no basis to believe that you could get the list of phone numbers that received the phone call, is that correct?  Mr. Bank: "That's correct.")).  Even if Judge Hellerstein's decision on class certification was not issue preclusive, *Smith v. Bayer*, 564 U.S. 299, 317 (2011), it would be entitled to comity, since it is from a District Judge in the same circuit resolving the same class issues.  *See id.* ("[W]e would expect federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute."); *Mast, Foos, & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488 (1900) ("Comity . . . is something more than mere courtesy, which implies only deference to the opinion of others, since it has substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question."); *e.g.*, *Baker v. Home Depot USA, Inc.*, No. 11-CV-6768, 2013 WL 271666, at *5 (N.D. Ill. Jan. 24, 2013) (striking class action allegations from complaint, by applying comity to several other courts' decisions that had denied class status); *Gomez v. St. Vincent Health, Inc.*, No. 08-CV-153, 2009 WL 1853120, at *1 & *4 (S.D. Ind. June 25, 2009) (denying class certification of "nearly identical action" previously rejected, finding no basis to "effectively overrule a

36

colleague on the district court on an indistinguishable record").  But this Court would *also* be obligated to follow—whether through comity, stare decisis or the basic precept that District Courts follow the law of the circuit—the Second Circuit's decision finding that Judge Hellerstein was correct in denying certification of the same class pled here. *See Smith*, 564 U.S. at 317 ("[O]ur legal system generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs."); *Taylor v. Sturgell*, 553 U.S. 880, 903 (2008) ("*[S]tare decisis* will allow courts swiftly to dispose of repetitive suits brought in the same circuit.").

It is certainly a tremendous waste of judicial resources to have this Court entertain a putative class action identical to a previously rejected class, where the new complaint contains no additional evidence or allegations proffered to overcome the deficiencies identified by the prior court.  It is implausible to think that any competent attorney, in light of the Second Circuit's affirmance of the reasons articulated by Judge Hellerstein for rejecting the class, could conclude that this Court might reach a different conclusion.  Nor could any reasonable attorney find any room in *Giovanniello*'s bright line test to rescue an action clearly barred by the statute of limitations.  And it certainly is a waste for three different courts in this circuit to address the same claims at the same time simultaneously.  *Cf. Pentagen*, 172 F. Supp. 2d at 471, 473 ("Despite repeated dismissals, however, plaintiffs' counsel continues to file actions based on the same facts and circumstances previously addressed by this and other courts. . . . [C]ounsel, by seeking to contravene the explicit findings of prior litigation without any meritorious arguments to extend the law, went far beyond the standard of objective unreasonableness in filing this action."); *Amorosa v. Ernst & Young LLP*, No. 03-CV-

3902, 2010 WL 245553, at *4 (S.D.N.Y. Jan. 20. 2010) (awarding Rule 11 sanctions and concluding that Plaintiff's claims in the second amended complaint "were identical (except in ways already found to be immaterial) to claims against Ernest & Young that Judge Kram had already thrown out in *AOL II*.  For that reason, the claims fall comfortably within the definition of 'frivolous.'").

All of this merely underscores that the McCabe complaint, alleging identical class claims already litigated and through a named plaintiff whose claims are plainly time-barred, and filed while two other lawsuits adjudicating the same issues remained pending, is frivolous and deserving of Rule 11 sanctions.  This Court respectfully recommends that the District Court grant Defendant's motion for Rule 11 sanctions and require Plaintiff's counsel to pay Lifetime's costs of defending the McCabe complaint.

This Court is, however, cognizant of the need not to impose punitive sanctions under Rule 11, but simply the amount necessary to deter the improper conduct.  Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").  Mr. Bank is a solo practitioner.  Lifetime has not put forward an itemization of the fees incurred in this case, but it is not difficult to imagine that in the current rate environment for large law firms, those fees are in the tens, if not hundreds, of thousands of dollars.  It would be a significant financial penalty to require Mr. Bank to pay fees of that magnitude; and almost certainly would be more than necessary to deter other lawyers from filing repetitive lawsuits in the fashion that Mr. Bank has done.  And it may have the deleterious effect, one which is to be avoided under Rule 11, of stifling creative lawyering by other attorneys, particularly in complex areas like *American Pipe*

tolling or the TCPA.  The Court therefore recommends that a modest fee sanction—of $5,000—be imposed on Mr. Bank, in addition to the payment of costs to Lifetime.

In light of the recommendation that sanctions be imposed pursuant to Rule 11, it is unnecessary to reach the alternative bases of awarding sanctions, including Section 1927 and the court's inherent power to sanction.[18]

Conclusion

It is respectfully recommended that:

1. Lifetime's motion to dismiss McCabe's claim pursuant to Rule 12(b)(6) be granted with prejudice;

2. Lifetime's motion for sanctions be granted, pursuant to Rule 11;

3. Lifetime be awarded its costs incurred in connection with the motion to dismiss, not including the costs and fees for the motion for sanctions or defending the cross-motion for sanctions.  Lifetime also be awarded $5,000 in attorney's fees.  These fees and costs are to be paid by Mr. Bank;

4. McCabe's cross-motion for sanctions be denied, in light of the decision to grant Lifetime's sanctions motion.[19]

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within fourteen days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by

---

[18] The test for sanctions under section 1927 is stricter, and requires a clear showing of bad faith on the part of an attorney.  *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1010 (2d Cir. 1986) (quoting *State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1092 (2d Cir. 1971)).

[19] *See, e.g.*, *Bletas v. Deluca*, No. 11-5422, 2013 WL 2948103 (2d Cir. Jan. 17, 2013); *Lora v. NHS, Inc.*, No. 12-CV-2357, 2014 WL 2134589, at *8 (E.D. Pa. May 22, 2014).

the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right

to appeal the District Court's order.  *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604

(2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a

waiver of any further judicial review of the magistrate [judge's] decision.").


_____
Sanket J. Bulsara
United States Magistrate Judge

Brooklyn, New York
January 4, 2018

40