UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN McCABE, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>-against-<br><br>LIFETIME ENTERTAINMENT SERVICES, LLC,<br><br>*Defendant*. | 1:17-cv-00908-ERK-SJB |

**PLAINTIFF'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION DATED JANUARY 4, 2018**

TODD C. BANK,
  ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125

*Counsel to Plaintiff*

## TABLE OF CONTENTS

<b>Page</b>

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

STATUTES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

OTHER AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  viii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

OBJECTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      *AMERICAN PIPE* TOLLING SHOULD APPLY DURING
        THE PENDENCY OF A PLAINTIFF'S EFFORTS TO
        CONTINUE TO SEEK CLASS CERTIFICATION
        FOLLOWING A DISTRICT COURT'S INITIAL DENIAL. . . . . . . . . . . . . . . . . . . . . 1

II.     PLAINTIFF IS ENTITLED TO PRESERVE THE ARGUMENT
        THAT *AMERICAN PIPE* TOLLING SHOULD CONTINUE
        THROUGH THE APPELLATE PROCESS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      The Magistrate Judge Completely Misunderstands
                the Right of a Party to Preserve, for Appellate Review,
                Arguments That are Foreclosed by Binding Precedent. . . . . . . . . . . . . . . . . 5

        B.      The Magistrate Judge's Notion that Plaintiff was Not Entitled
                to Rely Upon Cases That Support Plaintiff's Position is Based
                on a Misunderstanding of Persuasive Authorities and a Party's
                Right to Rely Upon Such Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.      Plaintiff Argues, and is Entitled to Argue, That
                *American Pipe* Tolling Should Continue Through
                an Appeal of a Denial of Class Certification. . . . . . . . . . . . . . . . . . . . . . . 13

        D.      Plaintiff Was Not Prohibited From Providing His Understanding
                of Cases Whether or Not That Understanding Was Shared by
                Either the Magistrate Judge or the Second Circuit. . . . . . . . . . . . . . . . . . . 15

                (i)     *Bridges v. Dep't of Md. State Police*, 441 F.3d 197
                        (4th Cir. 2006) (*see* R&R at 20, n.9). . . . . . . . . . . . . . . . . . . . . . . . 17

                (ii)    *Pentagen Techs. Int'l. Ltd. v. United States*, 172 F. Supp. 2d
                        464 (S.D.N.Y. 2001) (*see* R&R at 26, 37). . . . . . . . . . . . . . . . . . . . 26

i

Page

**Table of Contents (*Cont'd*)**

(iii)   *Mirman v. Berk & Michaels, P.C.*, No. 91-cv-8606, 1992
WL 332238 (S.D.N.Y. Oct. 30, 1992) (*see* R&R at 27). . . . . . . . . . . . 34

(iv)   *Hoatson v. New York Archdiocese*, 280 F. App'x 88
(2d Cir. 2008) (*see* R&R at 30). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

(v)   *McKnight v. General Motors Corp.*, 511 U.S. 659 (1994)
(*see* R&R at 33; *see also id.* at 30-31). . . . . . . . . . . . . . . . . . . . . . . . . . . 37

(vi)   *Sargent v. United States Dep't of Ed.*, No. 07-cv-618,
2007 WL 3228821 (E.D. Wis. Oct. 31, 2007) (R&R at 31-32). . . . . . . . 44

III.   LEGAL DOCTRINES PERTAINING TO THE FOLLOWING
BY ONE COURT OF ANOTHER COURT ARE NOT
APPLICABLE, MUCH LESS SANCTIONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

A.   *Stare Decisis* and "the Law of the Circuit". . . . . . . . . . . . . . . . . . . . . . . . . 44

B.   Comity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

IV.   THE FACT THAT A DIFFERENT PLAINTIFF
BROUGHT A SECOND ACTION HAS NO
RELEVANCE TO THE PRESENT CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

V.   THE MAGISTRATE JUDGE'S *SUA SPONTE* DISCUSSION OF
DUPLICATIVENESS DOES NOT ACKNOWLEDGE WHY THE
COMMENCEMENT OF THIS CASE WAS REASONABLE, MUCH LESS
EXPLAIN WHY SUCH COMMENCEMENT WAS SANCTIONABLE.. . . . . . . . . . 57

VI.   DEFENDANT'S COUNSEL SHOULD BE SANCTIONED
FOR MAKING A FRIVOLOUS REQUEST FOR
SANCTIONS AGAINST PLAINTIFFS'S COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . 59

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

# TABLE OF AUTHORITIES

**Page**

**STATUTES**

28 U.S.C. § 1927.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55, 57

47 U.S.C. § 227.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

Fed. R. Civ. P. 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**CASES**

*Alvarez v. Coca-Cola Refreshments, USA, Inc.*,
   914 F. Supp. 2d 256 (E.D.N.Y. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*American Pipe & Construction Co. v. Utah*,
   414 U.S. 538 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*American Tierra Corp. v. City of West Jordan*,
   840 P.2d 757 (Utah 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 11, 12, 13

*Amorosa v. Ernst & Young LLP*,
   No. 03-cv-3902, 2010 WL 245553
   (S.D.N.Y. Jan. 20. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 53, 54

*Amusement Industry, Inc. v. Midland Avenue Associates, LLC*,
   820 F. Supp. 2d 510 (S.D.N.Y. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Armstrong v. Martin Marietta Corp.*,
   138 F.3d 1374 (11th Cir.1998) (*en banc*). . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 13

*ATSI Comm'ns. Inc. v. Shaar Fund, Ltd.*,
   547 F.3d 109 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Baker v. Home Depot USA, Inc.*,
   No. 11-cv-6768, 2013 WL 271666
   (N.D. Ill. Jan. 24, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

*Balintulo v. Daimler AG*,
   727 F.3d 174 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Page

**Table of Authorities; Cases (*Cont'd*)**

*Bernard v. United States*,
    25 F.3d 98 (2d. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Betances v. Fischer*,
    144 F. Supp. 3d 441 (S.D.N.Y. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Borison v. Corracchia*,
    No. 96-cv-4783, 1997 WL 232294
    (S.D.N.Y. May 7, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Boyd v. J.E. Robert Co.*,
    No. 05-cv-2455, 2012 WL 4718723
    (E.D.N.Y. Oct. 2, 2012), *aff'd*,
    65 F.3d 123 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bridges v. Dep't of Md. State Police*,
    441 F.3d 197 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . 17, 18, 19, 20, 21, 22, 23, 24, 25

*Brown-Pfifer v. St. Vincent Health, Inc.*,
    No. 06-cv-0236, 2007 WL 2757264
    (S.D. Ind. Sept. 20, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49, 50, 51, 52

*Byrd v. Travenol Laboratories, Inc.*,
    675 F. Supp. 342 (N.D. Miss. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Camreta v. Greene*,
    563 U.S. 692 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Central Bank of Denver, N.A. v.*
 *First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38-39

*Clark v. ConocoPhillips Co.*,
    465 S.W. 3d 720 (Tex. App. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Collins v. Village of Palatine*,
    875 F.3d 839 (7th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 39, 40, 42

*Curtis v. Citibank, N.A.*,
    226 F.3d 133 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57-58

Page

**Table of Authorities; Cases (*Cont'd*)**

*Davis v. Bethlehem Steel Corp.*,
  600 F. Supp. 1312 (D. Md.),
  *aff'd on other grounds*,
  769 F.2d 210 (4th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Deposit Guaranty Nat'l Bank v. Roper*,
  445 U.S. 326 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*DiGennaro v. Whitehair*,
  467 F. App'x. 42 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*F.D.I.C. v. Meyer*,
  510 U.S. 471 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Giovanniello v. ALM Media, LLC*,
  726 F.3d 106 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Giovanniello v. ALM Media, LLC*,
  660 F.3d 587 (2d Cir. 2011),
  *vacated on other grounds*, 568 U.S. 801 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41-42

*Gomez v. St. Vincent Health, Inc.*,
  649 F.3d 583 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Gomez v. St. Vincent Health, Inc.*,
  622 F. Supp. 2d 710 (S.D. Ind. 2008). . . . . . . . . . . . . . . . . . . . . 48, 49, 40, 51, 52

*Heinfling v. Colapinto*,
  946 F. Supp. 260 (S.D.N.Y.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Hoatson v. New York Archdiocese*,
  280 F. App'x 88 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36-37

*In re Vivendi Universal, S.A. Sec. Litig.*,
  281 F.R.D. 165 (S.D.N.Y. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Irwin v. Dep't of Veterans Affairs*,
  498 U.S. 89 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Jimenez v. Weinberger*,
  523 F.2d 689 (7th Cir.1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Page**

**Table of Authorities; Cases (*Cont'd*)**

*Johns v. Int'l Business Machines Corp.*,
    361 F. Supp. 2d 184 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

*Kanciper v. Suffolk Cty. SPCA, Inc.*,
    722 F.3d 88 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57-58

*Lerch v. Boyer*,
    929 F. Supp. 319 (N.D. Ind. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Leyse v. Lifetime Entertainment Svcs., LLC*,
    679 F. Appx. 44 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 44, 55

*Leyse v. Lifetime Entertainment Servs., LLC*,
    No. 13-cv-5794, 2015 WL 5837897
    (S.D.N.Y. Sept. 22, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Manigault v. Macy's East*,
    318 F. Appx. 6 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*McKnight v. General Motors Corp.*,
    511 U.S. 659 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37-38

*Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*,
    746 F.Supp.2d 575 (S.D.N.Y.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Miller v. Federal Kemper Ins. Co.*,
    508 A.2d 1222 (Pa. Super. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mareno v. Rowe*,
    910 F.2d 1043 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Mirman v. Berk & Michaels, P.C.*,
    No. 91-cv-8606, 1992 WL 332238
    (S.D.N.Y. Oct. 30, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35, 36

*Northern Assurance Co. of America v. Square D Co.*,
    201 F.3d 84 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Pentagen Techs. Int'l. Ltd. v. United States*,
    172 F. Supp. 2d 464 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . 26, 27, 28, 29, 30, 31, 32, 33, 34, 54

*Pierce v. F.R. Tripler & Co.*,
    955 F.2d 820 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Page

**Table of Authorities; Cases (*Cont'd*)**

*Police and Fire Retirement System of City of Detroit v.*
    *IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*RAR, Inc. v. Turner Diesel, Ltd.*,
    107 F.3d 1272 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Romea v. Heiberger & Assocs.*,
    163 F.3d 111 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Sargent v. United States Dep't of Ed.*,
    No. 07-cv-618, 2007 WL 3228821
    (E.D. Wis. Oct. 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Shafii v. British Airways, PLC*,
    83 F.3d 566 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Smentek v. Dart*,
    683 F. 3d 373 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46-47

*Smith v. Bayer*,
    564 U.S. 299, 317 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 45, 46

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41

*United States v. Handakas*,
    286 F.3d 92 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Mitchell*,
    463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Pack*,
    255 F. Supp. 3d 695 (S.D. Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Rybicki*,
    354 F.3d 124 (2d Cir. 2003) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States v. Sherwood*,
    312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Page

**Table of Authorities; Cases (*Cont'd*)**

*Weitzner v. Cynosure, Inc.*,
   No. 12-cv-3668, 2014 WL 508237
   (E.D.N.Y. Feb. 6, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*West Haven Sch. Dist. v. Owens-Corning Fiberglas Corp.*,
   721 F. Supp. 1547 (D. Conn. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12


**OTHER AUTHORITIES**

*On Vacation*,
   Charles A. Sullivan, 43 Houston L. Rev. 1143 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*The Reagan Revolution in the Network of Law*,
   Frank B. Cross *et al.*, 57 Emory L.J. 1227 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<table>
<tr><td>

KEVIN McCABE, Individually and on
Behalf of All Others Similarly Situated,

*Plaintiff*,

-against-

LIFETIME ENTERTAINMENT SERVICES, LLC,

*Defendant*.

</td><td>

1:17-cv-00908-ERK-SJB

</td></tr>
</table>

## INTRODUCTION

Plaintiff, Kevin McCabe ("McCabe"), by the undersigned counsel, submits these objections, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, to the Report and Recommendation dated January 4, 2018, by Magistrate Judge Sanket J. Bulsara ("R&R"; Dkt. No. 32).

## OBJECTIONS

### POINT I

### *AMERICAN PIPE* TOLLING SHOULD APPLY DURING THE PENDENCY OF A PLAINTIFF'S EFFORTS TO CONTINUE TO SEEK CLASS CERTIFICATION FOLLOWING A DISTRICT COURT'S INITIAL DENIAL

In *Giovanniello v. ALM Media, LLC*, 726 F.3d 106 (2d Cir. 2013), the court addressed the question of whether statute-of-limitations tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and its progeny ("*American Pipe* tolling") continues during the appeal of a dismissal of a putative class action. The court held that such tolling did not continue. *See* Plaintiff Memorandum of Law in Opposition to Defendant's Motions for Dismissal and for Sanctions ("Pl. Opp. Mem."; Dkt. No. 20) at 2-3. McCabe argued that "[t]he differences between the prior action at issue in *Giovanniello* and the prior action at issue in the present case, *i.e.*, *Leyse v. Lifetime*

1

*Entertainment Servs., LLC*, No. 13-cv-5794 (S.D.N.Y.)," Pl. Opp. Mem. at 3 ("*Leyse I*"), which was

then pending before the Second Circuit (before which a petition for rehearing *en banc* had been filed),

"are significant," *id.*, explaining as follows:

> In [*Leyse* [*I*], the issue upon which putative class members were (and
> remain) dependent is that of class certification under Rule 23, whereas
> the putative class members of the prior action at issue in *Giovanniello*
> were dependent on: first, the matter of whether TCPA [(*i.e.*, the
> Telephone Consumer Protection Act, 47 U.S.C. § 227)] class actions
> could be brought in New York federal courts in the first place; and,
> second, but if and only if the district court's ruling on the first matter
> were ultimately reversed, the issue of Rule 23 class certification, to be
> first decided by the district court and, if denied, to be further
> addressed, if at all, on appeal.

*Id.* at 3-4. Due to these two steps, the continuation that the plaintiff in *Giovanniello* sought would

have been considerably longer than in *Leyse I*, in which the case had advanced to the Rule 23 class-

certification stage. Accordingly, the plaintiff in *Leyse I* explained that, "[t]he question, therefore, is:

whether those difference are material, in which event *Giovanniello* would not bind this Court, but

would, instead, be available only as persuasive authority; or whether, by contrast, the differences in

the two contexts are merely 'irrelevant factual distinctions,' *Balintulo v. Daimler AG*, 727 F.3d 174,

190 (2d Cir. 2013), in which case this Court would be bound to apply *Giovanniello*." Pl. Opp. Mem.

at 4. *See also Boyd v. J.E. Robert Co.*, No. 05-cv-2455, 2012 WL 4718723, *18 (E.D.N.Y. Oct. 2,

2012), *aff'd*, 765 F.3d 123 (2d Cir. 2014) ("*Romea* [*v. Heiberger & Assocs.*, 163 F.3d 111 (2d Cir.

1998)] is distinguishable from the facts presented here and is therefore not controlling.").

Judge Bulsara contends that, in discussing the greater length of the tolling period in the case

of a dismissal of a putative class action, McCabe had drawn "a distinction without a difference: no

court (and certainly not the Second Circuit) has suggested that the availability of *American Pipe*

tolling depends on or should depend on the length of the potential tolling period." R&R at 20, n.8.

However, Judge Bulsara also notes that "the interests underlying statutes of limitations, the purpose

2

of . . . statutes of limitations . . . is to protect defendants against *stale or unduly delayed* claims." R&R at 13, n.5 (emphasis added; citations and quotation marks omitted). Thus, the notion that it was *sanctionable* of McCabe to make an argument based upon the length of the tolling period is erroneous (even though the case from which Judge Bulsara quotes does not support McCabe's position).

Judge Bulsara also refers to the issue of the length of the tolling period as "*another* distinction . . . Mr. Bank . . . advanced at the hearing," R&R at 20, n.8 (emphasis added), but that was the *only* distinction that McCabe drew, both during the hearing and in the briefing, in arguing that tolling should have continued in *Leyse I* during the appellate process.

Furthermore, Judge Bulsara states: "Mr. Bank certainly was aware of the four-year statute of limitations for a TCPA action; he has filed many TCPA lawsuits," R&R at 26, citing *Weitzner v. Cynosure, Inc.*, No. 12-cv-3668, 2014 WL 508237 (E.D.N.Y. Feb. 6, 2014), and adding that "Defendants in *those cases* have moved to dismiss complaints filed by him on statute[-]of[-]limitations grounds." *Id.*, citing *Weitzner*, 2014 WL 508237 at *1 (emphasis added). Judge Bulsara does not identify any other cases in which any such motion was made; nor does Judge Bulsara acknowledge that the motion in *Weitzner* was decided on unrelated grounds. Much less does Judge Bulsara explain how any other such motions are relevant in the present case, which does not even concern the length of the statute of limitations for a TCPA claim (an issue over which the parties have had no dispute).

Judge Bulsara disagrees with McCabe's position regarding the different factual contexts at issue in *Giovanniello* and the present case:

> It is accurate that the dismissal of the prior class action in *Giovanniello* is unlike the present case. In *Giovanniello*, the class was dismissed on the basis of subject[-]matter jurisdiction; the *Leyse I* class was dismissed under Rule 23. That distinction does not help McCabe. It hurts him. . . If there is no reason to extend tolling in a case like *Giovanniello*, where dismissal occurs at the outset of a case,

> there is certainly none in the present case, where class certification has
> been litigated and denied by the district court. Surely class members
> can be deemed to be on notice of the need to file their own actions,
> after a motion for *class certification*  has been denied.

R&R at 19-20 (emphasis in original). Accordingly, Judge Bulsara found that *Giovanniello* is binding

with respect to the facts in the present case, *see* R&R at 17, 27, further explaining that, "in ruling that

a class member's claim is not tolled while a class[-]action dismissal is being appealed, *Giovanniello*

did not limit its decision to a particular type of class[-]status denial." *Id.* at 19. However, Judge

Bulsara's opinion that does not change the fact that *Giovanniello* arose from a different factual

context than did the present case, and that, if this Court were to find that those differences are not

merely irrelevant factual distinctions, *Giovanniello* would be available as a persuasive authority but

not a binding one.

Judge Bulsara states that, "[r]ecognizing—as he conceded at oral argument—that

*Giovanniello* forecloses any tolling after the denial of certification, Mr. Bank cites to number of cases

which he contends allows such tolling." R&R at 15, citing Transcript of Oral Argument, December

12, 2017 ("Oral Arg. Tr."), p.72, lines 3-20 (a copy of the entire transcript is annexed hereto as

Exhibit "A"). However, neither there nor anywhere else did Mr. Bank "concede[] . . . that

"*Giovanniello* forecloses any tolling after the denial of certification," although, throughout the oral

argument, Mr. Bank acknowledged that Judge Bulsara believed otherwise and addressed

*Giovanniello* accordingly.

McCabe candidly recognized that "*Giovanniello* did not focus on, or appear to rely upon, the

distinctions" (Pl. Opp. Mem. at 4) between a class-certification denial and the dismissal of a putative

class action, but pointed out that "it remains that *Giovanniello* was decided in a factual context that

is different than the one at issue here, *i.e.*, the one that existed in the *Leyse* [*I*] litigation." *Id.*

However, given the factual distinctions, the notion that McCabe was precluded from relying upon

those distinctions and that sanctions were therefore warranted, as Judge Bulsara finds, is untenable

(the issue of sanctions is discussed in greater detail in Points II - V, *infra*).

**POINT II**

**PLAINTIFF IS ENTITLED TO PRESERVE THE
ARGUMENT THAT *AMERICAN PIPE* TOLLING SHOULD
CONTINUE THROUGH THE APPELLATE PROCESS**

A.         **The Magistrate Judge Completely Misunderstands
the Right of a Party to Preserve, for Appellate Review,
Arguments That are Foreclosed by Binding Precedent**

Judge Bulsara states:

> A legal claim must either be "warranted by existing law" or "by a nonfrivolous argument for extending, modifying, or reversing existing law." *See* . . . Fed. R. Civ. P. 11(b)(2). Any argument that McCabe's TCPA claim is timely depends entirely on *American Pipe* tolling being extended beyond the class certification denial. That position is not warranted by governing Second Circuit law. *Giovanniello*, in no uncertain terms, foreclosed the tolling of statute of limitations for individual claims after the denial of class status. *Giovanniello*, 726 F.3d at 116.
>
> Nor does Mr. Bank advance any "nonfrivolous" argument for "extending, modifying or reversing" *Giovanniello*. "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear . . . that there is no chance of success." *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 830 (2d Cir. 1992) (internal quotations omitted).
>
> ***
>
> There is no dissent in *Giovanniello*. No circuit has a contrary rule, and no scholar is cited who disagrees with its principle. There is little to suggest, therefore, that any of Mr. Bank's arguments as to the timeliness of McCabe's complaint are non-frivolous. All Mr. Bank does is argue *Giovanniello* does not apply to this case; to do so, he relies on cases that are overruled, inapplicable doctrines from other contexts, or irrelevant distinctions. *See* [R&R] at 16-20. None of those contentions have even colorable merit. *Id.* Mr. Bank also just rehashes before this Court arguments he made when arguing *Giovanniello* and which the Second Circuit rejected.

R&R at 27-28, 29. First, Judge Bulsara's recommendation of sanctions because there is, in his view,

5

binding precedent that requires this Court to dismiss this action, misunderstands (or misapplies) the black-letter principle that the existence of binding precedent (assuming, *arguendo*, that *Giovanniello* is, in fact, such a precedent) does not render it frivolous to preserve one's right to challenge such precedent (that McCabe has addressed the matter with complete candor (or, as Judge Bulsara states, with "alleged candor," R&R at 34) further shows that his arguments were presented well within the bounds of proper zealous advocacy). Indeed, the right to raise issues solely for purposes of appellate preservation presumes, by definition, that there is binding precedent that must be preserved in the first place.

Second, assuming, *arguendo*, that Judge Bulsara is correct in stating that "[McCabe's] position is not warranted by governing Second Circuit law[,] [because of] *Giovanniello*," R&R at 27, Judge Bulsara entirely ignores the fact that McCabe had the right to make his arguments in order to preserve them for appeal; and the same is true with respect to Judge Bulsara's contention that "Mr. Bank also just rehashes before this Court arguments he made when arguing *Giovanniello* and which the Second Circuit rejected." It is troubling that Judge Bulsara seems not to recognize that the right to preserve an argument for appeal in the face of contrary binding precedent *presumes* that the argument in question is, "in no uncertain terms, foreclosed" by the very precedent with respect to which that argument is preserved.

Third, that *Giovanniello* was unanimous, that McCabe's position is not currently the law in any other circuit, and that McCabe did not cite any academic authorities who expressed disagreement with *Giovanniello* do not make "Mr. Bank's arguments as to the timeliness of McCabe's complaint . . . []frivolous." According to Judge Bulsara's reasoning, the right of a party to preserve an argument for appellate review requires that, prior thereto, someone other than the party has expressed support for that argument.

6

Fourth, Judge Bulsara's assertion that "*[a]ll Mr. Bank does is argue [that] Giovanniello does not apply to this case; to do so*, he relies on cases that are overruled, inapplicable doctrines from other contexts, or irrelevant distinctions," R&R at 29, citing R&R at 16-20 (emphasis added), ignores the fact that almost all of the McCabe's arguments regarding *Giovanniello* were presented *not* in order to argue that *Giovanniello* is inapplicable in the present case (although McCabe *also* made that argument, *see* Pl. Opp. Mem. at 8-9), but, again, to *preserve* those arguments as a matter of *right*. Thus, Judge Bulsara's criticism of McCabe for presenting arguments that did not distinguish *Giovanniello* completely misses the point.

That McCabe cited two cases that were "abrogated," R&R at 16 (or what Judge Bulsara later incorrectly describes as "overruled," R&R at 29), as well as a case that Judge Bulsara finds to be "no longer good law" (R&R at 17, n.6) due to *Giovanniello*, *i.e.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 281 F.R.D. 165 (S.D.N.Y. 2012), *see* Pl. Opp. Mem. at 8), does not *ipso facto* mean that the *reasoning* of those cases is flawed; it means only that higher courts disagreed with that reasoning; but: "a judge can cite as persuasive anything that in fact persuades her: a novel, a movie, an op-ed, a blog, or perhaps even an obscure law-review article. It follows that such a judge could cite a vacated or reversed opinion." Charles A. Sullivan, *On Vacation*, 43 Houston L. Rev. 1143, 1171 (2006). *See also* Frank B. Cross *et al.*, *The Reagan Revolution in the Network of Law*, 57 Emory L.J. 1227, 1250 (2006) ("overruled decisions remain in the [legal] network and may be cited even after being overruled."). Indeed, whenever a court acknowledges that its ruling disagrees with a decision of another circuit's Court of Appeals, it necessarily agrees, either implicitly or explicitly, with any opinions of the abrogated or reversed rulings of the district courts within that other circuit.

As one court helpfully explained:

> Perhaps one of the best ways of defining the term "frivolous,"
> as it appears in the 1993 version of Federal Rule 11, is to articulate

what it is not. For example, the mere absence of legal precedent, the presentation of an unreasonable legal argument, or the failure to prevail on the merits of a particular legal contention (or in the entire case being litigated) cannot justify a finding of frivolousness. Another way to define the term is to provide affirmative articulations of the circumstances in which a court should find that a suit was "frivolous." For example, the term "frivolous" should connote that the legal contention of the lawsuit is utterly implausible and lacks any arguable basis, or at least is characterized by abuse or egregiousness.

*Lerch v. Boyer*, 929 F. Supp. 319, 324 (N.D. Ind. 1996) (Judge Bulsara states that Defendant, Lifetime Entertainment Services, LLC ("Lifetime"), "does not say whether it is seeking sanctions against Plaintiff personally or his attorney Mr. Bank." R&R at 25, n.14. That is incorrect; Lifetime sought sanctions only against Mr. Bank. *See* Lifetime's Motion, Dkt. No. 18).

**B.      The Magistrate Judge's Notion that Plaintiff was Not Entitled to Rely Upon Cases That Support Plaintiff's Position is Based on a Misunderstanding of Persuasive Authorities and a Party's Right to Rely Upon Such Authorities**

Judge Bulsara's contention that "Mr. Bank . . . relies on . . . inapplicable doctrines from other contexts, or irrelevant distinctions," R&R at 29, citing R&R at 16-20, is simply erroneous. One such supposed cases is *American Tierra Corp. v. City of West Jordan*, 840 P.2d 757 (Utah 1992), in which the Utah supreme court held that *American Pipe* tolling continues through the appeal of a class-certification denial, see DE20 at 34-35, ; precisely the position that McCabe seeks to advance. According to Judge Bulsara, McCabe was not entitled to invoke *American Tierra*:

> *American Tierra* relies on *West-Haven* [sic] [*Sch. Dist. v. Owens-Corning Fiberglas Corp.*, 721 F. Supp. 1547 (D. Conn. 1988)] and *Byrd* [*v. Travenol Laboratories, Inc.*, 675 F. Supp. 342 (N.D. Miss. 1987)], which are no longer good law; and it incorrectly characterizes federal law by suggesting that federal courts uniformly held that *American Pipe* tolling extended to an appeal of a class[-]certification denial. That has never been the case; the case simply cannot be relied upon. *Armstrong* [*v. Martin Marietta Corp.*], 138 F.3d [1374] at 1384 n.18 [(11th Cir.1998) (*en banc*) ("We also note that the Utah Supreme Court case contains no rationale, and instead bases its holding [on] . . . district[-]court decisions alone, without citing or discussing [decisions of the federal courts of appeals]; we therefore

8

conclude that the *American Tierra* court misread federal law.").

R&R at 16. In claiming that *American Tierra* "simply cannot be relied upon," Judge Bulsara shows his utter misunderstanding of *persuasive authority*, the scope of which is not limited to authorities which find agreement in, or are followed by, other authorities. Rather, as the word "persuasive" makes clear, any authority is *reasoning* is found to be persuasive. Assuming, *arguendo*, that Judge Bulsara disagrees with the *reasoning* of those cases upon which *American Tierra* relied, such cases having "conclud[ed] that the rationale for [*American Pipe*] tolling continues throughout the pendency of the appeal," *American Tierra*, 840 P.2d at 762, McCabe's discussion of *American Tierra*, or his discussion of the cases upon which *American Tierra* relied, is not thereby rendered frivolous.

Perhaps further reflecting a misunderstanding of persuasive authority, Judge Bulsara does not even address not the reasoning of the cases upon which *American Tierra* relied. To be sure, there was no need for Judge Bulsara to address that reasoning in determining whether to dismiss the action, given that Judge Bulsara finds that *Giovaniello* is binding in the present case. However, Judge Bulsara's lack of attention to the reasoning of those cases (whether or not Judge Bulsara agreed or disagreed with that reasoning) is untenable and unjustified given that the only justification for imposing sanctions for making arguments based upon such reasoning would have been a finding that those arguments were so poor that they could not be presented by McCabe in exercising his right to preserve them for appeal before the Second Circuit, the Second Circuit *en banc*, and/or the Supreme Court, which has never even addressed the question of whether *American Pipe* tolling continues during the appeal of a class-certification denial.

Judge Bulsara contends that "[t]wo other cases [that McCabe discussed] involve state class[-]action procedures." R&R at 16, citing *Clark v. ConocoPhillips Co.*, 465 S.W. 3d 720, 725-726 (Tex. App. 2015), and *American Tierra*. The latter, however, "adopt[]ed [*American Pipe* tolling] as

a matter of Utah law and h[e]ld that the commencement of a class action tolls the statute of limitation as to all putative class members who would have been parties had class certification been approved." *American Tierra*, 840 P.2d at 762. Indeed, in so holding, *American Tierra* relied exclusively on federal case law. Thus, whereas Judge Bulsara is, of course, free to disagree with *American Tierra* and the federal cases upon which it relied, his notion that *American Tierra* is distinguishable because it is based upon state law is sophistic; and, to be sure, "[t]t . . . is well recognized that . . . 'state[-]court precedent is . . . persuasive authority on matters of federal law.'" *United States v. Pack*, 255 F. Supp. 3d 695, 699 (S.D. Tex. 2017), quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (ellipsis in original).

Judge Bulsara also contends that "McCabe argues that *Giovanniello* only applies to situations where the denial of class certification was based on state law, not to denials based on failures to satisfy the requirements of Rule 23." R&R at 18, citing Pl. Opp. Mem. at 3-4. However, although it happened that, in the prior action at issue in *Giovanniello*, the reason that there had been no Rule 23 decision was because the court in that prior action had found that state law precluded a party from seeking class certification altogether, the distinction that McCabe drew was between a dismissal of an action (regardless of the source of law upon which the dismissal was based) as opposed to a Rule 23 denial of class certification. Moreover, Judge Bulsara, in following the above-quoted sentence with, "[o]r put differently, [McCabe argues that] a class member may rely on *American Pipe* tolling following the denial of class certification (and through appeal), so long as that denial was not based on a failure to satisfy Rule 23," R&R at 18, seems to recognize that McCabe's distinction was not based on state law *per se*.

In *Clark*, the court noted that, "unlike in the federal system, interlocutory orders of Texas courts granting or denying class certification are appealable as of right." *Clark*, 465 S.W. 3d at 726.

However, *Clark*'s "*reasoning*," Pl. Opp. Mem. at 33 (emphasis added), relied, as did *American Tierra*, exclusively upon federal case law, and, accordingly, is, like *American Tierra*, a persuasive authority "supports the continuation of *American Pipe* tolling during the pendency of an appeal of a district court's denial of class certification." Pl. Opp. Mem. at 33.

Judge Bulsara's contention that *American Tierra* . . . incorrectly characterizes federal law by suggesting that federal courts uniformly held that *American Pipe* tolling extended to an appeal of a class[-]certification denial[,] [and that] [t]hat has never been the case; the case simply cannot be relied upon," R&R at 16, is unaccompanied by any explanation as to why that characterization was incorrect as of when *American Tierra* was decided. Much less does Judge Bulsara explain why *American Tierra* was not entitled to follow the reasoning of any of those courts, including those that "are no longer good law" (R&R at 16) on account of having been abrogated, as though a court is not entitled to agree with such reasoning, or as though a litigant is not entitled to argue that its reasoning should be considered or followed.

The only case that *American Tierra* cited that Judge Bulsara even addresses is *Davis v. Bethlehem Steel Corp.*, 600 F. Supp. 1312 (D. Md.), *aff'd on other grounds*, 769 F.2d 210 (4th Cir. 1985), although Judge Bulsara addresses *Davis* only in relation to McCabe's citation to it:

> [Mr. Bank] cites to *Davis* [] (cited by Pl. Resp., Dkt. No. 20 at 30-2) at 9-17) . . . . *Davis* has nothing to do with the issues in the present case; the district court there instructed plaintiffs' counsel to identify a class representative whose claims were not time barred, and if counsel could not do so, it would dismiss the action as being time barred. *Id.* at 1325. Nothing about the limits of *American Pipe* tolling was implicated.

R&R at 16-17. As understood by *American Tierra*, *Davis* "conclud[ed] that the rationale for tolling continues throughout the pendency of the appeal." *American Tierra*, 840 P.2d at 762. The reason that *Davis* ultimately found that tolling was *not* applicable with respect to the prior action at issue was

11

that "'[t]he facts and procedural history of the present case present the rare situation in which [the

complaint in] a previous class[-]action suit . . . did not provide notice to the defendants of the

substantive claims being brought against them.'" Pl. Opp. Mem. at 32, quoting *Davis*, 600 F. Supp.

at 1319 (footnote omitted)).

*American Tierra* is not the only court that understood *Davis* in the same way in which

McCabe did. In *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374 (11th Cir. 1998) (*en banc*), in

which "[t]he question presented . . . [was] whether, in the absence of controlling authority, the statute

of limitations begins to run again immediately upon the district court's entry of the interlocutory order

denying class certification, or whether the statute remains tolled through final judgment in the former

class action and completion of an appeal from the order denying class certification," *id.* at 1378

(footnote omitted) (which the majority answered in the affirmative), the dissent explained as follows:

> Other courts have addressed the same question, directly or indirectly,
> and expressed discordant views. Some courts have effectively
> concluded that tolling continues until the dismissed plaintiffs have an
> opportunity to appeal the district court's class[-]certification
> determination. *See Jimenez v. Weinberger,* 523 F.2d 689, 696 (7th
> Cir.1975) ("In this case we have no doubt that the filing of the [class
> action] complaint tolled the statute at least until the date of the three-
> judge district[-]court decision on the merits. If that decision had
> expressly refused to certify the case as a class action, we think the
> tolling would have continued if the plaintiffs had appealed from such
> a ruling....") (Stevens, J.), *cert. denied,* 427 U.S. 912 (1976).[FN51]
>
> [FN51] *See also West Haven Sch. Dist. v. Owens-Corning Fiberglas
> Corp.,* 721 F.Supp. 1547, 1555 (D.Conn.1988) ("[T]here was a
> 'definitive determination' of the class certification no earlier than when
> the appeals on that issue ran their course on October 20, 1986, and
> until that date the statute of limitation was suspended under *American
> Pipe* rule."); *Byrd v. Travenol Laboratories, Inc.,* 675 F.Supp. 342,
> 347 (N.D.Miss.1987) (tolling of statute of limitations ended when
> appeal involving denial of class certification had run its course, *i.e.,* on
> the date the Supreme Court denied certiorari); *Davis* [], 600 F.Supp.
> [at] 1316 (D.Md.), *aff'd,* 769 F.2d 210 (4th Cir.), *cert. denied,* 474
> U.S. 1021 (1985); *American Tierra* [], 840 P.2d [at] 762 [] ("We
> agree with the federal interpretations and conclude as a matter of Utah

law that when a proper appeal of a class[-]certification decision is taken, the tolling benefit continues on behalf of all members of the class until the class issue is finally determined by the decision on appeal.").

*Id.* at 1397 (Hatchett, *C.J.*, conc. and dissenting). *See also Miller v. Federal Kemper Ins. Co.*, 508

A.2d 1222 (Pa. Super. 1986):

> To accept the conclusion that the limitations period is not tolled but continues to run during the pendency of the class representative's appeal would be to encourage each purported class member either to file an individual action or move to intervene in order to avoid extinguishment of his or her right of recovery during the appeal period. *See: Davis* [], 600 F.Supp. [at] 1316 []. This is precisely the multiplicity of activity that class action rules were designed to avoid. *See: American Pipe* [], 414 U.S. at 551. *See also: Jiminez v. Weinberger*, 523 F.2d 689, 696 (7th Cir. 1975), *cert. denied*, 427 U.S. 912 (1976) (where class certification is denied, statute of limitations is tolled for all purported class members during the pendency of the appeal); *Davis v. Bethlehem Steel Corp.*,[] (same).

*Id.* at 1231.

In sum, regardless of the differing views expressed over the definition of the term "frivolous," *see* R&R at 28, and regardless of the fact that McCabe was trying to make a point in referring to a lawsuit against Jupiter (*see id.*) rather than to argue that only claims that are the intellectual equivalent of arguing that "the Jedi Code or Star Trek intergalactic legal principles permit recovery from a defendant," *id.*, the above-discussed authorities, and the reasoning presented by McCabe, make it clear that the present action does not even arguably meet any acceptable definition of "frivolous."

**C.    Plaintiff Argues, and is Entitled to Argue, That *American Pipe* Tolling Should Continue Through an Appeal of a Denial of Class Certification**

Judge Bulsara contends that "[McCabe] argues that *American Pipe* tolling extends to motions for reconsideration and appeals, and therefore the filing of such motions [sic] in *Leyse* [*I*] continued to toll the statute of limitations." R&R at 15. Rather, McCabe argued that "*American Pipe* tolling

*should* continue through the appellate process" (Pl. Opp. Mem. at 47, Point III heading) (emphasis added); *see also id.* at 17 ("the filing of the [McCabe] action is a perfect example of why *American Pipe* tolling *should* continue until it is clear that a putative class member's interests will no longer be pursued. Had that been the settled rule, the present action might never have been brought" (emphasis added) (as further explained in Points IV and V, *infra*)). The "should" reflects, first, that, whether or not *Giovanniello* is binding, neither the Second Circuit nor the Supreme Court has held that *American Pipe* tolling continues through the appellate process, and, second, that "*American Pipe*'s holding is 'specifically grounded in policies of judicial administration,'" *Police and Fire Retirement System of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 109, n.15 (2d Cir. 2013), quoting *Smith v. Bayer*, 564 U.S. 299, 313, n.10 (2011); *see also* Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion for Sanctions ("Pl. Sanctions Reply Mem."; Dkt. No. 29) at 6-7 ("given that *American Pipe* tolling is itself based on public-policy considerations rather than, for example, black-and-white statutory interpretation (*see Police and Fire Retirement System* [], 721 F.3d [at] 109, n.15 []), it is all the more troubling that Lifetime would have this Court punish McCabe's counsel for merely advocating that such public-policy considerations do not disintegrate upon a district court's initial denial of class certification but continue during the pendency of an appeal [of] such denial.").

Judge Bulsara notes that "[McCabe] cites to a number of decisions which found that when a Court of Appeals reverses a denial of class certification, *American Pipe* tolling is retroactively applied to the period between the denial and the appellate reversal," R&R at 17, whereas, in Leyse I, "the Second Circuit affirmed the denial of class certification." *Id.* at 18. However, McCabe explained that "[t]he question raised by the principle that a successful appeal from a class-certification denial results in the inclusion, in the *American Pipe* tolling period, of the time between the district

14

court's denial and that denial's reversal on appeal, is whether the tolling period should include the time between a district court's denial of class certification and that denial's *affirmance* on appeal," Pl. Opp. Mem. at 19, upon which McCabe argued in the affirmative. *See id.* at 19-23.

Judge Bulsara states that several cases that McCabe cited "do not establish that tolling automatically applies retroactively in such a situation. When a class[-]certification decision is reversed on appeal, courts may exercise their equitable power to waive the time bar against those class members' individual claims, but also may choose not to do so." R&R at 18, n.7, citing *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 359, n.22 (1980). However, Judge Bulsara overlooks that *Roper* was addressing relation-back discretion, whereas the cases that McCabe cited concerned *American Pipe* tolling. *See* Pl. Opp. Mem. at 17-25.

**D.   Plaintiff Was Not Prohibited From Providing His Understanding of Cases Whether or Not That Understanding Was Shared by Either the Magistrate Judge or the Second Circuit**

Judge Bulsara asserts that "[e]ight other circuits reached the same conclusion prior to the Second Circuit's decision in *Giovanniello*," R&R at 12, n.4, but that:

> Plaintiff spends significant time attempting to distinguish these cases and impugn the Second Circuit's reliance upon them. (*See* Pl. Resp., Dkt. No. 20 at 7-8). Whatever the merits of these arguments—and none are apparent—the Second Circuit, whose decisions control cases filed in this Court, was definitive in its holding that tolling does not extend beyond the initial decision to deny class status. And that ruling was not dependent upon the rulings of sister circuits, but the Second Circuit's independent determination that such a result was "consistent with the reasoning underlying *American Pipe* tolling." 726 F.3d at 116-18 ("If the [Supreme] Court had contemplated that tolling continued through the pendency of reconsideration or through appeal, there would be no need for class members to take action to protect their rights[.]").

R&R at 12-13, n.4. First, Judge Bulsara does not explain why McCabe was incorrect in stating that "five of the[] cases did *not* hold that *American Pipe* tolling is inapplicable during an appeal from the

denial of class certification." Dkt. No. 20 at 7 (emphasis in original). Indeed, McCabe did not merely

make that assertion, but explained that the questions in those five cases did not even concern whether

*American Pipe* tolling did or did not continue during an appeal of a class-certification denial. *See* Dkt.

No. 20 at 7-8.

Second, whereas Judge Bulsara's use of the term "impugn" clearly seeks to disparage

McCabe's arguments (albeit with no explanation as to why any of those arguments were wrong),

McCabe's lengthy discussion of *Giovanniello* served was intended to convince the Court that, in the

event that the Court finds that *Giovanniello* is factually distinguishable, the Court should confine

*Giovanniello* to its facts. *See* Point I, *supra*. However, McCabe also presented his arguments

regarding *Giovanniello* in order to preserve, as a matter of right under black-letter principles, those

arguments for appeal to the Second Circuit and/or the Supreme Court. *See* Pl. Opp. Mem. at 46-49.

Thus, Judge Bulsara's assertion that "Rule 11(b) does not provide protection for [McCabe's]

pleading," R&R at 30, because, as McCabe acknowledged, "'[t]he way [*Giovanniello*] expressed its

opinion, as we discussed at length in the papers, did not provide that room . . . to make the argument

that [McCabe is] now making,'" *id.* (citation omitted), reflects an astounding lack of understanding

of the right to preserve an argument for further review (nor does it mean that McCabe was prohibited

from arguing that *Giovanniello* should be confined to its facts).

As set forth below, Judge Bulsara provides cursory descriptions of numerous cases in which

sanctions were imposed upon attorneys, when, in fact, those cases do not even arguably support the

imposition of sanctions in the present case, thus rendering Judge Bulsara's invocation of those cases

grossly misleading.

(i)   ***Bridges v. Dep't of Md. State Police*, 441 F.3d 197 (4th Cir. 2006) (*see* R&R at 20, n.9)**

In *Bridges*, the plaintiffs, following their motion for class certification, "requested more discovery in lieu of filing a reply brief, [and] the district court granted their request and entered an order . . . denying the motion for class certification without prejudice and providing that the motion would 'automatically [be] considered renewed' if the plaintiffs filed a reply to the defendants' opposition to class certification." *Id.* at 203. The Fourth Circuit described that order as "an administrative order denying the plaintiffs' motion for class certification without prejudice to its later renewal." *Id.* at 202.

"Promptly []after [entry of the administrative order], the parties engaged in settlement negotiations and . . . reached [an] agreement 'in principle' on a partial settlement involving only the representative parties[,] [and] [t]he prospective class members were so advised." *Id.* at 203. The negotiations led to a settlement agreement and a court-approved consent decree concerning non-damages relief, *see id.* at 203, but "the agreement did not dispose of the individual plaintiffs' damages claims, nor did it bar them from resurrecting a class action for damages under Rule 23(b)(3)." *Id.* at 203. However, "[o]ne month later . . ., the plaintiffs formally announced that they were abandoning their class action in its entirety. They wrote the court that their 'request for [class] certification under Rule 23(b)(2) ha[d] been mooted by entry of the Consent Decree.' And as to their request for class certification under Rule 23(b)(3), they wrote: 'We have concluded that it is desirable at this juncture for the case to proceed on individual motorists' and passengers' claims only, and not as a class action.'" *Id.* at 203.

Nearly a year after "formally announc[ing] that they were abandoning their class action in its entirety," *id.* at 203, which was also "more than three years after the district court's administrative order denying class certification and more than two years after the class members were briefed on and

17

voted to approve the settlement and consent decree, the plaintiffs filed a motion to amend their complaint to add 18 individuals from the [putative] class as new plaintiffs." *Id.* at 204. However, under Maryland law, "when a party seeks to amend his complaint to add a new party, with his own cause of action, to the proceedings, the cause of action of that party has its own statute of limitations governed by *its* filing date and *not* that of the *original plaintiff*." *Id.* at 204 (emphases added). Accordingly, "[the district] court held that [the would-be plaintiffs'] filing date did not relate back to the original commencement date of the action and [that][,] therefore[,] . . . [the would-be plaintiffs'] separate and distinct causes of action . . . were barred by the statute of limitations," *id.* at 204, and denied the motion. *See id.* at 202, 204.

Following the denial, "the would-be plaintiffs, now represented by their own counsel, filed their own motion requesting the court to reconsider" the denial, *id.* at 205, "argu[ing] that their claims were not [time-]barred . . . because the running of the limitations period had been suspended by the filing of th[e] class action *and the district court's order denying class certification for only administrative reasons did not end the class action and therefore the tolling*." *Id.* at 205 (emphasis added). "The district court rejected the argument, noting that the plaintiffs had abandoned their plan to seek class certification: '[T]o ask the Court and the [d]efendants to remain in legal limbo so that [the] [p]laintiffs can expand the number of individuals seeking to bring individual claims that would otherwise be time barred, when they have abandoned their plan to seek class certification, is not in keeping with the principles articulated in *American Pipe* and *Crown, Cork & Seal* [*Co. v. Parker*, 462 U.S. 345 (1983)].'" *Id.* at 205. In addition, the Fourth Circuit, "[r]esponding to the would-be plaintiffs' claim that denying their claims on limitations grounds would be unfair," *id.* at 205, quoted the district court as follows:

"[The] [p]laintiffs waited more than three years to seek amendment to their original complaint to add additional parties after [the district

> court] denied class[-]action status. Further, [the] [p]laintiffs gave
> notice to the [district court] . . . that they had no intention of pursuing
> class-action status. Despite this announcement, they waited an
> additional nine months before seeking leave to amend their complaint
> to add the new parties. Rather than waiting—ultimately to their
> peril—[during] this period of time, [the] [p]laintiffs could have sought
> formal clarification of the effect of [the district court]'s order,
> renewed their class[-]action motion immediately, or endeavored to
> timely amend their complaint to add individual claims on the basis that
> the *American Pipe* tolling principles applied in Maryland. They chose
> not [to] do so."

*Id.* at 205.

The plaintiffs and would-be plaintiffs appealed the denial of the plaintiffs' motion to amend

the complaint as well as the denial of the would-be plaintiffs' motion for reconsideration of the denial

of that motion, *see id.* at 202; and, while the appeal was pending, the district court granted the joint

motion of the plaintiffs and would-be plaintiffs to certify the denials as final judgments under Federal

Rule of Civil Procedure 54(b), *see id.* at 202, upon which "[t]he plaintiffs and would-be plaintiffs

again appealed." *Id.* at 202. However, the district court "never entered a corresponding judgment

under Rule 58(a)." *Id.* at 202.

Because "[a] denial of a motion to amend a complaint is not a final order, nor . . . an

appealable interlocutory or collateral order," *id.* at 206, the Fourth Circuit found that "we have no

jurisdiction over the original plaintiffs' appeal of the district court's . . . order denying their motion

to amend the complaint to add new party plaintiffs," *id.*, and added that, "[e]ven if the order were

somehow appealable, the . . . plaintiffs, who were and could be the only parties to the motion to

amend, did not timely appeal the district court's order." *Id.* at 206. The court further found that, "we

also lack jurisdiction to hear the original plaintiffs' appeal of the district court's order denying the

would-be plaintiffs' motion for reconsideration," *id.* at 207, because "[t]he denial of reconsideration

of a nonappealable order is not a final order." *Id.* at 207. In addition, the court found that, "[b]ecause

the [original] plaintiffs did not join the motion for reconsideration, they also have no standing to

appeal its denial," *id.* at 207, and that, "even if th[e] order [that denied the motion for reconsideration] were final and the [original] plaintiffs had standing, their appeal was untimely, having been filed" four months after the order was issued. *Id.* at 207; *see also id.* at 205.

The Fourth Circuit also found that, "[b]ecause the . . . would-be plaintiffs never became parties to the action, they have no standing to appeal either the district court's . . . order denying the plaintiffs' motion to amend or the district court's order denying reconsideration," *id.* at 207, and that, "[m]oreover, the would-be plaintiffs' appeal from the denial of the motion to amend was untimely," *id.* at 207, but "[t]heir appeal from the denial of the motion for reconsideration, however, was timely." *Id.* at 207.

The Fourth Circuit further explained that "[the] denial of a motion to intervene is an appealable final order, without the necessity of seeking a Rule 54(b) certification," *id.* at 209, whereas the would-be plaintiffs "deliberately avoid[ed] the mention of intervention in their motion for reconsideration, . . . [but] nonetheless did request intervention, and they appealed to this court as if they were denied intervenors." *Id.* at 208. The court concluded that, "[s]etting aside consideration of the unacceptable distorting and manipulating of judicial procedures that we have witnessed here so that we might reach the substance of the would-be plaintiffs' appeal, we will take their filings on their substance and accept them as denied intervenors," *id.* at 209, and, "[a]ccordingly, . . . will treat, for purposes of this appeal, the would-be plaintiffs' motion for reconsideration to be a motion to intervene under Rule 24(b), and we [will] review the district court's . . . order denying that motion as a final appealable order." *Id.* at 209.

In turning to the merits of the appeal, the Fourth Circuit noted that, "[t]he [district] court [had] rejected the would-be plaintiffs' two arguments: (1) that their causes of action . . . should relate back to the filing of the original complaint . . . and (2) that the running of the statute of limitations

was suspended during the period from when this action was commenced as a class action . . . and that [the] suspension continued even beyond the district court's . . . administrative order denying class certification." *Id.* at 209. The Fourth Circuit "readily reject the would-be plaintiffs' first argument," *id.* at 209, but found that "[t]he would-be plaintiffs' second theory based on [*American Pipe*] tolling requires more discussion." *Id.* at 209.

Initially, the court noted that, "[u]nder Maryland law, which follows federal law as established in *American Pipe* and *Crown, Cork & Seal*, the filing of a class action suspends the running of the statute of limitations against class members' claims until the class action is denied[,] [and] [t]hus, the reasoning of *American Pipe* and *Crown, Cork & Seal* is applicable here." *Id.* at 209.

The court then found that "[t]he *Crown, Cork & Seal* Court appears to have untethered [the *American Pipe*] tolling rule from any necessary connection to the reasons for denying certification." R&R at 20, n.9, quoting *Bridges*, 441 F.3d at 211, in turn quoting *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (quotation marks omitted), and that, "[i]n untethering the rule, the Supreme Court signaled that *American Pipe* tolling extends as far as is justified by the objectively reasonable reliance interests of the absent class members. If courts were to toll statutes of limitations only when class certification was denied for lack of numerosity, the rule, which would turn on the substantive reason for the denial, would not discourage premature intervention because class members could not know or predict at the time of filing why class certification might eventually be denied." *Id.* at 211. Such 'untethering' was intended to help putative class members, not defendants, for the court explained that its reasoning was to enable those members to depends upon the pendency of the putative class action in order to be secure in the knowledge that their claims would remain timely in the event that, and regardless of why, class certification were denied. Moreover, McCabe has never argued that the question of when *American Pipe* tolling ends depends upon the *reasons* for a Rule

21

23 denial of class certification; rather, his position in this litigation has concerned only the question

of *when such tolling ends*; that is, whether tolling ends upon that denial, or upon the completion of

subsequent, *i.e.*, appellate, efforts toward class certification.

Following the administrative order, no further efforts toward class certification were made.

*See Bridges*, 441 F.3d at 212. Thus, the Fourth Circuit found that, "[i]f [the] . . . administrative order

was not the moment when the statute of limitations stopped tolling, then at no moment did it stop

tolling, for there was no other order denying class certification." *Id.* at 212. In *Leyse I*, by contrast,

the denial class certification was not the end of the named plaintiff's pursuit of certification. Instead,

the named plaintiff continued his efforts toward certification by appealing the denial to the Second

Circuit, seeking en banc review upon the Second Circuit's affirmance of the denial, and petitioning

the Supreme Court for a writ of *certiorari*, which was denied on January 8, 2018. *See*

www.supremecourt.gov/Search.aspx?FileName=/docket/docket-files/html/public\17-162.html (the

district court in *Leyse I* denied Lifetime's motion for summary judgment. *See Leyse I*, 2015 WL

5837897, at *3-*5 (S.D.N.Y. Sept. 22, 2015), which the Second Circuit did not address on appeal.

*See Leyse v. Lifetime Entertainment Services, LLC*, 679 F. Appx. 44 (2d Cir. 2017) (the plaintiff in

*Leyse I* thereupon paid costs to Lifetime based on the Second Circuit's affirmance in *Leyse I*; Judge

Bulsara reiterates Lifetime's discussion regarding that payment, *see* R&R at 7, but omits McCabe's

response. *See* Pl. Opp. Mem. at 52-53).

In addition to the Fourth Circuit's finding that the only potential date on which *American Pipe*

ended was the date of the administrative order, the court did not rely merely on that fact, but, rather,

"conclude[d] that no absentee class member could reasonably have relied on the named plaintiffs, nor

the district court, to protect their interests in the period following the district court's 2001

certification denial—*particularly in light of the events that followed*—even though that certification

denial was only for administrative purposes." *Id.* at 211 (emphasis added). The court added that, "[i]f the [administrative] denial order left doubts in the minds of reasonable absent class members whether they would be protected, *then the acts that followed entry of that order surely put the issue to rest.*" *Id.* at 211 (emphasis added). First, "[t]he [administrative] order itself stated that the class action would not be resurrected until the individual plaintiffs filed their reply requesting the court to consider the certification motion," *id.* at 211, "[b]ut as reasonably should have been expected, the likelihood of the plaintiffs filing such a reply quickly evaporated in the months that followed the district court's order," *id.* at 211-212, during which time "[t]he individual plaintiffs actively pursued settlement negotiations *for themselves*, and they *so advised absent class members.*" *Id.* at 212 (emphases added). Indeed, "[t]he plaintiffs have stated that the would-be plaintiffs in this case 'attended the March 2002 meeting with the [district] [c]ourt to discuss the proposed [c]onsent [d]ecree [at which they heard from the [district] court and from counsel], and voted to approve the settlement,'" *id.* at 212 (brackets in original), and that, "[o]f course, the settlement and consent decree involved *only the individual plaintiffs* and the defendants, and it *did not include absent class members.*" *Id.* at 212 (emphases added).

The Fourth Circuit further explained:

> Such conduct by the representative parties was *inconsistent with the case proceeding as a class action* inasmuch as the representative parties originally alleged in their complaint that they represented absent class members for injunctive and declaratory relief. *Yet they were settling those claims only on behalf of themselves*. Thus, if the district court's denial of class certification did not adequately alert class members by its language alone, when coupled with the *ensuing conduct of the litigation*, it should have alerted absent class members that the district court's denial of the class action would not be resurrected at least with respect to a portion of the class members' claims. If they were inclined to preserve those claims, they would have had to file separate suits or a motion to intervene. These would-be plaintiffs were *further notified about abandonment* of the class action when the consent decree was approved and the district court was

23

> advised that all actions, including damages actions, would proceed as
> *individual actions.*

*Id.* at 212 (emphases added). In *Leyse I*, the named plaintiff, far from abandoning the pursuit of class

certification, much less notifying the putative class members of such abandonment, continued to

pursue it vigorously, both before the District Court, the Second Circuit, and the Supreme court, in

the course of which, rather than resolving his individual claims, he attempted to *prevent* Lifetime from

forcing such a resolution upon him.

The Fourth Circuit further reasoned as follows:

> These acts were foreseeable by the terms of the district court's
> order denying class certification because the denial, even if only
> administrative, relieved the district court of its obligation to determine
> class certification "at an early practicable time." Fed.R.Civ.P.
> 23(c)(1)(A). To avoid abuse and perpetual tolling, the *American Pipe*
> tolling rule must depend on district courts' fulfilling their obligations
> under Rule 23. Yet, because of the court's order in this case, the
> plaintiffs gained the power for themselves, to be exercised in their
> discretion, of determining when and whether class certification should
> be determined, thus removing from the court the responsibility that it
> otherwise had. The court's order did not state that the court would on
> its own reconsider the certification motion at a particular time; rather
> the court denied certification, stating it would decide the merits of
> certification only if the plaintiffs filed a reply.
>
> *The plaintiffs never filed a reply*, and so the district court
> effectively relieved itself of its duty to determine the propriety of the
> class certification with its [administrative] order.

*Id.* at 212 (emphasis added). Again, the *Leyse I* plaintiff, following the District Court's denial of class

certification, took multiple additional steps in his pursuit of certification. Thus, whereas the Fourth

Circuit found that "[t]he would-be plaintiffs' position essentially argues for some new rule to cut off

tolling based on how their ambiguous filings might be construed[,] [and] [n]ot only would their

position inordinately prejudice defendants by exposing them, potentially, to perpetual tolling, but it

also demonstrates the patent unreasonability of relying on the class representative alone to pursue and

24

protect the class members' interests after the court's [administrative] order denying class certification," *id.* at 212, there was nothing ambiguous at all about the *Leyse* plaintiff's filings and intentions.

Whereas the Fourth Circuit found that "*American Pipe* cannot be understood to authorize ignoring a district court's administrative order denying class certification in favor of relying on plaintiffs' conduct *abandoning all or part of a class action or simply manifesting a loss of interest through inaction*," *id.* at 213, and that, "when the district court's administrative denial defers to the representative parties who can progressively abandon the class, the necessary clarity of a statute of limitations is destroyed," *id.* at 213, there was, again, the opposite of an abandonment or loss of interest by the *Leyse I* plaintiff.

In concluding its discussion, the Fourth Circuit again suggested that the tolling period would have continued if the plaintiffs had continued to pursue class certification:

> The would-be plaintiffs' equities are not seriously tested by this application of the *American Pipe* rule. First, after the court issued its . . . order denying the class action administratively and giving exclusive control to the representative parties, the absent class members could no longer have reasonably relied on the court to protect their interests under Rule 23. And *only a year later, they could not have reasonably relied on the representative parties to protect their interests because the representative parties told the absent class members that the parties were pursuing relief on their own.* By [the time that] the *settlement agreement* was reached, *abandonment* of the class became a *certainty*. Yet not until [*approximately one year later* (*see also id.* at 203)] did any of the absent class members act, and then with full consciousness that the statute of limitations was an existing defense. Thus, instead of filing a separate action or a motion to intervene in this action, they sought to have the complaint amended in an effort to circumvent the defenses that stared them in the face.

*Id.* at 213 (emphases added).

In sum, the *Bridges* court might or might not have found that *American Pipe* tolling would

have continued if the named plaintiffs had continued to seek class certification following the district court's denial of certification. However, its lengthy discussion of the fact that actions of the named plaintiffs following that denial constituted an abandonment of the pursuit of certification and that the putative class members had been fully informed of that abandonment, and that the putative class members should therefore have known that they needed to bring their own actions, unquestionably shows that the Fourth Circuit would likely have found that *American Pipe* tolling had continued to the extent that the named plaintiff maintained their pursuit of class certification after the district court's denial.

**(ii)** *Pentagen Techs. Int'l. Ltd. v. United States*, 172 F. Supp. 2d 464 (S.D.N.Y. 2001) (*see* R&R at 26, 37)

In *Pentagen*, the court addressed "the ninth [action] in a long history of litigation, alleging that [the plaintiff]'s failure to secure a software contract with the Department of Defense was due to the surreptitious conduct of [the] defendants as well as others in stealing its so-called MENTIX software." *Id.* at 468. "[The plaintiff]'s first action [('*Pentagen I*')] against [three defendants to which the court collectively referred as the CACI defendants, or CACI, *see id.* at 467)], which alleged copyright and trademark violations of MENTIX, was removed to federal court by CACI." *Id.* at 468. However, "[b]efore CACI removed *Pentagen I*, [the plaintiff] filed another action [('*Pentagen II*')] in [the same] district alleging the same copyright and trademark infringement claims detailed in [*Pentagen I*] . . . [,] [and] *Pentagen I* and *II* were merged as related actions." *Id.* at 468 (citation omitted). Thereafter, " CACI filed suit in . . . the Eastern District of Virginia seeking a declaratory judgment that, *inter alia*, CACI had not infringed on any of [the plaintiff]'s copyrights and trademarks during CACI's marketing and contract work for the United States Army ('*Pentagen III*')." *Id.* at 468 (citation omitted).

The district court in *Pentagen III* "granted [CACI's] motion for summary judgment on its

claims for declaratory relief and denied [the] plaintiff's motions for reconsideration and recusal," *id.* at 468, and "[the] [p]laintiff then appealed to . . . the Fourth Circuit, which affirmed all of the lower court's holdings," *id.* at 468, and "included language of the district court's opinion that [the plaintiff] had 'overlooked an essential element of an infringement claim: that the work was copied.'" *Id.* at 468 (citation and additional quotation marks omitted). Furthermore, "[a]s to [the plaintiff]'s motion for recusal of the district judge, the court admonished [the] plaintiff's counsel, stating that the claim was 'frivolous on its face' and 'reprehensible[,]'[;] [and] [i]n a later related action, the Fourth Circuit affirmed the imposition of monetary sanctions on [the] plaintiff's counsel for misconduct." *Id.* at 468-469 (citation omitted).

The plaintiff, "[i]gnoring the adverse judgments, . . . continued to file suit," *id.* at 469, bringing another state-court action ("*Pentagen IV*") that, as in *Pentagen I*, was removed to federal court. *See id.* The *Pentagen IV* district court, which "had combined and then suspended *Pentagen I* and *II* pending the outcome of *Pentagen III*, dismissed *Pentagen I*, *II*, and *IV* in part on res judicata grounds, observing that the court was presented with a 'paradigm of the situation that res judicata is intended to avert and resolve.'" *Id.* at 469 (citation omitted).

While *Pentagen III*, *i.e.*, CACI's declaratory-judgment action, "was being litigated, [the plaintiff] filed another suit [('*Pentagen V*')] in [the Southern District of New York], again alleging that CACI improperly marketed [the] plaintiff's software to the United States Army; this time, however, [the plaintiff] brought the action under the *qui tam* provisions" of 31 U.S.C. §§ 3729-3733 (the "False Claims Act" or the "FCA"). *Id.* at 469. The *Pentagen V* district court "denied [the] plaintiff's request for a preliminary injunction and dismissed the claims against [the] CACI defendants for lack of subject[-]matter jurisdiction," *id.* at 469, and also "found that [the plaintiff] failed to demonstrate—as it must in a *qui tam* action—that it was the 'original source' of the information

27

forming the basis of its claims." *Id.* at 469, quoting *Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc.*, No.

94-cv-2925, 1996 WL 11299, *3 (S.D.N.Y. Jan.4, 1996) ("*Pentagen V*").

      The *Pentagen V* district court "observed further that the claims arose from 'the same nucleus

of facts as the copyright and trademark infringement claims in *Pentagen III* [*i.e.*, CACI's declaratory-

judgment action],'" *id.* at 469, quoting *Pentagen V*, 1996 WL 11299 at *13, "and, while declining

to impose monetary sanctions, noted that dismissal would be an 'appropriate sanction' because it

'dispos[ed] of the fruit of [the] [plaintiff's] questionable efforts.'" *Id.* at 469, quoting *Pentagen V*,

1996 WL 11299 at *13. The *Pentagen V* district court "also characterized some of [the] plaintiff's

counsel's arguments as 'admittedly ridiculous.'" *Id.* at 469, quoting *Pentagen V*, 1996 WL 11299 at

*16. Nevertheless, the *Pentagen V* district court found that sanctions were not warranted, and that,

indeed, the plaintiff's counsel, notwithstanding his "admittedly ridiculous" arguments, had zealously,

but properly, represented the plaintiff:

>       The court also rejects CACI's claim that the [district] court's
> denial of [the plaintiff]'s preliminary[-]injunction motions, because
> there was "absolutely no basis for the injunction[s]," indicates bad
> faith by [the plaintiff]'s attorney. *See* [*Pentagen V*] (S.D.N.Y. July 6,
> 1995) (opinion denying preliminary injunctions). The admittedly
> ridiculous arguments advanced by [the plaintiff] when it sought the
> preliminary injunctions do not rise to the level of bad faith as set forth
> by the Second Circuit.[FN33] Moving for subsequently denied
> preliminary injunctions was not, for example, an act of frivolous
> contentions, or a use of oppressive tactics or a willful violation of
> court orders. *Dow Chemical* [*Pacific v. Rascator Maritime*], 782 F.2d
> [329] at 345 [(2d Cir. 1986)]. Rather, [the plaintiff]'s attorney
> engaged in vigorous representation of its client's interests.]
>
> [FN]33 Indeed, at a minimum, sanctioning attorneys for a ridiculous
> argument, without more analysis, borders on chilling advocacy efforts
> on behalf of clients.

*Pentagen V*, 1996 WL 11299 at *16. This action, the fifth so far, did not end the matter. Instead,

"[u]ndeterred, counsel added [an individual] as a plaintiff in a new action [(*Pentagen VI*)] alleging

the same claims as in *Pentagen V* but now with [the newly added individual] as the original source of the information at issue." *Pentagen*, 172 F. Supp. 2d at 469. The *Pentagen VI* district court "dismissed the case, *inter alia*, on res judicata grounds finding that except for the addition of [the new plaintiff] the claims were 'factually identical' to [*Pentagen V*]." *Id.* at 469, quoting *United States ex. rel. Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc.*, No. 96-cv-7827, 1997 WL 473549, *8 (S.D.N.Y. Aug. 18, 1997) ("*Pentagen VI*"). The plaintiffs "then appealed unsuccessfully to . . . the Second Circuit," *id.* at 469, "[i]n the course of [which][] [the] plaintiffs' counsel represented to the court that he would refrain from bringing any further related actions," *id.* at 469-470, but "[t]hereafter, [the plaintiff] filed two (2) more suits against the United States," *id.* at 470, about which the district court explained as follows:

> The first, alleging Government infringement on [the plaintiff]'s ownership of [the] MENTIX [software] during the Army's evaluation of [that] software, was dismissed for failure to state a claim, *see Pentagen Techs. Int'l Ltd. v. United States*, No. 97-245 (Fed.Cl.), *aff'd*, 175 F.3d 1003 (Fed.Cir.1999) ("*Pentagen VII*"); the second, alleging that the United States House of Representatives had reports providing evidence for [the] plaintiffs' abuse[-]of[-]process claim in the instant case, was dismissed similarly and [the] plaintiffs' motion for re-argument was denied. *See Pentagen Techs. Int'l Ltd. v. Comm. on Appropriations of the United States House of Representatives*, 20 F.Supp.2d 41 (D.D.C.1998) ("*Pentagen VIII*").

*Id.* at 470. These two additional cases, *i.e.*, the seventh and eighth, did not end the series. Rather, "[p]ersisting, [the] plaintiffs brought their third *qui tam* action, which is the basis for [the] defendants' instant sanctions motion." *Id.* at 470, citing *Pentagen Techs. Int'l Ltd. v. United States*, 103 F. Supp. 2d 232 (S.D.N.Y. 2000) ("*Pentagen IX*"). *Id.* at 470. The district court described the *Pentagon IX* litigation as follows:

> [The] [p]laintiffs alleged that [the] defendants' behavior in litigating the first two *qui tam* actions constituted an abuse of process under state law and was in violation of the FCA. Specifically, Pentagen alleged that CACI colluded with the United States defendants in filing

29

an *amicus curiae* brief, in meeting with a member of the Executive Branch to obtain a witness statement [], and in otherwise seeking the assistance of the United States in preparing their defense. The [district] [c]ourt held that [the] plaintiffs' claims under the FCA must be dismissed because the United States never waived sovereign immunity in this area and the FCA does not provide for a private right of action. *See Pentagen IX*, 103 F.Supp.2d at 236. The Court then dismissed plaintiffs' abuse[-]of[-]process claim, finding that it was barred by the applicable statute of limitations. *See id.* at 237. [The] [p]laintiffs also requested leave to amend the complaint a second time, but the [district] [c]ourt denied that application because the claims asserted were without merit and because [the] plaintiffs failed to produce any new evidence, [such that] further amending the complaint would be 'futile.' *Id.*[FN]5

[FN]5 [The] [p]laintiffs subsequently filed an appeal with the Second Circuit, which was dismissed because of [the] plaintiffs' default in July, 2001. Furthermore, [the] plaintiffs filed what amounts to their fourth *qui tam* action in this district, all four of which originated from the same nucleus of facts. *See U.S. ex. rel. Pentagen Techs. Int'l Ltd. v. United States*, No. 00 Civ. 6167, 2001 WL 770940 (S.D.N.Y. July 10, 2001).

*Id.* at 470.

The district court found that "[the] plaintiffs' counsel has failed to demonstrate that he made any reasonable inquiry before deciding to sue these particular defendants on the specific grounds chosen." *Id.* at 471. The court also found that, "[w]ith respect to [the] plaintiffs' *qui tam* claim under the FCA, at the time of filing there existed clear, long-standing precedent establishing that the Government cannot be sued unless it has waived its sovereign immunity." *Id.* at 471, citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Moreover, even after being given the opportunity to amend the complaint and despite a specific warning by this Court that it considered the Government immune in the context of this action, [the] plaintiffs' counsel failed to offer any meaningful argument that the Government had waived its sovereign immunity," *id.* at 471, but, "[g]iven the governing statutory scheme, it is likely that any argument maintaining that the

Government intended to waive its sovereign immunity in the context of the FCA would be meritless[;] [i]ndeed, because the FCA allows individuals to sue on behalf of the Government to recover federal monies, it is illogical that the Government itself could be sued under the same Act." *Id.* at 471, n.6, citing 31 U.S.C. § 3730.

Furthermore, "Counsel's inclusion of the non-Government defendants in this action, specifically CACI, was also clearly improper[,] [for] [a]s this Court discussed in its previous opinion, the FCA on its face does not provide a private right of action for litigation misconduct, *see* 31 U.S.C. § 3730(b), nor is there any credible argument to support a claim that the Court should recognize such an implied right of action in the instant case." *Id.* at 471, citing *Pentagon IX*, 103 F. Supp. 2d at 236-237. As a result of these circumstances, the court found that the plaintiff's attorney, having been warned by the court, should have anticipated the likelihood that the latest action, *i.e.*, the ninth in the series, would result in sanctions:

> [The] plaintiffs' counsel was specifically advised of the frivolous nature of his claims when [the *Pentagon V* district court], although declining to impose sanctions, observed that plaintiffs' claims arose from "the same nucleus of facts" as *Pentagon III* and that dismissal would "dispose of the fruit of [the] [plaintiffs'] questionable efforts." *Pentagon V*, 1996 WL 11299, at *13. [The *Pentagon VI* district court]'s similar dismissal of [the] plaintiffs' second *qui tam* action on res judicata grounds should have given plaintiffs' counsel further notice of the frivolousness of any additional litigation. *See Pentagon VI*, 1997 WL 473549, at *9-10.

*Id.* at 471-472. If the plaintiff's attorney had, in fact, anticipated the likelihood of being sanctioned, such anticipation did not have its intended effect:

> Undeterred, however, [the] plaintiffs' counsel filed his third *qui tam* action against [the] defendants. This time, in addition to alleging essentially the same facts, [the] plaintiffs' counsel ignored [the *Pentagon V* district court]'s prior opinion . . . in [that court, which] held that the activities supposedly constituting [the] [defendant]s' "litigation misconduct" claim were—far from being misconduct—proper in the context of a *qui tam* action. Thus,

> Pentagen and its counsel have again attempted to use the FCA's *qui tam* procedure to litigate its original copyright and trademark action and to continue pressing harassing litigation in the face of contrary direction from the courts.

*Id.* at 472 (footnote omitted). The court also found that the plaintiff's attorney had no basis for arguing that the statute of limitations had been tolled:

> [The] [p]laintiffs' decision to bring its abuse[-]of[-]process claim was similarly unreasonable. [The] [p]laintiffs' counsel brought the abuse[-]of[-]process claim without any credible basis for believing that the applicable statute of limitations had been tolled. Under New York law, the statute of limitations for plaintiffs' abuse[-]of[-]process claim is one (1) year. *See* N.Y.C.P.L.R, § 215(3) (2001); *Heinfling v. Colapinto*, 946 F.Supp. 260, 266 (S.D.N.Y.1996). [The] [p]laintiffs' counsel filed this action . . . over two (2) years after the Government supposedly engaged in litigation misconduct by filing an *amicus brief* . . ., and over a year after the non-Government defendants' supposedly engaged in litigation misconduct by obtaining [a witness] [s]tatement . . . . Accordingly, [the] plaintiffs' abuse[-]of[-]process claim was clearly time-barred. *See Pentagen IX*, 103 F.Supp.2d at 237; *see also Borison v. Corracchia*, No. 96 Civ. 4783, 1997 WL 232294 (S.D.N.Y. May 7, 1997).

*Id.* at 472. In addition, the court found that the abuse[-]of[-]process was, even aside from being untimely, completely lacking in merit:

> Assuming, *arguendo*, that Pentagen brought its abuse[-]of[-]process claim within the statute of limitations, [the] plaintiffs' counsel could not have reasonably believed that the claim could survive on the merits. Although [the] plaintiffs' counsel went to great lengths to allege that [the] defendants actually caused process to issue,[FN]10 he ignored the further fact that under New York law he also needed to plead some purpose collateral to the litigation for engaging in these acts. . . . . The only such purpose [that the] plaintiffs' counsel offered was that defendants wanted to prevail in the litigation itself; this is not sufficient under New York law. *See Bernard v. United States*, 25 F.3d 98, 104 (2d. Cir.1994) ("[P]erson activating the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process.") (citing *Hornstein v. Wolf*, 109 A.D.2d 129, (1985), *aff'd*, 67 N.Y.2d 721 (1986)).

> [FN]10 [The] [p]laintiffs ultimately amended their complaint to

32

include allegations that defendants caused process to issue, but the lack of such an inquiry at the outset caused the Court to warn plaintiffs' counsel at a Pre-Trial Conference of the potential frivolousness of his claim. Had [the] plaintiffs agreed to dismiss their claims at that juncture, the Court would likely have been more reluctant to impose sanctions given that [the] defendants had exerted minimal effort in defending against this claim.

*Id.* at 472-473.

Upon the foregoing facts, the court found that "[i]t follows that this is a most appropriate case

for imposition of Rule 11 sanctions," *id.* at 473, explaining as follows:

Here, [the] defendants have been forced to defend yet another in a long series of complaints that, beyond simply being unsuccessful, have had "'absolutely no chance of success under existing precedents.'" *Shafii v. British Airways, PLC*, 83 F.3d 566, 570 [(2d Cir. 1996)] (quoting *Mareno* [*v. Rowe*], 910 F.2d [1043] at 1047 (2d Cir.1990)). Indeed, counsel, by seeking to contravene the explicit findings of prior litigation without any meritorious arguments to extend the law, went far beyond the standard of objective unreasonableness in filing this action.

*Id.* at 473. As the court further explained:

Evidence of [the] plaintiffs' counsel's bad-faith in litigating the instant claim is abundant. Most egregiously, [the] plaintiffs' counsel has engaged in a pattern of litigation designed to evade previous rulings. In *Pentagen VI*, the court noted that "by filing [the] action, Pentagen ha[d] impermissibly attempted to evade" the dismissal in *Pentagen V*. *Pentagen VI*, 1997 WL 473549, at *8. Not surprisingly, [the] plaintiffs[] were keenly aware of the repetitive nature of their claims, admitting that "except for the addition of [a new] plaintiff," the claims were "factually identical." *Id.* at *7. Moreover, the similarity between [the] plaintiffs' claims here and those presented in *Pentagen V* reflects a continuing intent to evade the rulings of courts in this district. Not only was this litigation frivolous and repetitive, therefore, but it was intentionally so.

*Id.* at 473-474. Moreover, multiple courts had chastised the plaintiff's attorney:

Other courts have also been frustrated by the litigation brought by [the] plaintiffs' counsel. In addition to [the *Pentagen VI* district court]'s comments noted above, [one of the judges], in one of Pentagen's appeals before the Second Circuit, threatened to impose

33

> sanctions because of the amount of repetitive litigation brought by [the] plaintiffs. It was in the course of that same hearing, furthermore, that [the Second Circuit judge] elicited a promise from [the] plaintiffs' counsel not to initiate future litigation based on these same operative facts. [The] [p]laintiffs' counsel broke that promise by filing his subsequent *qui tam* actions.

*Id.* at 474.

(iii)   ***Mirman v. Berk & Michaels, P.C.***, **No. 91-cv-8606, 1992 WL 332238 (S.D.N.Y. Oct. 30, 1992) (*see* R&R at 27)**

In *Mirman*, the plaintiffs alleged, *inter alia*, violations of Section 10(b) of the Securities and Exchange Act and New York common-law fraud. *See id.* at *1. Respectively, such claims must be brought "with[in] one year of [the] plaintiff's 'discovery of the facts constituting the cause of action and within three years after such cause of action accrued,'" *id.* at *2, quoting 15 U.S.C. § 78r(c), and "within two years of the time that [the] plaintiff discovered or could with reasonable diligence have discovered the fraud, or within six years of the fraud itself, whichever is later." *Id.* at *2. The complaint was filed "in December 1991, almost seven years after the [plaintiffs]' last investment transaction." *Id.* at *2.

The plaintiffs, "claiming not to have been put on notice of the possibility of fraud until August 1990, assert[ed] that the statute of limitations was tolled because of [the] [d]efendants' fraudulent concealment of their wrongful conduct." *Id.* at *2. However, the court found that "[the] [p]laintiffs undoubtedly had notice of possible fraud well before August 1990," *id.* at *2, explaining that "[a]s [the] [d]efendants observe, two of [their] investments . . . were the subject of a 1984 IRS investigation," *id.* at *2, and that "[t]hese same two [investment] partnerships were at issue in a similar action that was dismissed as untimely in 1990," *id.* at *2, which had been "brought by the same plaintiffs' attorney against the same defendants in the wake of the 1984 IRS inquiry." *Id.* at *2. The district court in the earlier case had "dismissed that case as untimely, ruling that the plaintiffs'

receipt of [the 1984] IRS inquiry into the possible wrongdoing by the partnerships constituted sufficient notice," *id.* at *2; and, in the case at bar, "[the] [d]efendants contend[ed] that the [plaintiffs] certainly must have received IRS notification of the investigation in 1984, as the . . . plaintiffs [in the earlier case] did." *Id.* at *2.

The court "agree[d] [with the defendants], and [found] that the IRS investigation provided at least constructive notice of possible wrongdoing," *id.* at *2, whereas, "[i]n their complaint, the [plaintiffs] admit[ted] awareness of the [1984] IRS inquiry, but den[ied] that such awareness constitutes constructive knowledge of possible fraud[;] [and] [m]oreover, the [plaintiffs] assert[ed] that notice of fraud is a factual issue that should be left for the trier of fact." *Id.* at *3.

The court found that the plaintiffs' "arguments are unpersuasive," *id.* at *3, as the plaintiffs "[e]ssentially . . . claim[ed] lack of actual notice of the possibility of fraud[,] [whereas] [t]his is not the required standard." *Id.* at *3. Instead, the court explained that "[a] party in a fiduciary relationship is held to have constructive knowledge of fraud from the time that at least the possibility of fraud should have been apparent to him," *id.* at *3 (citations and quotation marks omitted), and, therefore, "[e]quitable tolling ceases to operate at the time a person exercising due diligence should have discovered the probability of fraud[,] [and] [a]ll that is necessary to cause the tolling period to cease is for there to be reason to suspect the probability of some wrongdoing." *Id.* at *3.

The court, based upon the foregoing findings, sanctioned the plaintiff's attorney:

> [The] [d]efendants argue that sanctions are justified because, based on the dismissal of three previous actions involving the same partnerships as untimely, [the] [p]laintiffs' counsel clearly knew that the statute of limitations had run in this case. The Court agrees. [The] [p]laintiffs' counsel's familiarity with the parties involved and the claims asserted in the three other actions leads this Court to the conclusion that the allegations of this complaint were not made in good faith after reasonable inquiry. Accordingly, the Court grants [the] [d]efendants' motion for Rule 11 sanctions. [The] [p]laintiffs' counsel shall pay $1,000.00 to [the] [d]efendants.

*Id.* at *4 (footnote omitted).

(iv)    ***Hoatson v. New York Archdiocese***, 280 F. App'x 88
          (2d Cir. 2008) (*see* R&R at 30)

In *Hoatson*, the plaintiff, whose attorney had been sanctioned by the district court, "[made] two principal arguments on appeal: first, that the district judge erred by not recusing himself from this case, and second, that the district court erred in sanctioning [the plaintiff's attorney]." *Id.* at 90. However, "[the plaintiff]'s brief fail[ed] to make any argument that the district court erred in dismissing his RICO and Title VII claims." *Id.* at 90. Accordingly, the Second Circuit upheld those sanctions, explaining as follows:

> [T]he district court found that "the pleadings are so far removed from adequate ...; the bulk of the allegations dealing with sexual abuse are wholly irrelevant to the RICO claim[;] and[ ] the Title VII claim is admittedly without basis in law." For example, to avoid the clear law of the Circuit that termination for failure to participate in a RICO conspiracy does not give rise to standing to bring a civil RICO claim, [the plaintiff's attorney] asserted at oral argument "that his client had not been terminated as alleged numerous times in the amended complaint, but rather that his job had been stolen from him." [The plaintiff's attorney]'s pleadings on the RICO claim repeated "almost word for word the precise allegations" that Judge Hurd of the United States District Court for the Northern District of New York "found to be wholly irrelevant to the RICO claim and completely inadequate for alleging a RICO violation[]" [in a separate case brought by the plaintiff's attorney for a different plaintiff, *see Hoatson v. New York Archdiocese*, No. 05-cv-10467, 2007 WL 431098, *1, n.3 (S.D.N.Y. Feb. 8, 2007, *aff'd*, 280 F. App'x 88 (2d Cir. 2008))].

*Id.* at 91. The Second Circuit further explained, as follows, why the sanctions were warranted:

> The district court in this case concluded that, "[h]aving been told that [the] pleadings [in the Northern District action] were inadequate, simple repetition here cannot have been in good faith or done after a reasonable inquiry." In addition, with respect to the Title VII claim, [the plaintiff's attorney] conceded that [the plaintiff] had not exhausted administrative remedies by filing a complaint with the EEOC. [the plaintiff]'s Title VII claim is also untimely and rests on a theory of sexual orientation discrimination, which this Circuit has stated is not within the ambit of Title VII, *see Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir.2000) ("The law is well-settled in this circuit and in all others to have reached the question that ... Title VII does

36

not prohibit harassment or discrimination because of sexual orientation."). [The plaintiff's attorney] offered no argument for reversing this settled law. In sum, the district court did not abuse its discretion in deciding to sanction [the plaintiff's attorney] under Rule 11.

*Id.* at 91-92.

**(v)     *McKnight v. General Motors Corp.*, 511 U.S. 659 (1994)
            (*see* R&R at 33; *see also id.* at 30-31)**

In *McKnight v. General Motors Corp.*, 511 U.S. 659 (1994), the Supreme Court vacated the Seventh Circuit's imposition of sanctions on the petitioner's counsel, finding that, "if the only basis [for imposing sanctions] . . . was that [counsel's] . . . argument was foreclosed by Circuit precedent, the order was not proper," *id.* at 660, and further explaining: "[a]s [the] petitioner noted in his memorandum opposing dismissal and sanctions, *this Court* had not yet ruled on the [underlying legal question]. Filing an appeal was *the only way [the] petitioner could preserve the issue pending a possible favorable decision by this Court*. Id.* (emphases added).

It is the essence of preservation that arguments may be presented to a court that has already rejected those arguments (*e.g.*, the Seventh Circuit in *McKnight*) in order to present those arguments on a further appeal (*e.g.*, the Supreme Court in *McKnight*). Indeed, that is the very point of preservation, and, accordingly, Judge Bulsara's notion that the right of preservation applies only where new arguments are presented to a court that has already rejected the preserved arguments (or to a court that is *required* to reject such arguments based on binding precedent) is plainly nonsensical.

The *McKnight* Court also noted that, "[a]lthough, as of [the date of the Seventh Circuit's ruling], there was no circuit conflict on [the legal] question [at issue]," *id.*, that question had divided the [d]istrict [c]ourts and its answer was not so clear as to make [the] petitioner's position frivolous." *Id.* As McCabe previously set forth, numerous courts, including the Supreme Court, support McCabe's arguments in favor of applying *American Pipe* tolling during an appeal from the denial of

37

class certification. *See* Pl. Opp. Mem. at 9-37 Indeed, some of these courts have held that *American Pipe* tolling applies exactly as McCabe argues it should.

Judge Bulsara describes *McKnight* as "reversing sanctions where Court of Appeals had not ruled on relevant legal question," R&R at 33, but that is wrong, as Judge Bulsara himself recognizes. *See* R&R at 30 ("*McKnight* reversed a sanctions order [that had been] imposed because counsel argued a position that had been foreclosed by the Seventh Circuit."). Judge Bulsara seeks to distinguish the present case from *McKnight* by stating that "Mr. Bank is relitigating arguments recently rejected; providing no new reason why the case was wrongly decided, or change in the law since the case was decided to suggest the rule be overturned." R&R at 31. However, *McKnight* provides no indication as to whether the party had, before the Seventh Circuit, "provid[ed] [any] new reason why the [Seventh Circuit] case [law had been] wrongly decided, or change in the law . . . to suggest [that] the [case law] be overturned." R&R at 31.

Judge Bulsara cites *Hunter v. Earthgrains Company Bakery*, 281 F.3d 144 (4th Cir. 2002), for "reversing attorney suspension which 'was in large part premised on her legal contention . . . in connection with a body of law that was in a state of flux.'" R&R at 33, quoting *Hunter*, 281 F.3d at 156 (ellipsis by Judge Bulsara). However, the notion that the law must be "in flux" in order to preserve the right to present an argument to higher court, including, here, a court, *i.e.*, the Supreme Court, that has not yet ruled on the issue and would thus not even be asked to overrule its precedents (although there is nothing improper about asking a court to do exactly that)) is also nonsensical.

Judge Bulsara notes that "[Mr. Bank] cites cases where the Supreme Court or a court of appeals has overturned its own ruling," R&R at 32, citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1984) in which "the Court overruled the 11 circuits that had addressed the issue of whether a private plaintiff could bring an aiding[-]and[-]abetting claim

under § 10(b) of the 1934 Securities and Exchange Act." R&R at 32. Judge Bulsara then notes as

follows:

> In *Central Bank*, the Supreme Court explained there was "continuing
> confusion" about the scope of § 10(b) liability; courts of appeals had
> issued decisions expressing that doubt; and law professors had also
> questioned whether aiding[-]and[-]abetting liability could exist in light
> of more recent pronouncements by the Supreme Court. 511 U.S. at
> 169-70. This is not such a case. The uncertainty present about the
> *Central Bank* doctrine does not exist around *Giovanniello*.

R&R at 32. However, Bank cited *Central Bank* merely to point out that courts, including the

Supreme Court, overrule their own precedents. *See* Pl. Opp. Mem. at 48 ("[p]erhaps the paradigmatic

instance of counsel's successfully prevailing in the face of overwhelming contrary case law occurred

when the Supreme Court, in a 5-4 decision, disagreed with, and therefore abrogated (or reversed),

the rulings 'by *all 11 Courts of Appeals* to have considered the question' at issue. *Central Bank* [],

511 U.S. [at] 192 [] (Stevens, *J.*, conc.) (emphasis added; footnote omitted)"). In any event, the

preservation of an argument for presentation to a higher court, again, does not depend upon whether

the precedent at issue has been questioned.

Judge Bulsara then states: "[m]oreover, as the Second Circuit explained, the 'bright line' rule

that tolling does not apply following a denial of certification comes directly from the Supreme Court's

original *American Pipe* decisions. *Giovanniello*, 726 F.3d at 116 (citing *American Pipe*, 414 U.S.

at 561 & *Crown, Cork*, 462 U.S. at 354)." R&R at 32. First, *Giovanniello* stated that its holding, *i.e.*,

"that *American Pipe* tolling does not extend beyond the denial of class status[,]" *Giovanniello*, 726

F.3d at 116:

> is consistent with—if not compelled by—the decisions of the Supreme
> Court and this court. The Supreme Court in *American Pipe* held that
> "the commencement of the class action in th[e] case suspended the
> running of the limitations period *only during the pendency of the
> motion to strip the suit of its class[-]action character*." 414 U.S. at
> 561 (emphasis added). Further, the Court in *Crown, Cork & Seal Co.*

> *v. Parker*, 462 U.S. 345 (1983), held: "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class *until class certification is denied*. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.* at 354 (emphasis added).

*Giovanniello*, 726 F.3d at 116. Thus, *Giovanniello* found, at most, that the Supreme Court *might* have compelled (or arguably compelled) the result reached in *Giovanniello*, even though the issue before the *Giovanniello*, which concerned the question of whether *American Pipe* tolling should continue during an appeal from a dismissal of a putative class action, was not before *American Pipe*, in which "[n]either the named plaintiffs nor any unnamed member of the class [had] appealed [the class-certification denial], either [by an interlocutory appeal] or at any later time." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 391 (1977). Thus, the Seventh Circuit explained: "[t]ogether, *American Pipe* and *Crown, Cork & Seal* explain that the filing of a proposed class action immediately pauses the running of the statute of limitations for all class members. But *neither opinion addresses whether tolling continues during the pendency of an appeal after the suit is dismissed or class certification is denied*." *Collins v. Village of Palatine*, 875 F.3d 839, 843 (7th Cir. 2017) (emphasis added). It is thus incredible that Judge Bulsara characterizes "Mr. Bank . . . [as] argu[ing] . . . essentially that he is entitled to preserve and make arguments for challenging established and settled law," R&R at 30, for it is bad enough that Judge Bulsara does not recognize that a litigant has exactly that right; worse still is that, as the Seventh Circuit recognized, the question at issue here, *i.e.*, whether *American Pipe* tolling continues during the appeal of a denial of class certification, is not "established and settled law" unless, by "established and settled law," Judge Bulsara is excluding the Supreme Court. In short, Judge Bulsara's lack of understanding is troubling, as is his contention that "Mr. Bank does not argue *Giovanniello* should be overturned," R&R at 31, n.16; but such an argument, by its very nature, belongs in a court that has the *authority* to overturn it, *i.e.*, the Second

40

Circuit and/or Supreme Court. Before Judge Bulsara, McCabe could only seek to distinguish *Giovanniello* or preserve arguments for its overturning, each of which McCabe has done. The same lack of understanding is shown in Judge Bulsara's claim that "[no] reasonable attorney find any room in *Giovanniello*'s bright[-]line test to rescue an action clearly barred by the statute of limitations." R&R at 37. Whether or not that is accurate, it would not change the fact that the Supreme Court has not ruled on the issue, which alone entitled McCabe to preserve his arguments.

Second, in *McDonald*, the Court held that *American Pipe* tolling did not cease when class certification was denied, but, rather, continued until there was a final judgment where the named plaintiffs had unsuccessfully attempted to bring an interlocutory appeal of the class-certification denial, thus rendering, as timely, a putative class member's subsequent post-judgment appeal of that denial (for McCabe's lengthy discussion of *McDonald*, and why *McDonald* supports McCabe's position, *see* Pl. Opp. Mem. at 9-17). Moreover, *McDonald* noted that, in *American Pipe*, "[n]either the named plaintiffs nor any unnamed member of the class [had] appealed [the class-certification denial], either [by an interlocutory appeal] or at any later time." *McDonald*, 432 U.S. at 391. Thus, *American Pipe* had not been presented with the question of whether, or under what circumstances, tolling should continue where there has been an attempt to bring an interlocutory appeal.

Third, the Second Circuit, in an earlier appeal in *Giovanniello*, stated:

> This opinion does not further address *American Pipe* tolling, and we intimate no view with respect to whether tolling under *American Pipe* extends through the pendency of a motion for reconsideration or on appeal. We acknowledge, however, that every circuit to have addressed the scope of this doctrine has concluded, as the district court did here, that *American Pipe* tolling ceases upon denial of class certification.

*Giovanniello v. ALM Media, LLC*, 660 F.3d 587, 589, n.1 (2d Cir. 2011), *vacated on other grounds*, 568 U.S. 801 (2012).

Fourth, just as *American Pipe*, which held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class[-]action status," *American Pipe*, 414 U.S. at 553, was not presented with the question of whether tolling may continue after a trial court denies class certification, neither was *American Pipe* presented with the question of whether *American Pipe* tolling may be used to bring a new class (as opposed to individual) action; nor was *Crown, Cork & Seal* presented with *either* one of those issues, as the Court merely held that once "class certification is denied . . ., class members may choose to file their own suits [instead of] interven[ing] as plaintiffs in the pending action." *Crown, Cork & Seal*, 462 U.S. at 354. However, the fact that neither *American Pipe* nor *Crown, Cork & Seal* was presented with the question of whether *American Pipe* tolling applied to a new class action likewise means that neither of those decisions requires a particular answer to that question. Indeed, on December 8, 2017, the Supreme Court granted *certiorari* in *China Agritech, Inc. v. Resh*, No. 17-432, --- S. Ct. ---, 2017 WL 4224769, in which the Question Presented([1]) is as follows:

> In *American Pipe* [] and *Crown, Cork & Seal* [], this Court held that the "timely filing of a defective class action toll[s] the limitations period *as to the individual claims* of purported class members." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 n.3 (1990) (emphasis added). In this case, two defective class actions were filed during the limitations period. Respondents, absent members of the rejected classes, filed a third class action, this time outside the limitations period. The Ninth Circuit construed *American Pipe* to toll the limitations period and make this third class action timely. Respondents' class complaint would have been dismissed as untimely in at least six other Circuits, which have held-as this Court recognized in *Irwin* and other cases-that *American Pipe* applies only to individual actions, not new class actions brought by previously absent class members.

---

[2] Available at:
www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/17-432.html

The question presented is:

Whether the *American Pipe* rule tolls statutes of limitations to permit a previously absent class member to bring a subsequent class action outside the applicable limitations period.

(Judge Bulsara's suggestion that, under the current law in the Second Circuit, McCabe would be able to use *American Pipe* tolling (assuming, *arguendo*, its applicability) to bring his action as an individual action but not as a *class* action, *see* R&R at 22-23, is misleading at best. *See* Pl. Opp. Mem. at 38-46).

Judge Bulsara criticizes McCabe's citation to *Betances v. Fischer*, 144 F. Supp. 3d 441 (S.D.N.Y. 2015), *see* R&R at 17, n.6, but takes McCabe's discussion of *Betances* entirely out of context. That discussion, which was offered in response to Lifetime's misleading citation to *Betances*, concerned only the question of whether *American Pipe* tolling applies to new class actions; that discussion did not pertain, as Judge Bulsara finds, to the question of *when American Pipe* tolling ends. *See* Pl. Opp. Mem. at 44-45.

Fifth, the numerous cases that, in various circumstances, including the circumstances at issue here, have held that *American Pipe* does not end when a trial court denies class certification, *see* Pl. Opp. Mem. at 9-37, belies the notion that *American Pipe* compelled such a result.

Judge Bulsara states that:

Bank also cites *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (en banc) (cited by Pl. Resp., Dkt. No. 20 at 48) to suggest that at any time a court of appeals could reverse itself; and therefore he is entitled to (re)argue positions recently rejected in *Giovanniello*. Mr. Bank suggests that in *Rybicki*, decided in 2003, the Second Circuit reversed its decision in *United States v. Handakas*, 286 F.3d 92 [(2d Cir. 2002)], issued only one year before. The complexities of these decisions from the criminal context have no application to Mr. Bank's civil claims, which are governed by civil Rule 11.

R&R at 33, n.17. Notwithstanding Judge Bulsara's flippant description, Bank merely cited *Rybicki* as an example, among others, of an appellate court's overruling of its own precedent.

43

**(vi)** ***Sargent v. United States Dep't of Ed.***, No. 07-cv-618, 2007 WL 3228821
(E.D. Wis. Oct. 31, 2007) (R&R at 31-32)

In *Sargent*, "[the plaintiff] argue[d] . . . that his complaint [was] not frivolous because 'he is quite certain of what he seeks,' and that his complaint was filed merely to get more information," *id.* at *1; and, in the face of a Supreme Court decision that barred the type of private right of action at issue, "[the plaintiff] set forth no nonfrivolous argument for the modification or reversal of the existing law against [such private actions." *Id.* at *2.

## POINT III

## LEGAL DOCTRINES PERTAINING TO THE FOLLOWING BY ONE COURT OF ANOTHER COURT ARE NOT APPLICABLE, MUCH LESS SANCTIONABLE

Judge Bulsara states that "this Court would *also* be obligated to follow—whether through comity, stare decisis or the basic precept that District Courts follow the law of the circuit—the Second Circuit's decision finding that Judge Hellerstein [in *Leyse I*] was correct in denying certification of the same class pled here." R&R at 37 (emphasis in original).

**A.** ***Stare Decisis* and "the Law of the Circuit"**

It is axiomatic that the Second Circuit's ruling, having been a summary order, is not precedential, and is thus neither "the law of the circuit" nor binding on this Court. *See* 2d Cir. Local R. 32.1.1. Indeed, the first line of Summary Orders, including in *Leyse I*, is "Rulings by Summary Order Do Not Have Precedential Effect." *Leyse v. Lifetime Entertainment Services, LLC*, 679 F. Appx. 44 (2d Cir. 2017) (original in all caps). *See also Johns v. Int'l Business Machines Corp.*, 361 F. Supp. 2d 184, 192 (S.D.N.Y. 2005) ("a Summary Order by the Court of Appeals affirming a District Court decision does not state the law of the Circuit."); *Alvarez v. Coca-Cola Refreshments, USA, Inc.*, 914 F. Supp. 2d 256 (E.D.N.Y. 2012):

> The relevant facts [in *Manigault v. Macy's East*, 318 F. Appx. 6 (2d Cir. 2009)] were nearly identical to the facts before this Court . . . . [¶]

44

> Because *Manigault* is an unpublished summary order, it is not binding
> on this Court. *See* 2d Cir. Local R. 32.1.1; *Mendez v. Starwood
> Hotels & Resorts Worldwide, Inc.*, 746 F.Supp.2d 575, 595
> (S.D.N.Y.2010) ("[a] summary order has no precedential effect on
> any court, although it has to be deemed some indication of how the
> Court of Appeals might rule were it to decide the issue in a binding
> opinion."). The *Manigault* Court's analysis is unsound. This Court
> therefore declines to apply *Manigault*'s holding to the instant case.

*Id.* at 257.

Judge Bulsara quotes as follows from *Taylor v. Sturgell*, 553 U.S. 880 (2008): "'[s]*tare*

*decisis* will allow courts swiftly to dispose of repetitive suits brought in the same circuit.'" R&R at

37, quoting *Taylor*, 553 U.S. at 903. However, "[t]he doctrine of *stare decisis* does not compel one

district court judge to follow the decision of another," *ATSI Comm'ns. Inc. v. Shaar Fund, Ltd.*, 547

F.3d 109, 112, n.4 (2d Cir. 2008) (citations and quotation marks omitted), and, accordingly, "[w]here

a second judge believes that a different result may obtain, independent analysis is appropriate." *Id.*

(citation and quotation marks omitted).

## B.      Comity

Judge Bulsara contends that, "[e]ven if Judge Hellerstein's decision on class certification [in

*Leyse I*] was not issue preclusive, *Smith v. Bayer*, 564 U.S. 299, 317 (2011), it would be entitled to

comity, since it is from a District Judge in the same circuit resolving the same class issues," R&R at

36, noting that *Smith* found that "'[w] would expect federal courts to apply principles of comity to

each other's class[-]certification decisions when addressing a common dispute.'" R&R at 36, quoting

*Smith*, 564 U.S. at 317. However, the notion that *Smith* requires one district judge to deny class

certification merely because another judge denied certification of the same class was thoroughly

addressed, and forcefully rejected, in *Smentek v. Dart*, 683 F. 3d 373 (7th Cir. 2012), which explained

that, "[a] standard definition of 'comity' is the respect that sovereign nations (or quasi-sovereigns

such as the states of the United States) owe each other," *id.* at 375 (citations and quotation marks

omitted), and that, "[t]hat was a consideration in *Smith* [], because the first class action had been filed in a state court and the copycat class action in a federal court; it is not a factor . . . where all [the] suits [at issue] were filed in federal court and based on federal law." *Id.* at 375-376.

Furthermore, "[w]hatever the scope of the Supreme Court's current concept of comity, the defendants' argument that *Smith* [] adopted a rule of comity in class[-]action suits that precludes granting class certification in a copycat class action must be rejected; for if the Court had adopted such a rule it would have affirmed the injunction granted in the district court in that case (and affirmed by the court of appeals) against the copycat class[-]action suit, instead of reversing, as it did." *Id.* at 376.

Moreover, "[the] dictum in *Smith* . . . cites no authority for the extension of the doctrine of comity to mere disagreement between federal judges, and despite the reference to expecting 'federal courts to apply principles of comity to *each other's* class certification decisions' (emphasis added), [*Smith*] seems really to have been thinking about cases involving federal-state comity, of which *Smith v. Bayer Corp.* was one." *Id.* at 376.

As the *Smentek* court further explained, "[t]he rule urged by the defendants[,] [*i.e.,*] that the denial of class certification bars the certification of the same or a similar class in a suit by a member of the same class as the previous suit, might . . . prevent class[-]action litigation from metastasizing . . ., but it would contradict the holding of *Smith* [], which is that a class member who did not become a party to the previous parallel class action is not precluded from seeking class certification in his class action." *Id.* at 377.

Ultimately, the *Smentek* court found that "[w]e are left with the weak notion of 'comity' as requiring a court to pay respectful attention to the decision of another judge in a materially identical case, but no more than that even if it is a judge of the same court or a judge of a different court within

the same judiciary." *Id.* at 377. Significantly, the court further explained as follows:

> We emphasize, however, the qualification in "materially identical." Even two class actions involving the same class may differ materially, for example in the suitability of the class representative or the adequacy of class counsel, and where they do the judge in the second, or third, or nth class action is on his own. This is not such a case; nevertheless the district [court] gave plausible reasons for [district court's] disagreement with the judges in the two previous [state-court] cases. Can more be required? The defendants' claim that [the district court] was bound by the decisions of the [state trial courts] just because those decisions preceded and were contrary to [the district court's] decision has no basis in law and flouts the principle that a district court decision does not have precedential effect. *Camreta v. Greene*, 563 U.S. 692, 709, n.7, (2011). The defendants would have such decisions treated not as mere precedents but as super-precedents that no court lacking appellate authority could question.

*Id.* at 377 (additional citation omitted).

Judge Bulsara cites *Baker v. Home Depot USA, Inc.*, No. 11-cv-6768, 2013 WL 271666 (N.D. Ill. Jan. 24, 2013), for "striking class[-]action allegations from complaint, by applying comity to several other courts' decisions that had denied class status." R&R at 36. In *Baker*, whose motion by the defendant to strike the class allegations had been preceded by "five other rulings made by various district courts across the country and the Illinois Appellate Court, in which class certification has been denied in materially similar cases," *Baker*, 2013 WL 271666 at *5, "[the] [p]laintiffs . . . pointed to many common issues of fact that would be present among the proposed class members," *id.*, but the court granted the defendant's motion because it found that "issues of causation, the extent of each class members' injuries and the corresponding remedy, and the potential for individual affirmative defenses to apply to each class members' claims all preclude the certification of a class in this case." *Id.* Further (and unmentioned by Judge Bulsara), "[the defendant] also moved for sanctions pursuant to [Rule] 11, arguing that [the] [p]laintiffs' class allegations have no reasonable basis in law or fact," *id.*, but the court found that "[t]here is no evidence that [the] [p]laintiffs acted in bad faith

in including class allegations in their complaint," *id.*, and that, "[a]lthough [the] [p]laintiffs were unsuccessful in their attempt to bring this action as a class action, based upon a review of the entire record, the court does not find that sanctions are warranted or appropriate in this case." *Id.*

Finally, Judge Bulsara cites *Gomez v. St. Vincent Health, Inc.*, No. 08-cv-153, 2009 WL 1853120 (S.D. Ind. June 25, 2009), for "denying class certification of 'nearly identical action' previously rejected, finding no basis to 'effectively overrule a colleague on the district court on an indistinguishable record." R&R at 36-37, quoting *Gomez*, 2009 WL 1853120 at *1, *4. *Gomez*, which "decline[d] to certify a class," *id.* at *1, because the court found that "[c]ounsel's actions during his attempts to represent the proposed class through two separate suits do not make him an adequate class counsel." *Id.* at *1, nevertheless engaged in an independent analysis that itself shows that the case differs significantly from the present case.

Prior to *Gomez*, "[a]n almost identical action [had been] brought by two different named plaintiffs represented by the same counsel in *Brown-Pfifer v. St. Vincent Health, Inc.*, [No. 06-cv-0236][,] 2007 WL 2757264 (S.D. Ind. Sept. 20, 2007)," *id.* at *1, in which "[t]hose plaintiffs sought to certify the same proposed class." *Id.* at *1. In *Brown-Pfifer*, the district court had been "[c]onfronted with the identical factual situation, . . . [and] denied class certification," *id.* at *1, after which "[t]he plaintiffs in that case initiated an appeal with the Seventh Circuit [but] abandoned that appeal," *id.* at *1; "and then the same attorney filed this new case filed with new plaintiffs." *Id.* at *1.

Earlier in *Gomez*, the defendant had moved to "dismiss[,] arguing that the statute of limitations was not tolled for [the] plaintiffs' class claims while the *Brown-Pfifer* case was pending." *Id.* at *2. The court denied that motion, explaining that the motion's "primary problem . . . was that it could deny potential plaintiffs of any real opportunity to obtain judicial relief through no fault of their own: The key to allowing tolling of class claims ... is that sometimes a person's individual claims

can be vindicated only through a class action." *Id.* at *2 (ellipsis in original; citation and quotation marks omitted). However, that denial had not been "an invitation to a potential class's counsel to take a second bite at the apple," *id.* at *2, whereas "[t]his case appears to be no more than an attempt to relitigate the same questions that [the district court] decided in *Brown-Pfifer*, *id.* at *2, in which "[the] [p]laintiffs . . . had the opportunity to appeal their case to the Seventh Circuit to review [the district court]'s decision[[,] [but] declined that opportunity." *Id.* at *2. Instead, "[u]sing the list of qualified beneficiaries produced by the [defendant] during discovery in the *Brown-Pfifer* litigation, counsel contacted [some of] those participants . . . and solicited their participation in another lawsuit against the [defendant]," *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583 (7th Cir. 2011); and, "[a]mong others, [two individuals] responded to his solicitation and authorized him to file, on their behalf, the [*Gomez*] lawsuit," *id.*, and those two individuals, "[a]s the only remaining named plaintiffs, . . . sought to represent a class materially identical to that proposed in *Brown-Pfifer*." *Id.*

During the class-certification "stage of the case, [the] plaintiffs ma[d]e no arguments that are different from those that were before [the *Brown-Pfifer* district court]." *Gomez*, 2009 WL 1853120 at *2. Rather, [the plaintiffs'] theory is simply that [the *Brown-Pfifer* district court] erred in [its] decision when confronted with nearly identical plaintiffs using nearly identical arguments to make identical allegations." *Id.* at *2. Judge Bulsara seemingly contends that the same is true here because, "[e]ven if McCabe's claim were to survive a 12(b)(6) motion, the putative class in his case would have no chance of being certified." R&R at 36. However, during the oral argument before the Second Circuit in Leyse I, two of the three panel judges suggested that a future effort to seek class certification would not (indeed, should not) be the same was made in *Leyse I. See* Pl. Opp. Mem. at 43. Judge Bulsara did not mention the point in the R&R, but merely noted, during the oral argument before Judge Bulsara, that the two judges made their comments "[i]n an oral argument, not in the

49

opinion." Oral Arg. Tr., p. 49, lines 19. However, that does not change the fact that a motion for

class certification by McCabe could present a different method to satisfy the criterion found lacking

in *Leyse I*, *i.e.*, ascertainability of the class members; and, of course, any assumption to the contrary

at this stage of the present case would be premature. Thus, the fact that "[McCabe's] [C]omplaint

contains no additional evidence or allegations proffered to overcome the deficiencies identified by the

prior court," R&R at 37, incorrectly assumes that that is the role of a complaint rather than a motion

for class certification (perhaps the case would be otherwise if class certification in *Leyse I* had been

denied on the basis of the complaint in that case, but that is not what occurred).

The *Gomez* district court explained that, in its view, "[t]he [*American Pipe*] tolling rule is not

designed to create the opportunity for an attorney to give his argument a trial run in front of one

judge, have that judge evaluate the arguments and explain their deficiencies, and then run to another

judge with slightly more refined arguments," *id.* at *2, and that "[t]his strategy flouts a primary

purpose of the class[-]action device—judicial economy—and instead burdens a busy district court

with duplicative litigation." *Id.* at *2. The court further explained as follows:

> The briefing in this case highlights the problems with this approach.
> Since this case is nearly identical to *Brown-Pfifer*, the debate is framed
> around [the *Brown-Pfifer* district court]'s decision in that case. The
> plaintiffs are effectively asking [another judge of the same district] to
> provide what amounts to appellate review of that decision. They
> provide no new facts or arguments for their motion for class
> certification. They have merely decided to emphasize the aspects of
> their case that they believe undermine [the *Brown-Pfifer* district
> court]'s decision. [That] decision is not distinguishable because the
> facts are the same. [The] [p]laintiffs' counsel is forced to argue only
> that the previous decision is "contrary to law" and "legally
> unsupportable." If plaintiffs' counsel wanted a review of [that]
> decision, his proper recourse was to the Seventh Circuit. He
> abandoned that pursuit and in the process terminated the claims of the
> two named plaintiffs who also lost on summary judgment in the prior
> preceding. [The *Brown-Pfifer* district court]'s decision was not a first
> draft for another district judge to expound upon after plaintiffs'
> counsel had an opportunity to see the flaws in his initial argument.

50

*Id.* at \*2.

The court also found that "[c]ounsel's actions in this case are particularly troubling because [the *Brown-Pfifer* district court]'s previous decision was based, in part, on what [that court] perceived as deficiencies of the proposed class counsel[,] [and that] [h]is failures documented by [that court] in [its] decision were a crucial reason that the proposed class was not certified," *id.* at \*3, which included "faulty discovery efforts," *id.* at \*3, whereas, in *Gomez*, "the Court ha[d] previously authorized in this case an award of costs against [one] [p]laintiff and her counsel, jointly, based on [the] [d]efendant's successful motion to compel discovery." *Id.* at \*3. The court further explained as follows:

> His questionable work in that case and his decision to relitigate the same issues in this court show a lack of regard for scarce judicial resources. [He] did not approach this case with a new theory for why class certification was appropriate, nor did he seek out new facts. [The *Brown-Pfifer* district court] forcefully rejected counsel's arguments. [That court] further found [the] plaintiffs' counsel inadequate and also found the plaintiffs that counsel brought forth as representatives were inadequate. [The] [p]laintiffs' counsel has now before this court merely reargued the same position that [the *Brown-Pfifer* district court] had rejected both on the initial motion for class certification and on a motion for reconsideration. The named plaintiffs in this case are indistinguishable from those [that the *Brown-Pfifer* district court] found inadequate . . . . [¶] This attempt to have this court effectively overrule a colleague on the district court on an indistinguishable record is not the best means of representing the proposed class members.

*Id.* at \*3-\*4.

The Seventh Circuit, in affirming the class-certification denial, found that "[counsel's] arguments do not address the district court's conclusions regarding diligence, respect for judicial resources, and . . . [the fact that] the [defendant had] promptly contacted those individuals . . . [who had] not timely receive[d] their . . . notices [informing] departing employees of their right to extend

their health[-]insurance coverage at their own cost after their employment ends, provided the overdue notices [to those employees], allowed retroactive election of benefits, and offered to negotiate payment plans for those who could not afford to immediately pay the accrued premium obligations." *Gomez*, 649 F.3d at 585, 592. The Seventh Circuit further found that the denial of class certification in *Gomez* had not been due to the fact that the arguments in favor of certification were essentially the same as the class-certification arguments that had been made in *Brown-Pfifer*: "[B]y arguing that some facts in [*Gomez*] differ from the named plaintiffs in the *Brown-Pfifer* case, counsel misconstrues the district court's order. [] [C]lass certification was not denied in this case because the facts were materially identical to those in *Brown-Pfifer*." *Id.* at 593. As the Seventh Circuit explained:

> [R]ather, the [*Gomez*] district court found the nearly identical arguments at the class certification stage to be indicative of counsel's competence and attitude. And if the alleged factual distinction was significant to the certification decision, counsel had in fact forfeited the issue by waiting until his motion to reconsider the certification denial to argue it. [¶] If counsel wished to convince us that the district court abused its discretion by finding him inadequate to represent the proposed class, his demeanor on appeal has not helped his cause. He has (perhaps mistakenly) misrepresented fundamental facts. And he has relied on hyperbole in the place of persuasive argument, failing to refute the district court's reasoning.

*Id.* at 593 (footnote omitted).

Judge Bulsara cites *Amorosa v. Ernst & Young LLP*, No. 03-cv-3902, 2010 WL 245553 (S.D.N.Y. Jan. 20. 2010), for "awarding Rule 11 sanctions and concluding that [the] [p]laintiff's claims in the second amended complaint 'were identical (except in ways already found to be immaterial) to claims against [the defendant] that [another district judge] had already thrown out in [a prior action]. For that reason, the claims fall comfortably within the definition of "frivolous."'"). R&R at 37-38, quoting *Amorosa*, 2010 WL 245553 at *4. In *Amorosa*, the plaintiff's attorney had "filed a second amended complaint [], which was virtually identical to the complaint dismissed in .

. . *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F.Supp.2d 666 (S.D.N.Y.2007) ('*AOL II*')." *Amorosa*, 2010 WL 245553 at *1. That filing had occurred "after [the district court in *AOL II*] dismissed portions of the consolidated opt-out complaint filed by [a different law firm] (the 'Lerach Complaint') on behalf of some 200 plaintiffs who [had] opted out of the class action ( . . . the 'Lerach Plaintiffs') — including all but one of the claims raised against defendant Ernst & Young by pre-merger shareholders like Amorosa." *Id.*

Furthermore, the court found that "[the plaintiff's]'s attorney made legal arguments in opposing Ernst & Young's motion to dismiss that were patently frivolous. He asserted that the Supreme Court had overruled one of its own precedents and controlling case law from this Circuit." *Id.* at *1.

The court further found that "[the plaintiff's attorney] ha[d] not been candid in some of his representations to this Court," *id.* at *2, explaining that, "[w]hen he opposed Ernst & Young's motion to dismiss [the plaintiff]'s state[-]law claims as preempted by [the Securities Litigation Uniform Standards Act, 112 Stat. 3227 (1998)], [he] argued that there had been a 'lack of coordination between [the plaintiff's] case and the Lerach opt-out actions[,]' . . . [but that], [i]n plain English, [the plaintiff's attorney] admits to a level of coordination with the other opt-out plaintiffs that makes it clear that his original argument to this Court was not true." *Id.* at *2.

The court "also note[d] that [the plaintiff's attorney]'s representations regarding his relationship with the Lerach firm evidence bad faith insofar as he has failed to be entirely candid with this Court in connection with his claim that there was a 'total lack of coordination' between [the plaintiff]'s case and this one," *id.* at *8, and that, "[i]n light of his later representations to this Court, this was clearly an intentional misstatement, one that supports a finding of bad faith on the part of counsel." *Id.* at *8.

Furthermore, it is perhaps unsurprising under the circumstances that the court found that, "[f]inally, as the *Pentagen* court explained, the virtual identity between the complaint dismissed in *AOL II* and the one filed by [the plaintiff's attorney] is enough to permit an inference of bad faith under Rule 11(b)(1), which requires that filings 'not be [ ] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'" *Id.* at *8, quoting *Pentagen*, 172 F. Supp. 2d at 473-474.

## POINT IV

### THE FACT THAT A DIFFERENT PLAINTIFF BROUGHT A SECOND ACTION HAS NO RELEVANCE TO THE PRESENT CASE

Judge Bulsara notes that, in *Leyse v. Lifetime Entm't Servs., LLC*, No. 17-cv-1212 (S.D.N.Y.) ("*Leyse II*"), District Judge William H. Pauley, III, "held a conference with the parties," R&R at 7, during which Judge Pauley expressed [the] view [that], because the Second Circuit was considering (on the pending motion for rehearing en banc [in *Leyse I*]) issues related to . . . [the] complaint [in *Leyse I*], there was no viable case or controversy for another complaint that was identical to the first," R&R at 8. Rather, Judge Pauley reasoned not that the *Leyse I* litigation was *pending*, but, rather, that a *judgment* had been granted in *Leyse I* in favor of the named plaintiff:

> THE COURT: How is there a case or controversy with this complaint?
>
> MR. BANK: In light of the judgment you mean, your Honor?
>
> THE COURT: Yes. At the time you filed this action, February 16, how is there a case or controversy?
>
> MR. BANK: For one thing, [Mr. Leyse] hasn't received the actual money; but, more importantly, that's why we are seeking a stay. Because otherwise -- let's suppose going forward the court -- this court or a higher court, either way -- were to hold that *American Pipe* tolling expired upon the affirmance of the Second Circuit, not the response or the ruling on the current [*en banc*] petition. But let's say . . . on March 1st the Second Circuit issued its ruling [(the actual date

was February 15, 2017, *see Leyse v. Lifetime Entertainment Svcs., LLC*, 679 F. Appx. 44 (2d Cir. 2017))]. And let's say the *en banc* rehearing petition is denied today. But let's say going forward ultimately -- and I am not predicting anything here, I don't know. But let's suppose the law of the case here became that *American Pipe* tolling ended on that March 1st date, the hypothetical date on which the Second Circuit issued its ruling that is now subject to the petition. Well, if that turns out to be the case, which is not entirely infeasible, by any means, then we would have only had three days left to file the action, the same thing with the other action in the Eastern District, the *McCabe* action.

So that's why we are seeking a stay. We are being very candid. We recognize, Mr. Leyse and I recognize that if the judgment ultimately stands, then there wouldn't be, presumably, a case in controversy. But as of now, it is our intention in *Leyse I*, in the prior action, to get that judgment to be vacated. I don't predict success or failure. I don't know. But otherwise the alternative was that he would have to risk foregoing his rights altogether. Because what if we brought this case -- let's say the *en banc* petition is denied today, and now we brought the case within the following three days, by Friday or Monday. What happens if later on in this case, either your Honor or a higher court or what have you, the law of the case is that *American Pipe* tolling ended on March 1st -- the hypothetical date on which the Second Circuit issued its ruling that's currently subject to the petition -- and now we are time barred. That's why we are seeking a stay.

Transcript of conference in *Leyse II*, dated March 30, 2017 ("*Leyse II* Tr."), p.5, line 17 - p.7, line 9 (a copy of the entire transcript is annexed as Exhibit "B" (*Leyse II*, Dkt. No. 28-1) to Plaintiff's Reply Declaration in Further Support of McCabe's motion for sanctions against Lifetime's counsel to pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927).

Furthermore, Judge Pauley did not indicate any opinion regarding the issues in the present case (notwithstanding Lifetime's representations to the contrary *see* Def. Sanctions Opp. Mem. at 1-2), which concern the scope of *American Pipe* tolling, even though Lifetime's counsel had set forth Lifetime's position regarding tolling, *see id.*, p.7, line 10 - p.10, line 1; p.15, line 13 - p.16, line 15; and, the discussion between Judge Pauley and Mr. Bank concluded, as Judge Bulsara notes, with "Judge Pauley ask[ing] Mr. Bank whether he would withdraw the case[,] [and] Mr. Bank

55

demurr[ing]," R&R at 8:

> THE COURT: As I listen to you, everything you're arguing is about what either Judge Hellerstein [in *Leyse I*] did or didn't do, and what the Second Circuit did or didn't do, and you have got a motion pending in the Circuit about all of that.
>
> MR. BANK: Some of it.
>
> THE COURT: It's not a question of duplicative cases. This case is identical to the case you filed before Judge Hellerstein, and you have not exhausted your available avenues of relief with respect to that case.
>
> MR. BANK: That's why we are seeking a stay, Judge.
>
> THE COURT: I am not granting a stay in the case. You filed this case on February 16, 2017. I have no idea when the Second Circuit will pass on your motion for rehearing [in *Leyse I*], and I have no idea what you will do after that. But on the date that you filed this complaint, Mr. Leyse does not present a case or controversy in my view. Now, if you're not willing to just drop this case, then I am going to tee up the defendant's motion. And while, generally, I don't like dealing with motions for sanctions and the like, which they have proposed to make, I am going to permit them to make their motion.
>
> So I guess I will return to the sort of question that I asked at the very beginning that I was serious about: Do you want to end the madness of this case, 17 CV 1212, here and now, or do you insist that the defendants make a motion and then I will deal with the motion?
>
> MR. BANK: As of now, we are prepared to go ahead with the motion practice. Certainly, in the interim, if we conclude otherwise, of course we would withdraw the case, but until then we are certainly not in a position to do that.

*Id.*, p.17, line 21 - p.18, line 25.

Judge Bulsara also finds that "Judge Pauley suggested that bringing the identical claim after the Second Circuit affirmed the class certification denial in *Leyse I* and while moving for rehearing by the Second Circuit in *Leyse I* was sanctionable . . . . Presumably to avoid such a sanctions motion, he voluntarily dismissed the *Leyse II* complaint." R&R at 35, 36. However, regardless of whether

Judge Bulsara's surmising that the dismissal was induced by the possibility of sanctions, as opposed to that dismissal having had been the result of Judge Pauley's representation that "I am not granting a stay in the case," *Leyse II* Tr., p.18, line 6, or any other factor, sanctions under Rule 11 (as well as 28 U.S.C. § 1927) are limited to conduct that occurs in the course of the action in which the request for sanctions is made, as Judge Bulsara recognizes. *See McCabe* Tr., p.90, lines 14-15 (Judge Bulsara: "I don't think there's a basis to sanction for bringing *Leyse II*."); *see also id.*, p.14, lines 20-25 (Judge Bulsara: "I don't think this Court has the ability to sanction on conduct in another court."). *Accord*, Pl. Sanctions Reply Mem., 4-5.

### POINT V

### THE MAGISTRATE JUDGE'S *SUA SPONTE* DISCUSSION OF DUPLICATIVENESS DOES NOT ACKNOWLEDGE WHY THE COMMENCEMENT OF THIS CASE WAS REASONABLE, MUCH LESS EXPLAIN WHY SUCH COMMENCEMENT WAS SANCTIONABLE

Judge Bulsara contends that "Lifetime did not move to dismiss the present lawsuit based on the rule against duplicative litigation, but it surely could have." R&R at 34. First, of the three cases that Judge Bulsara cites for that proposition, only one was a putative class action, *i.e.*, *DiGennaro v. Whitehair*, 467 F. App'x. 42, 44 (2d Cir. 2012), and in that case, like in the others that Judge Bulsara cites, *see* R&R at 34-35, the plaintiffs in the duplicative actions were the same.

Second, the Second Circuit has explained: "'a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions. Of course, simple dismissal of the second suit is another common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.'" *Kanciper v. Suffolk Cty. SPCA, Inc.*, 722 F.3d 88, 92 (2d Cir. 2013), quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-139 (2d Cir. 2000). *See also Curtis*, 226 F.3d at 138 ("[t]he complex problems that can arise from multiple federal filings do

not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion."). Again, the plaintiff in the present action is not the plaintiff in *Leyse I*.

Third, as Mr. Bank discussed with Judge Pauley, it was only the uncertainty in the law, *i.e.*, uncertainty over whether the ultimate ruling in the *Leyse I* litigation would be that *American Pipe* tolling extended until the Second Circuit's affirmance of the class-certification denial in *Leyse I* but did not continue during the *Leyse I* plaintiff's continued pursuit of class certification (*i.e.*, through the petition for rehearing before the Second Circuit or the petition for *certiorari*) that induced McCabe to bring this action when he did rather than wait and thereby risk a ruling by the Second Circuit for Supreme Court that tolling had ended in *Leyse I* when the Second Circuit affirmed the district court's class-certification denial rather than at a later stage of the *Leyse I* litigation, in which event McCabe's claims would have been untimely. Thus, Judge Bulsara is simply wrong in claiming that "the present case served no purpose at all." R&R at 35.

Fourth, the Supreme Court, on January 8, 2018, denied the petition for *certiorari* in *Leyse I*, such that McCabe could have pursued this action regardless of how this Court might have responded to an argument by Lifetime concerning duplicativeness. That is because "[a]n action is duplicative 'if the claims, parties, and *available relief* do not significantly differ between the two actions.'" *Amusement Industry, Inc. v. Midland Avenue Associates, LLC*, 820 F. Supp. 2d 510, 525 (S.D.N.Y. 2011), quoting *Northern Assurance Co. of America v. Square D Co.*, 201 F.3d 84, 89 (2d Cir. 2000). Because actions are duplicative only when they are pending "at the same time" *Kanciper*, 722 F.3d at 92 (2d Cir. 2013) (citation and quotation marks omitted), any stay in McCabe would have ended upon the denial of *certiorari* in *Leyse I*.

## POINT VI

## DEFENDANT'S COUNSEL SHOULD BE SANCTIONED FOR MAKING A FRIVOLOUS REQUEST FOR SANCTIONS AGAINST PLAINTIFFS'S COUNSEL

Judge Bulsara did not discuss McCabe's motion for sanctions, but instead, "denied [it] in light of the decision [sic] to grant Lifetime's sanctions motion." R&R at 39. Accordingly, McCabe refers this Court to his motion for sanctions (Dkt. Nos. 24, 25, 26) and his reply in further support of that motion (Dkt. Nos. 28, 29).

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that this Court decline to adopt the Report & Recommendation, deny Defendant's motions in their entirety, impose sanctions upon Defendant's counsel, and grant Plaintiff any appropriate relief that is authorized by law.

Dated: January 18, 2018

*s/ Todd C. Bank*

Todd C. Bank
TODD C. BANK,
  ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
By: Todd C. Bank

*Counsel to Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2018, a true and accurate copy of the foregoing document is being filed electronically via the Court's electronic-case-filing (ECF) system. Notice of this filing will be sent to all parties by operation of the Court's ECF system and copies will be mailed to those parties, if any, who are not served via the Court's ECF system.

Dated: January 18, 2018

<u>     s/ *Todd C. Bank*            </u>
Todd C. Bank